Aram Ordubegian (SBN 185142)
Andy S. Kong (SBN 243933)
Annie Y. Stoops (SBN 286325)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:    213.629.7400
Facsimile:    213.629.7401
Email:    aram.ordubegian@arentfox.com
    andy.kong@arentfox.com
    annie.stoops@arentfox.com

Attorneys for Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:19-bk-12607-BR |
| **VOIP GUARDIAN PARTNERS I, LLC,** | Chapter 7 |
| Debtor. | **NOTICE OF MOTION AND MOTION FOR AN ORDER TO SHOW CAUSE WHY DEALDEFENDERS LLC SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR FAILURE TO PROVIDE COMPLETE RESPONSES PURSUANT TO THE CHAPTER 7 TRUSTEE'S SUBPOENA FOR RULE 2004 EXAMINATION** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ANNIE Y. STOOPS AND DAVID G. BAYLES IN SUPPORT THEREOF** |
| | *[No Hearing Required Unless Set by the Court Pursuant to Local Bankr. R. 9020-1(d)(2)]* |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22530492.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 6

II.    STATEMENT OF FACTS ............................................................................................... 6

    A.    Debtor's Chapter 7 Bankruptcy Case.......................................................... 6

    B.    DealDefenders Acted as the Escrow Company for Nearly All of the
Debtor's Factoring Arrangements................................................................. 7

    C.    The Trustee's Investigation as it Relates to DealDefenders .................................. 8

    D.    The 2004 Order and Preceding Meet and Confer Discussions .............................. 8

    E.    The Receiver's Subpoena.................................................................................... 10

    F.    The Trustee's Subpoena, DealDefenders' Inadequate Responses, and
Ensuing Meet and Confer Discussions .............................................................. 11

III.    ARGUMENT ................................................................................................................. 15

    A.    The Court Should Issue an Order Requiring DealDefenders to Show Cause
Why It Should Not Be Held in Contempt of this Court...................................... 15

IV.    CONCLUSION .............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*F.T.C. v. Affordable Media,*
  179 F.3d 1228 (9th Cir. 1999)..................................................................................16

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP,*
  256 F.R.D. 678 (C.D. Cal. 2009) ...........................................................................16

*Scruggs v. Vance,*
  2012 WL 423486 (E.D. Cal. Feb. 8, 2012)............................................................15

*Securities and Exchange Commission v. Direct Lending Investments, LLC,*
  Case No. 2:19-cv-02188-DSF-MRW ......................................................................10

**Statutes**

11 U.S.C. § 105.................................................................................................................4

**Other Authorities**

Fed.R.Civ.P. 45(a)(1)(iii)...............................................................................................15

Fed.R.Civ.P. 45(e)..........................................................................................................15

Federal Rules of Bankruptcy Procedure Rule 9020........................................................4

Federal Rules of Bankruptcy Procedure Rule 26(c) ...............................................13, 21

Local Bankruptcy Rules Rule 9020-1(b) ........................................................................4

Local Bankruptcy Rules Rule 9020-1(c).........................................................................4

Local Bankruptcy Rules Rule 9020-1(d)(1).....................................................................4

Local Bankruptcy Rules Rules 9013-1 and 9020-1 ........................................................4

Local Bankruptcy Rules Rule 9020-1(d)(2).....................................................................4

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE; AND ALL OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that Timothy Yoo, the duly appointed chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") for the above-captioned debtor, VoIP Guardian Partners I, LLC (the "Debtor"), hereby requests the Court issue an order requiring DealDefenders LLC ("DealDefenders") to show cause why it should not be held in civil contempt for its failure to provide complete responses to the document requests pursuant to the *Subpoena for Rule 2004 Examination* ("Subpoena") that was authorized by this Court's *Order Granting Chapter 7 Trustee's Notice of Motion and Motion for Order Authorizing Examination of DealDefenders LLC and Service of Subpoena to Produce Documents Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Dkt. No. 45] ("2004 Order").   A true and correct copy of the Subpoena, which includes true and correct copies of the 2004 Order and underlying documents requests, is attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankr. R. 9020-1(b), DealDefenders shall have seven (7) days to object to the issuance of the Court's order to show cause.  If a written explanation is not timely filed and properly served, the Court under Local Bankr. R. 9020-1(d)(1) may conclude that there is no objection to the issuance of the order to show cause.

**PLEASE TAKE FURTHER NOTICE** that under Local Bankr. R. 9020-1(d)(2), no hearing will be held on the attached Motion unless the Court so orders.

This Motion is based on 11 U.S.C. § 105, Rule 9020 of the Federal Rules of Bankruptcy Procedure and Rules 9013-1 and 9020-1 of the Local Bankruptcy Rules; notice of the Motion; the annexed Memorandum of Points and Authorities; the declarations of Annie Y. Stoops and David G. Bayles; the record in this case; and all matters of which this Court may properly take judicial notice.

In compliance with Local Bankr. R. 9020-1(c), the Trustee has concurrently lodged a proposed order apprising DealDefenders of its rights to respond by written explanation and setting forth the Trustee's allegation of the contemptuous conduct, along with possible sanctions

and ground for sanctions.  A true and correct copy of the proposed order is attached as **Exhibit 2**.

WHEREFORE, the Trustee requests that this Court issue an order, substantially in the form of the proposed order, (1) requiring DealDefenders to show cause why it should not be held in contempt of this Court for its failure to provide complete responses to the Subpoena's documents requests; and  (2) granting any and all other relief as deemed justified by the Court.

Dated: July 21, 2020                           **ARENT FOX LLP**

By: */s/ Annie Y. Stoops*
                                              Annie Y. Stoops
                                              Attorneys for Chapter 7 Trustee

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22530492.1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

In the ongoing investigation on the Debtor's financial affairs, the Trustee and his counsel have determined that a key similarity amongst the Debtor's various factoring arrangements is that each one of the Debtor's factoring counterparties was a customer of DealDefenders and received the Debtor's funds through its accounts with DealDefenders.[1]    Given the crucial role DealDefenders played in moving approximately $384 million from the Debtor to various factoring counterparties, the Trustee subpoenaed DealDefenders to obtain relevant documents and information related to DealDefenders' involvement in the Debtor's factoring arrangements and the disbursements of the Debtor's funds using DealDefenders' escrow services.

After nearly two months of meet and confer discussions, it became clear to Trustee's counsel that DealDefenders had no intention of producing further documents in addition to its inadequate preliminary production.  Such that the Trustee was compelled to file this Motion to seek an order show cause as to why DealDefenders should not be held in contempt of this Court for its failure to provide a complete document production in response to the Subpoena's documents requests.

**II.**

**STATEMENT OF FACTS**

A.    **Debtor's Chapter 7 Bankruptcy Case**

The Debtor supposedly provided factoring in the telecommunications industry.  Such that the Debtor purportedly purchased from tier 3 telecommunication providers their accounts receivables (i.e. outstanding invoices) from tier 1 providers.

On March 11, 2019, the Debtor filed its voluntary petition for chapter 7 bankruptcy relief.  Timothy Yoo was appointed as the chapter 7 trustee.  In conducting the investigation into the

---

[1] DealDefenders has three (3) wholly-owned subsidiaries: TelFinance, DealDefenders EU LLC, and TxtFinance LL.  Substantially all communications and transactions with DealDefenders' clients are conducted through TelFinance, while DealDefenders, as the parent company, handles all bankruptcy transactions on behalf of TelFinance and the other 2 wholly-owned subsidiaries. DealDefenders and its wholly-owned subsidiaries are hereinafter collectively referred to as "DealDefenders."

1   Debtor's financial affairs, the Trustee and his counsel believe that the vast majority – if not all –

2   of these factoring arrangements were fraudulent schemes enacted to misappropriate the Debtor's

3   funds.  The shell entities that were parties to these fraudulent arrangements appear to have no

4   legitimate business purpose.  There are no documents showing that tier 1 receivables were in fact

5   purchased for the majority of the factoring arrangements, nor are there any documents (e.g. call

6   records) proving that the various shell entities acting as the Debtor's telecommunications partners

7   actually originated and terminated phone calls subject to the factoring arrangements.

8   **B.**      **DealDefenders Acted as the Escrow Company for Nearly All of the Debtor's**

9          **Factoring Arrangements.**

10         The main similarity amongst the Debtor's factoring arrangements is the use of

11   DealDefenders' services and its accounts to facilitate the movement of the Debtor's funds from

12   the Debtor's U.S. bank accounts to the factoring counterparties' offshore accounts.  On its

13   website, DealDefenders holds itself out to be a provider of online escrow services, fund

14   protections, and management services.  Through its website, DealDefenders explains that the

15   steps for the two types of escrows transaction are as follows: (1) the parties must agree to the

16   DealDefenders escrow terms and conditions; (2) the buyer (i.e. Debtor) funds the transaction

17   using funds held by DealDefenders or by transmitting funds to DealDefenders; (3) and

18   DealDefenders releases funds when the buyer (i.e. Debtor) confirms receipt of services and the

19   services are accepted.[2]

20         DealDefenders possesses documents and information that are directly relevant to the

21   Trustee's investigation into where and to whom the Debtor's monies were disbursed.

22   DealDefenders received the Debtor's monies that went to "funding" these factoring arrangements

23   and released said monies to the factoring counterparties.  DealDefenders was the entity through

24   which these factoring counterparties transacted with the Debtor.  It appears that DealDefenders

25   may be the only U.S. company that interacts with some of the factoring counterparties.  In this

26   way, DealDefenders is the only party with relevant documents and information on these

27   _____

28   [2] A true and correct copy of the printout of the "How It Works" section of DealDefenders'
    website is attached hereto as **Exhibit 3**; *see also*
    http://www.dealdefenders.com/page_howitworks.php.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22530492.1

1  potentially illegitimate companies.

2  **C.    The Trustee's Investigation as it Relates to DealDefenders**

3  As part of his investigation, the Trustee seeks documents and information to determine (1)

4  whether DealDefenders breached its escrow instructions regarding the receipt and disbursements

5  of the Debtor's monies and (2) whether there was evidence of fraud for which DealDefenders had

6  a duty to disclose.  More generally, because the factoring counterparties appear to only transact

7  with the Debtor through DealDefenders, the Trustee believes the documents and communications

8  within DealDefenders' possession, custody, or control are pivotal in determining whether the

9  counterparty entities are legitimate companies.   To that end, the Trustee's counsel prepared

10  documents requests for the following topics:

11          •   Services DealDefenders' provided to the Debtor, its management entity, VoIP
12              Guardian LLC ("VoIP Management"), or the factoring counterparties;

13          •   DealDefenders' protocol, procedures, and/or process for releasing funds on behalf
14              of the Debtor, VoIP Management, or the factoring counterparties;

15          •   Account statements for any bank account DealDefenders received monies on
16              behalf of the Debtor, VoIP Management, or the factoring counterparties;

17          •   DealDefenders' receipt of monies from the Debtor, VoIP Management, or the
18              factoring counterparties;

19          •   DealDefenders' disbursements of monies made on behalf of the Debtor, VoIP
20              Management, or the factoring counterparties;

21          •   Communications with the Debtor and VoIP Management; and

22          •   Communications with the factoring counterparties as it relates to the Debtor or
23              VoIP Management. (collectively, the "Document Requests").

24  **D.    The 2004 Order and Preceding Meet and Confer Discussions**

25  In October 2019, the Trustee's counsel, David Bayles, contacted DealDefenders to confer

26  on the scope of the 2004 examination and provided the anticipated requests for DealDefenders to

27  review.  Early on in the meet and confer process, in an email dated November 12, 2019, Mr.

28  Bayles requested that the parties enter into a stipulated protective order given DealDefenders'

confidentiality concerns. Mr. Malone responded that same day saying that the protective order was premature because he wanted to understand what documents would be produced.

One of the numerous meet and confer discussions happened over the phone on November 19, 2019, wherein Mr. Bayles spoke with DealDefenders' principal, Jeff Ellentuck, and DealDefenders' counsel, Robert Malone. During this call, Mr. Ellentuck represented that DealDefenders only had agreements with its customers (the factoring counterparties), not the Debtor, and that its agreements with its customers required DealDefenders to disburse funds belonging to its customers according to the customer's instructions, including any monies received from third parties (such as the customer's factors, like the Debtor). According to Mr. Ellentuck, there was no agreement between the Debtor and DealDefenders; the Debtor only sent wire transfers to DealDefenders because the factoring counterparties (DealDefenders' customers) would only transact with the Debtor via DealDefenders.

During this November 19, 2019 call, Mr. Ellentuck also said that DealDefenders would not produce any documents or communications related to DealDefenders' relationship with its customers (the factoring counterparties) absent a criminal subpoena. Mr. Ellentuck agreed to provide limited information – the names of its customers and their identifying numbers – on all incoming wire transfers received by DealDefenders from the Debtor. Mr. Ellentuck represented that he would also produce all responsive emails, correspondence, and texts.

More than a month later, on January 9, 2020, DealDefenders provided a spreadsheet that purportedly disclosed all wires received from the Debtor on or after January 1, 2016. According to the spreadsheet, DealDefenders received 2,353 wire transfers – totaling approximately $384 million – from the Debtor on behalf of the following entities: Arco Telecom, BTB Systems UG, Holland Commodity Traders BV, iKarim Business Services, Ltd., Interstach GmbH, LTD Tel SLU, MyCore-4-Wholesale B.V., Omega Communication GmbH, Plus AMA Plus AG, Rudare Communications, SL, and Sunnymax Trading GmbH.[3]

After almost two more months, on March 4, 2020, DealDefenders produced approximately 200 documents (DD000001–DD006302) that were purportedly responsive to the

---

[3] At least one of the customers, Ikarim Business Services Ltd., is suspected to be an illegitimate shell entity.

1  Trustee's document production requests ("Preliminary Production").  This production was mainly

2  comprised of emails that were either incomplete or not substantive.  For example, many of the

3  emails produced had no content in the body, while other emails appeared to have been sent with

4  attachments, but these attachments were not included in the production.  One document was 5,340

5  pages and looked to be a word document version of the spreadsheet provided on January 9, 2020.

6      Noticeably absent from the production were any documents and communication from

7  DealDefenders' subsidiaries, TelFinance LLC, DealDefenders EU LLC, and TxtFinance LLC.[4]

8  Moreover, contrary to Mr. Ellentuck's representation that DealDefenders did not have any

9  agreements with the Debtor, the DealDefenders' website says that the parties must agree to

10  DealDefenders' terms and conditions.  These documents relating to DealDefenders' escrow terms

11  and conditions were not produced.

12      Considering  Mr.  Ellentuck's  outright  refusal  to  produce  documents  related  to

13  DealDefenders' customers and give the amount of time – over four months – for DealDefenders

14  to produce 200 documents that did nothing to substantiate the $384 million in wire transfers or

15  validate the legitimacy of DealDefenders' customers, the Trustee proceeded to file a motion for

16  order authorizing examination of DealDefenders and service of subpoena to produce documents

17  under Rule 2004 on April 29, 2020.  On April 30, 2020, the Court entered the 2004 Order –

18  authorizing the Trustee to subpoena the documents responsive to the Document Requests to be

19  produced by DealDefenders by no later than June 15, 2020 and requiring DealDefenders to

20  appear for an oral examination on June 22, 2020.

21  **E.**    **The Receiver's Subpoena**

22      Bradley Sharp, the receiver ("Receiver") appointed in the action entitled,  *Securities and*

23  *Exchange Commission v. Direct Lending Investments, LLC*, Case No. 2:19-cv-02188-DSF-MRW

24  ("Receivership Action"), has been leading his own investigation into DealDefenders' role in the

25  Debtor's factoring arrangements.  The Debtor's only secured creditor, Direct Lending Income

26  Fund LP ("DLI Fund"), is one the defendants in the Receivership Action and subject to the

27  Receiver's authority.

28

---

[4] These documents and communications are particularly important as DealDefenders operated
through its subsidiaries.

1   On April 8, 2020, the Receiver subpoenaed DealDefenders for documents.[5]    The

2   Receiver's documents requests overlap substantially with the Trustee's Document Requests.  In

3   addition, the Receiver's interests align with the Trustee's objective to recover any monies that

4   were wrongfully disbursed.[6]  To make it easier for DealDefenders to respond to two subpoenas,

5   the Trustee and Receiver agreed to conduct meet and confer discussions with DealDefenders

6   together.

7   **F.**    **The Trustee's Subpoena, DealDefenders' Inadequate Responses, and Ensuing Meet**

8        **and Confer Discussions**

9        On May 4, 2020, the Trustee caused the Subpoena, which included the 2004 Order and the

10  Documents Requests, to be personally served on Harvard Business Services, Inc., the agent for

11  service of process for DealDefenders.  At this time, the process server also tendered the required

12  witness and mileage fee.

13      On May 18, 2020, DealDefenders provided its responses to the Document Requests.[7]

14  DealDefenders' responses essentially fell into three categories:

15      1.  DealDefenders said it already produced responsive documents with the

16          Preliminary Production in response to the requests seeking all documents and

17          communication regarding DealDefenders' services to the Debtor (RFP No. 1) and

18          DealDefenders' customers/factoring counterparties (RFP No. 5); the receipt of

19          monies from the Debtor (RFP No. 10) and VoIP Management (RFP No. 11); the

20          outgoing transfers of monies made on behalf of the Debtor (RFP No. 12) and VoIP

21          Management (RFP No. 13); communication with the Debtor (RFP No. 15);

22      2.  DealDefenders said it would not produce account statements, which it deemed

23          confidential, without a protective order in response to the requests that sought bank

24          account statements for the period from February 1, 2016 to the present for any

25          account that DealDefenders received monies on behalf of the Debtor (RFP No. 7),

---

26  [5] A true and correct copy of the notice of the Receiver's subpoena served on DealDefenders is
    attached hereto as **Exhibit 4.**

27  [6] Because DLI Fund is the only secured creditor with an allowed claim in the amount of
    $203,459,871.69, DLI Fund stands to benefit from the Trustee's efforts to recover monies.

28  [7] A true and correct copy of DealDefenders' responses and objections to the Subpoena is attached
    hereto as **Exhibit 5.**

1     VoIP Management (RFP No. 8), and DealDefenders' customers/factoring

2     counterparties (RFP No. 10);

3     3.  DealDefenders said it would produce non-privileged, responsive documents in

4     response to the requests seeking information about DealDefenders' services to the

5     Debtor (RFP No. 3); DealDefenders' procedures for receiving and releasing wire

6     transfers made on behalf of the Debtor (RFP No. 2), VoIP Management (RFP No.

7     4), and DealDefenders' customers/factoring counterparties (RFP No. 6);

8     DealDefenders' communication with VoIP Management (RFP No. 16),

9     DealDefenders' customers/factoring counterparties (RFP No. 17) and VoIP

10     Management (RFP No. 18).

11     On May 27, 2020, the Trustee sent a meet and confer letter regarding DealDefenders'

12 inadequate responses along with a draft protective order.[8]  The letter addressed DealDefenders'

13 objection that the designated place for production and oral examination was not within 100 miles

14 of DealDefenders' office in Wilmington, Delaware and said DealDefenders could produce

15 documents to a third party location in Delaware.[9]  Regarding DealDefenders' responses that it

16 already produced documents via the Preliminary Production, the Trustee explained that the

17 Preliminary Production was inadequate as it was impossible that the Preliminary Production

18 contained all responsive documents especially given the complete absence of documents and

19 communications from DealDefenders' subsidiaries through which DealDefenders operates.  As to

20 the responses saying DealDefenders would not produce confidential documents without

21 protective order, the Trustee disagreed with the confidentiality objection and noted that

22 DealDefenders did not provide any explanation as to what types of information it believed to be

23 confidential.  Regardless, the Trustee was willing to work out terms for a stipulated protective

24 order with DealDefenders.  With respect to the responses that DealDefenders would produce non-

25 privileged, responsive documents, the Trustee sought assurance that DealDefenders would

26 produce all documents and communications and reminded DealDefenders that any documents

27     [8] A true and correct copy of the Trustee's meet and confer letter regarding DealDefenders'
subpoena responses, sent on May 27, 2020, is attached here to as **Exhibit 6**.

28     [9] The original place of production, Arent Fox LLP's Washington D.C. office, was approximately
108 miles away from DealDefenders' place of business.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22530492.1

1   withheld based on privilege had to be described in a corresponding privilege log.

2       On June 2, 2020, counsel for the Trustee, the Receiver, and DealDefenders conferred by

3   phone.  At this time, DealDefenders' counsel continued to assert that the Preliminary Production

4   were all responsive documents.  The Trustee's counsel again pointed out all the types of

5   responsive documents missing from the Preliminary Production (e.g. documents related to the

6   escrow conditions and terms and documents/communications from the subsidiaries).

7       The next day, on June 3, 2020, the Trustee's counsel sent a follow up email that

8   summarized the types of responsive documents DealDefenders was obligated to produce.  Along

9   with this email, the Trustee's counsel sent two email communications between the Debtor and

10  DealDefenders that were responsive but not produced, as examples showing that the Preliminary

11  Production could not be considered a complete production.

12      Over the next three weeks, the Trustee's counsel continued to follow up with

13  DealDefenders' counsel for their comments to the protective order and an update on when further

14  production of documents would be made.  DealDefenders' counsel would not give definitive

15  dates for further productions.

16      Finally on June 19, 2020, DealDefenders' counsel provided their comments to the

17  Trustee's protective order and took it upon themselves to generate a second protective order for

18  the Receiver.  Certain changes proposed by DealDefenders were inappropriate and impermissibly

19  self-serving.  One change sought to shift the burden of challenging confidentiality designations

20  from the designating party to the challenging party.  This was unworkable since the burden of

21  proving that information had been properly designated would have to be on the actual party

22  making the designation.  Another example of an inappropriate change was DealDefenders sought

23  to broaden the scope of confidential information far beyond the protection afforded under the

24  appropriate statutory authority, FRCP 26(c).  Such that the changes appeared to be made in bad

25  faith and confirmed the Trustee's lingering suspicion that DealDefenders was seeking to prolong

26  the meet and confer process and delay the complete production of documents in bad faith.  It had

27  been over a month since DealDefenders provided its responses, and DealDefenders had not

28  produced a single additional documents, namely those documents that did not contain confidential

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22530492.1

1    information (e.g. documents related to and emails communicating the receipt of wire transfers

2    from the Debtor).

3    In a last attempt to salvage the parties' meet and confer discussions, the Trustee's counsel

4    provided its changes in response to DealDefenders' changes to the protective order and requested

5    that the parties have a call to discuss any remaining issues with the protective order and timing for

6    future productions.  DealDefenders' counsel said they did not want to proceed with discussions

7    until the Receiver's provided his comments on the nearly identical version of the Trustee's

8    protective order that DealDefenders took upon itself to create.  Even after assurances from the

9    Receiver's counsel that the Receiver agreed to be bound by the Trustee's protective order and

10   would hold in abeyance its subpoena for documents so long as DealDefenders's production

11   moves forward in a timely manner, DealDefenders' counsel continued to argue that two separate

12   protective orders were required.

13   These inappropriate changes proposed by DealDefenders to the protective order coupled

14   with DealDefenders' insistence on two separate protective orders, even after written assurance

15   from the Receiver that he would be bound by the Trustee's protective order, made it clear to the

16   Trustee that DealDefenders was not conferring in good faith and would not produce a complete

17   set of non-privileged, responsive documents without court intervention.

18   In the final demand for DealDefenders to provide complete responses to the Document

19   Requests, the Trustee's counsel sent a letter on July 3, 2020 that reiterated all the reasons why the

20   DealDefenders' responses were inadequate.[10]  The letter also outlined all the actions (as well as

21   inactions) and positions of DealDefenders that taken together showed DealDefenders' true

22   intention of seeking to hinder the Trustee's efforts to obtain information on where and to whom

23   the Debtor's monies were sent.  The letter informed that the Trustee would continue to meet and

24   confer in good faith on the protective order so long as DealDefenders committed to complete

25   production of all non-privileged, responsive documents by no later than 5:00 p.m. (PT) on July

26   21, 2020.  The Trustee advised that should DealDefender fail to provide complete responses by

27   this time, the Trustee would seek court intervention to compel DealDefenders to produce the

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[10] A true and correct copy of the July 3, 2020 letter is attached hereto has **Exhibit 7**.

AFDOCS/22530492.1

1   relevant documents.

2       DealDefenders responded a week later on July 9, 2020, with its own letter.[11]  In which,

3   DealDefenders made statements that were patently false.  These representations included denying

4   that DealDefenders said the Preliminary Production represented the universe of responsive

5   documents and asserting that the examples of emails missing from the Preliminary Production

6   were outside the requested time range when two of the three email examples were clearly within

7   the appropriate time range.

8       Thereafter, the parties could not come to an agreement on the protective order.  When

9   DealDefenders failed to provide a complete production of non-privileged, responsive documents

10   by the deadline of 5:00 p.m. (PT) on July 21, 2020, the Trustee had no choice but to file this

11   Motion and seek court intervention in the form of an order to show cause why DealDefenders

12   should not be held in civil contempt for failure to provide complete responses to the Subpoena's

13   Document Requests.

14   **III.**

15   **ARGUMENT**

16   **A.**    **The Court Should Issue an Order Requiring DealDefenders to Show Cause Why It**

17          **Should Not Be Held in Contempt of this Court.**

18       A subpoena shall "command each person to whom it is directed to attend and give

19   testimony or to produce and permit inspection and copying of designated books, documents or

20   tangible things in the possession, custody or control of that person." Fed.R.Civ.P. 45(a)(1)(iii).

21   The issuing court may hold a person in contempt for failing to obey a subpoena.  Fed.R.Civ.P.

22   45(e).  "Even though subpoenas are issued by attorneys, they are issued on behalf of the Court

23   and should be treated as orders of the Court."  *Scruggs v. Vance*, 2012 WL 423486, at *1 (E.D.

24   Cal. Feb. 8, 2012) (citation omitted).

25       Civil contempt in the subpoena context consists of a deponent's disobedience to a specific

26   and definite court order by failure to take all reasonable steps within the party's power to comply.

27   *Id.*  "The standard for finding a party in civil contempt is well settled: The moving party has the

28

---

[11] A true and correct copy of DealDefender's counsel's July 9, 2020 letter is attached hereto as **Exhibit 8**.

1  burden of showing by clear and convincing evidence that the contemnors violated a specific and

2  definite order of the court.  The burden then shifts to the contemnors to demonstrate why they

3  were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)

4  (citation omitted).

5      With this Motion, the Trustee has met his burden to show by clear and convincing

6  evidence that in failing to produce a complete production of non-privileged documents responsive

7  to the Subpoena's Document Requests, DealDefenders has violated a specific and definite order

8  of this Court.  The Subpoena was personally served on DealDefenders' agent for service of

9  process,  Harvard Business Services, Inc., on May 4, 2020 at 11:50 a.m. (EPT).  The process

10 server also tendered the required witness and mileage fee at this time.  DealDefenders' objection

11 that the initial designated place of production was not within 100 miles of DealDefenders'

12 headquarters, which is located at 1000 N. West Street, Wilmington, Delaware, was resolved when

13 the Trustee said in the May 27, 2020 meet and confer letter that DealDefenders could produce

14 documents to the Delaware office of ASAP, an attorney services provider, located at 17291

15 Queen Anne Way, Lewes, DE 19958, which is 85.7 miles away from DealDefenders' office. As

16 such, the Subpoena was properly served on DealDefenders.

17     To date, despite DealDefenders' responses that it would produce non-privileged

18 documents responsive to Requests No. 1, 5, 10, 11, 12, 13 and 15, DealDefenders has not

19 produced any documents aside from the Preliminary Production, which as DealDefenders

20 acknowledged in its July 9, 2020 letter, does not represent the universe of responsive documents.

21 Moreover, DealDefenders as the escrow company was an agent and a fiduciary of the Debtor.  In

22 this way, any documents and communications related to DealDefenders' services on behalf the

23 Debtor would not be confidential.    Any privileges arising from the relationship between

24 DealDefenders and the Debtor, if any, now belong to the Trustee.    On the other side,

25 DealDefenders has not provided any documents to substantiate its confidentiality concerns with

26 respect to its customers (i.e. the factoring counterparties).  If DealDefenders truly believed that it

27 has confidential information and that proceeding under the Trustee's protective order was

28 improper then it should have filed a timely motion for protective order. *Nat'l Acad. of Recording*

1    *Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 683 (C.D. Cal. 2009) (rejecting party's

2    objection to request on confidential information ground when party had not moved for protective

3    order or entered into a stipulated protective order).  Because DealDefenders is in violation of the

4    Court's 2004 Order as well as the Subpoena, the Trustee requests the Court issue an order to

5    show cause why DealDefenders should not be held in civil contempt for failure to provide

6    complete responses, including a production of all non-privileged, responsive documents and

7    communications, to the Subpoena's Document Requests.

8                                                    **IV.**

9                                            **CONCLUSION**

10          Based on the foregoing, the Trustee requests that this Court issue an order, substantially in

11   the form of the proposed order, (1) requiring DealDefenders to show cause why they should not

12   be held in contempt of this Court for their failure to provide a complete document production in

13   response to the Subpoena's Documents Requests; and (2) granting any and all other relief as

14   deemed justified by the Court.

15

16   Dated: July 21, 2020                          **ARENT FOX LLP**

17

18                                    By: */s/ Annie Y. Stoops*
                                         Annie Y. Stoops
19                                       Attorneys for Chapter 7 Trustee

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22530492.1

## **DECLARATION OF ANNIE Y. STOOPS**

I, Annie Y. Stoops, declare as follows:

1.      I am an attorney at the law firm Arent Fox LLP, counsel to the Trustee.  If called as a witness, I could and would testify to the matters set forth in this declaration.

2.      I make this declaration in support of the foregoing *Motion for an Order to Show Cause Why DealDefenders LLC Should Not Be Held in Civil Contempt for Failure to a Provide Complete Responses Pursuant to the Chapter 7 Trustee's Subpoena for Rule 2004 Examination* (the "Motion").  All capitalized terms used herein shall have the meaning ascribed to them in the Motion unless otherwise defined.

3.      A true and correct copy of the Subpoena, which includes a copy of the 2004 Order, the Documents Requests, and proof of service, is attached hereto as **Exhibit 1**.

4.      A true and correct copy of the proposed order apprising DealDefenders of its rights to respond by written explanation and setting forth the Trustee's allegation of the contemptuous conduct, along with possible sanctions and ground for sanctions is attached hereto as **Exhibit 2**.

### **DealDefenders Acted as the Escrow Company for Nearly All of the Debtor's Factoring Arrangements.**

5.      Based on my review of certain third party investigative reports on the Debtors financial records and the Debtor's bank account statements (either produced as part of the Debtor's records or shared by creditors and other interested parties of the estate), I am informed and believe that the main similarity amongst the Debtor's factoring agreements is the use of DealDefenders' services and its accounts to facilitate the movement of the Debtor's funds from the Debtor to the various factoring counterparties.  In this way, DealDefenders and its accounts played a key role in moving the Debtor's funds from the Debtor's U.S. bank accounts to various offshore accounts belonging to potentially illegitimate shell entities, like Ikarim Business Services Ltd.

6.      On its website, DealDefenders holds itself out to be a provider of online escrow services, fund protections, and management services.  A true and correct copy of the printout of the "How It Works" section of DealDefenders' website is attached hereto as **Exhibit 3**; *see also*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

AFDOCS/22530492.1

1   http://www.dealdefenders.com/page_howitworks.php.

2   **The Trustee's Investigation as it Relates to DealDefenders**

3       7.    Based on my research, the factoring counterparties (disclosed in Paragraph 6

4   below) are all foreign entities and appear to only transact with the Debtor through DealDefenders.

5   I believe the documents and communications within DealDefenders' possession, custody, or

6   control are pivotal in determining whether the counterparty entities are legitimate companies.  To

7   that end, I prepared the Documents Requests.

8   **The Preliminary Production**

9       8.    On January 9, 2020, DealDefenders provided a spreadsheet that purportedly

10   disclosed all wires received from the Debtor on or after January 1, 2016.  According to the

11   spreadsheet, DealDefenders received 2,353 wire transfers – totaling approximately $384 million –

12   from the Debtor on behalf of the following entities: Arco Telecom, BTB Systems UG, Holland

13   Commodity Traders BV, iKarim Business Services, Ltd., Interstach GmbH, LTD Tel SLU,

14   MyCore-4-Wholesale B.V., Omega Communication GmbH, Plus AMA Plus AG, Rudare

15   Communications, SL, and Sunnymax Trading GmbH.

16       9.    On March 4, 2020, DealDefenders produced the Preliminary Production

17   (DD000001–DD006302).  I reviewed each document produced in the Preliminary Production.

18   The production was mainly comprised of emails that were either incomplete or not substantive.

19   For example, many of the emails produced had no content in the body while other emails

20   appeared to have been sent with attachments, but these attachments were not included in the

21   production.  One document was 5,340 pages and looked to be a word document version of the

22   spreadsheet provided on January 9, 2020.

23       10.    Noticeably absent from the production were any documents and communication

24   from DealDefenders' subsidiaries, TelFinance LLC, DealDefenders EU LLC, and TxtFinance

25   LLC.  These documents relating to DealDefenders' escrow terms and conditions were not

26   included in the Preliminary Production.

27   **The Receiver's Subpoena**

28       11.    I worked with the Receiver's counsel, Chris Sullivan, to conduct the meet and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22530492.1

1    confer discussions jointly with DealDefenders.   A true and correct copy of the Receiver's

2    subpoena is attached hereto as **Exhibit 4**.

3                    **DealDefenders' Inadequate Responses and Ensuing Meet and Confer Discussions**

4            12.    On May 18, 2020, DealDefenders provided their responses to the Document

5    Requests.  A true and correct copy of DealDefender's responses and objections to the Subpoena is

6    attached hereto as **Exhibit 5**.

7            13.    A true and correct copy of the meet and confer letter, dated May 27, 2020, from

8    our office is attached hereto as **Exhibit 6**.

9            14.    On June 2, 2020, my colleague David Bayles and myself along with Receiver's

10   counsel, Chris Sullivan, and counsel for DealDefenders conferred by phone.   At this time,

11   DealDefenders' counsel, particularly Robert Malone, continued to assert that the Preliminary

12   Production were all responsive documents.  In response I pointed out all the types of responsive

13   documents missing from the Preliminary Production (e.g. documents related to the escrow

14   conditions and terms, documents/communications from the subsidiaries).

15           15.    On June 3, 2020, I sent a follow up email that summarized the types of responsive

16   documents DealDefenders was obligated to produce.   With this email, I attached two email

17   communications between the Debtor and DealDefenders that were responsive but not produced,

18   as examples showing that the Preliminary Production could not be considered a complete

19   production.

20           16.    Over the next three weeks, I continued to follow up with DealDefenders' counsel

21   for their comments to the protective order and an update on when further production of

22   documents would be made with respect to those responses that said DealDefenders would

23   produce non-privileged, responsive documents.   DealDefenders' counsel would not give a

24   definitive date for further productions.

25           17.    On June 19, 2020, DealDefenders' counsel provided their comments to the

26   Trustee's protective order and took it upon themselves to generate a second protective order for

27   the Receiver that was substantive identical to the Trustee's protective order.   Certain changes

28   proposed by DealDefenders were inappropriate and impermissibly self-serving.   One change

1    sought to shift the burden of challenging confidentiality designations from the designating party

2    to the challenging party.  This was unworkable since the burden of proving that information had

3    been properly designated would have to be on the actual party making the designation.  Another

4    example of an inappropriate change was DealDefenders sought to broaden the scope of

5    confidential information far beyond the protection afforded under the appropriate statutory

6    authority, FRCP 26(c).  Such that the changes appeared to be made in bad faith and confirmed my

7    lingering suspicion that DealDefenders was seeking to prolong the meet and confer process and

8    delay the complete production of documents in bad faith.  It had been over a month since

9    DealDefenders provided its responses, and DealDefenders had not produce a single additional

10    documents even though it is clear there must be some responsive documents that would not be

11    subject to the protective order (e.g. emails coordinating receipt of the wires received from the

12    Debtor).

13        18.    In a last effort to salvage the parties' meet and confer discussions, I revised the

14    protective order with changes in response to DealDefenders' changes and requested that the

15    parties get on a call to discuss any remaining issues with the protective order and timing for future

16    productions.  DealDefenders' counsel responded to my emails saying that they did not want to

17    proceed with discussions until the Receiver's counsel provided his comments on the nearly

18    identical version of the Trustee's protective order that DealDefenders took upon itself to create.

19    Even after confirmation from the Receiver's counsel that the Receiver agreed to be bound by the

20    Trustee's protective order and would hold in abeyance its subpoena for documents so long as

21    DealDefenders's production moves forward in a timely manner, DealDefenders' counsel

22    continued to argue that two separate protective orders were required.

23        19.    These inappropriate changes proposed by DealDefenders to the protective order

24    coupled with DealDefenders' insistence on two separate protective orders, even after written

25    assurance from the Receiver that the parties could proceed under the Trustee's protective order,

26    made it clear to me and my colleagues that DealDefenders was not conferring in good faith and

27    would not produce a complete set of non-privileged, responsive documents without court

28    intervention.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

AFDOCS/22530492.1

20.     In the final demand for DealDefenders to provide complete responses to the Document Requests, I sent a letter on July 3, 2020, reiterating all the reasons why the DealDefenders' responses and the Preliminary Production were inadequate.  I also outlined all the actions (as well as inactions) and positions of DealDefenders that taken together showed DealDefenders' true intention of seeking to hinder the Trustee's efforts to obtain information on where and to whom the Debtor's monies were sent.  The letter informed that we would continue to meet and confer in good faith on the protective order so long as DealDefenders commit to complete production of all non-privileged, responsive documents by no later than 5:00 p.m. (PT) on July 21, 2020.  The letter advised that should DealDefender fail to provide complete responses by this time, the Trustee would seek court intervention to compel DealDefenders to produce the relevant documents.  A true and correct copy of my July 3, 2020 letter is attached hereto as **Exhibit 7**.

21.     DealDefenders responded a week later on July 9, 2020, with its own letter.  In which, DealDefenders made statements that were patently false.  This representations included denying that DealDefenders said the Preliminary Production represented the universe of responsive documents and asserting that the examples of emails missing from the Preliminary Production were outside the requested time range when two of the three email examples were clearly within the appropriate time range.  A true and correct copy of this July 9, 2020 letter is attached hereto as **Exhibit 8**.

///

///

///

22.    Thereafter, we still could not come to an agreement on the protective order. DealDefenders failed to provide a complete production of non-privileged, responsive documents by deadline of 5:00 p.m. (PT) on July 21, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of July, 2020, at Los Angeles, California.


*/s/ Annie Y. Stoops*

Annie Y. Stoops

AFDOCS/22530492.1

1    ## DECLARATION OF DAVID G. BAYLES

2    I, David G. Bayles, declare as follows:

3    1.    I am an attorney at the law firm Arent Fox LLP, counsel to the Trustee.  If called

4    as a witness, I could and would testify to the matters set forth in this declaration.

5    2.    I make this declaration in support of the foregoing *Motion for an Order to Show*

6    *Cause Why DealDefenders LLC Should Not Be Held in Civil Contempt for Failure to a Provide*

7    *Complete Responses Pursuant to the Chapter 7 Trustee's Subpoena for Rule 2004 Examination*

8    (the "Motion").  All capitalized terms used herein shall have the meaning ascribed to them in the

9    Motion unless otherwise defined.

10    **Meet and Confer Discussions Preceding the 2004 Order**

11    3.    On October 29, 2019, I spoke with DealDefenders' principal, Jeff Ellentuck, by

12    telephone regarding the relief requested in this Motion.  In particular, I reached out to Mr.

13    Ellentuck to discuss the production of documents and to schedule a mutually agreeable date, time,

14    and place for the oral examination.

15    4.    On November 1, 2019, I received a voicemail from attorney Robert K. Malone,

16    advising that he would be representing DealDefenders in connection with the subject 2004

17    examination.

18    5.    After some delay due to scheduling difficulties, on November 12, 2019, I spoke

19    with Mr. Malone by telephone.  At which time, I requested that the parties enter into a stipulated

20    protective order given DealDefenders' confidentiality concerns.  Mr. Malone responded that same

21    day saying that the protective order was premature because he wanted to understand what

22    documents would be produced.

23    6.    On November 18, 2019, Mr. Malone sent me an email, wherein he represented that

24    DealDefenders did not provide escrow services to the Debtor and that DealDefenders did not

25    have any factoring arrangements with the Debtor.

26    7.    That same day, I amended the document requests in accordance with Mr. Malone's

27    foregoing representations.

28    8.    On November 19, 2019, I conferred with both Mr. Malone and Mr. Ellentuck by

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

AFDOCS/22530492.1

1  telephone.  During this conference call, Mr. Ellentuck represented that DealDefenders only had

2  agreements with its customers (the factoring counterparties), not the Debtor, and that its

3  agreements with the its customers required DealDefenders to disburse funds belonging to its

4  customers according to the customer's instructions, including any monies received from third

5  parties (such as the customer's factors, like the Debtor)   According to Mr. Ellentuck, there was

6  no agreement between the Debtor and DealDefenders; the Debtor only sent wire transfers to

7  DealDefenders because the factoring counterparties (DealDefenders' customers) would only

8  transact with the Debtor via DealDefenders.

9      9.      During this November 19, 2019 call, Mr. Ellentuck also said that DealDefenders

10  would not produce any documents or communications related to DealDefenders' relationship with

11  its customers (the factoring counterparties) absent a criminal subpoena.  Mr. Ellentuck agreed to

12  provide limited information – the names of its customers and their identifying numbers – on all

13  incoming wire transfers received by DealDefenders from the Debtor.  Mr. Ellentuck represented

14  that he would also produce all responsive emails, correspondence, and texts.

15      I declare under penalty of perjury under the laws of the United States of America that the

16  foregoing is true and correct.

17      Executed this 21st day of July, 2020, at Los Angeles, California

18

19

20                                        David G. Bayles

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22530492.1

- 25 -

# EXHIBIT 1

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central _____ District of _____ California - Los Angeles Division _____

In re VoIP Guardian Partners I, LLC _____     Case No. _2:19-bk-12607-BR_____
              Debtor

                                                     Chapter   7 _____

## SUBPOENA FOR RULE 2004 EXAMINATION

To: Custodian of Records for DealDefenders LLC, c/o Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, DE 19958 __
              *(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Arent Fox LLP, 1717 K Street NW, Washington, DC 20006 | June 22, 2020 at 10:00 a.m. EPT |

The examination will be recorded by this method: Stenographer and/or videographer _____

☒ *Production:* You, or your representatives, must also produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Documents Requests attached hereto as Exhibit B.

| PLACE | DATE AND TIME |
|---|---|
| Arent Fox LLP, 1717 K Street NW, Washington, DC 20006<br>Attn: Annie Y. Stoops<br>Email: annie.stoops@arentfox.com | No later than June 15, 2020 at 5:00 p.m. EPT |

     The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 4, 2020

              CLERK OF COURT

                                           OR

      _____          _____
      *Signature of Clerk or Deputy Clerk*        *Attorney's signature*
                                           Annie Y. Stoops

The name, address, email address, and telephone number of the attorney representing *(name of party)*
  Chapter 7 Trustee, Timothy Yoo  , who issues or requests this subpoena, are:
 Annie Y. Stoops, Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013, annie.stoops@arentfox.com, (213) 629-7400

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 - Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):*  _____
on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

My fees are $ _____for travel and $ _____for services, for a total of $_____.


     I declare under penalty of perjury that this information is true and correct.

Date: _____

                                                    _____
                                                                  *Server's signature*

                                                    _____
                                                                  *Printed name and title*

                                                    _____
                                                                  *Server's address*


Additional information concerning attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

B2540 (Form 2540 - Subpoena for Rule 2004 Examination) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B)Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

---

AFDOCS/22103581.1

American LegalNet, Inc.
www.FormsWorkFlow.com


# EXHIBIT A

Aram Ordubegian (SBN 185142)
Andy S. Kong (SBN 243933)
Annie Y. Stoops (SBN 286325)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone:    213.629.7400
Facsimile:    213.629.7401
Email:    aram.ordubegian@arentfox.com
          andy.kong@arentfox.com
          annie.stoops@arentfox.com

Attorneys for Chapter 7 Trustee

**FILED & ENTERED**

**APR 30 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

In re:

**VOIP GUARDIAN PARTNERS I, LLC,**

Debtor.

Case No. 2:19-bk-12607-BR

Chapter 7

**ORDER GRANTING CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING EXAMINATION OF DEALDEFENDERS LLC AND SERVICE OF SUBPOENA TO PRODUCE DOCUMENTS PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE;**

Document Production Date:

Date:    June 15, 2020
Time:    5:00 p.m.
Place:   Arent Fox LLP
         1717 K Street NW
         Washington, DC 20006

Oral Examination Date:

Date:    June 22, 2020
Time:    10:00 a.m.
Place:   Arent Fox LLP
         1717 K Street NW
         Washington, DC 20006

*[No Hearing Required Pursuant to Local Bankr. R. 2004-1(d) and 9013-1(p)]*

1    The Court has reviewed and considered the *Chapter 7 Trustee's Notice of Motion and*

2    *Motion for Order Authorizing Examination of DealDefenders LLC and Service of Subpoena to*

3    *Produce Documents Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Dkt

4    No. 43] (the "Motion") filed in the above-captioned case.  All capitalized terms used herein shall

5    have the meaning ascribed to them in the Motion unless otherwise defined.

6    After considering the Motion; the notice of the Motion; the Declarations of Timothy Yoo

7    and David G. Bayles in support of the Motion; and the record in this case, the Court finds that:

8    (1) notice of the Motion was adequate and appropriate under the particular circumstances and no

9    other notice need be given; (2) no hearing on the Motion is required pursuant to the Local

10    Bankruptcy Rules; and (3) other good and sufficient cause exists for granting the relief requested

11    in the Motion.

12    **IT IS ORDERED THAT:**

13    1.    The Motion is granted.

14    2.    The Trustee is authorized to subpoena the documents listed in **Exhibit A** to be

15    produced by DealDefenders LLC to the offices of Arent Fox LLP, 1717 K Street NW,

16    Washington, DC 20006, by no later 5:00 p.m. on June 15, 2020.

17    3.    DealDefenders LLC is required to appear for an oral examination on June 22,

18    2020, commencing at 10:00 a.m. and to be conducted at the offices of Arent Fox LLP, 1717 K

19    Street NW, Washington, DC 20006.

###

Date: April 30, 2020

Barry Russell
United States Bankruptcy Judge

- 2 -

31

# EXHIBIT B

## EXHIBIT B TO DEPOSITION SUBPOENA TO DEALDEFENDERS LLC

## I.

## INSTRUCTION AND PRELIMINARY STATEMENT

The following instructions shall be considered to be applicable to all demands for production of documents contained herein:

A.  In producing documents and things, you are requested to furnish all documents known or available to you, regardless of whether these documents are in your possession, custody or control or are possessed by any subsidiary or affiliated entities, officers, directors, agents, employees, representatives, investigators, or by your attorneys or their agents, employees, representatives or investigators.

B.  In producing documents, any comment, notation, or marking appearing on any document and not a part of the original is to be considered a separate document, and any draft, preliminary form or superseded version of any document is also to be considered a separate document.

C.  In producing documents, all documents should be produced in the same order as they are kept or maintained.

D.  In producing documents, all documents should be produced in the file, folder, envelope or other container in which the documents are kept or maintained.  If for any reason said container cannot be produced, please produce copies of all labels or other identifying markings.

E.  In producing documents, documents attached to each other must not be separated.

F.  In producing documents, if you assert any privilege concerning the identification or production of any of the documents described below, or if you object to the identification or production of any such documents on any grounds, or if you for any reason contend that any of the documents described below are not subject to discovery for any reason, then specify in detail in your response, the precise grounds for the objection, privilege, or other contention which you make in this regard, and describe in detail the document or documents as to which you assert this privilege, objection or contention.  Such description shall include a statement of the general nature of the document, the name of each person who executed it, the name of each person who has

1    received the original or copies of it, the name of each person who has seen the original or any copies

2    of it, the name of each person with whom it was discussed, and a general description of the nature

3    and contents of the documents.  Finally, you should identify and produce for inspection and copying

4    all documents which fit the description set forth below as to which you do not assert any such

5    privilege, objection or contention.

6        G.    In producing document, you are to consider this request a continuing request, and

7    you are obligated to supplement your response by identifying and producing responsive documents

8    that come to your attention, or into your possession, custody or control, subsequent to you response

9    and production prior to, or at the deposition or at or prior to any continued deposition date thereof.

10                        **II.**

11                    **DEFINITIONS**

12        A.    The term "DEBTOR" refers to the above-captioned debtor VoIP Guardian Partners

13    I, LLC, and any agent, partner, employee, member, officer, or director, or any other entity or

14    individual acting on behalf of VoIP Guardian Partners I, LLC, including but not limited to, Rodney

15    A. Omanoff.

16        B.    The term "VOIP MANAGEMENT" refers to VoIP Guardian LLC (the management

17    entity of the DEBTOR), and any agent, partner, employee, member, officer, or director, or any

18    other entity or individual acting on behalf of VoIP Guardian LLC, including but not limited to,

19    Rodney A. Omanoff.

20        C.    The terms "YOU" and "YOUR" refer to DealDefenders LLC, all of its wholly-

21    owned subsidiaries, including TelFinance LLC, DealDefenders EU LLC, and TxtFinance LLC, and

22    any agent, partner, employee, member, officer, or director, or any other entity or individual acting

23    on behalf of DealDefenders LLC and/or its wholly-owned subsidiaries, including but not limited

24    to, Jeff Ellentuck.

25        D.    The term "CUSTOMER" refers to any business entities for which YOU received

26    funds from the Debtor, including but not limited to, MyCore-4-Wholesale B.V. and IKarim

27    Business Services, LLC.

28        E.    The term "COMMUNICATION" shall mean correspondence, telephone

conversations, person-to-person conversations, memoranda, e-mails (including text messages, correspondence and the like), facsimiles, telegrams, press releases, announcements, audio and video recordings and all other forms of communicating language or thought.

F.    The term "DOCUMENTS" shall mean and refer to the definition of "writing" set forth in Federal Rule of Evidence 1001, and includes the original and any non-identical duplicates, and both sides thereof, no matter how produced, prepared, stored, recorded, reproduced or transmitted, of handwriting, typewriting, printing, photostatting, photographing, electronic mail (e-mail) and every other means of recording upon any tangible thing, documents stored in electronic form, computerized records, computer files and all other information capable of being retrieved from a computer, and any other form of communication and representation, including letters, words, pictures, sounds, and symbols, or combinations thereof, and including correspondence, letters and other communications.

G.    The terms "ALL" and "ANY" means "all, each, and every."

H.    The phrase "RELATE TO" shall mean mentioning, discussing, including, summarizing, describing, reflecting, containing, referring to, relating to, depicting, connected with and boding, evidencing, constituting, concerning, reporting, or involving an act, occurrence event, transaction, fact, thing or course of dealing.

## III.

## DOCUMENTS TO BE PRODUCED

### REQUEST FOR PRODUCTION NO. 1:

ALL DOCUMENTS and COMMUNICATION that RELATE TO the services YOU provided to the DEBTOR from February 1, 2016 to the present.

### REQUEST FOR PRODUCTION NO. 2:

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR protocol, procedures, and/or process for releasing funds on behalf of the DEBTOR.

### REQUEST FOR PRODUCTION NO. 3:

ALL DOCUMENTS and COMMUNICATION that RELATE TO the services YOU provided to VOIP MANAGEMENT from February 1, 2016 to the present.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

**REQUEST FOR PRODUCTION NO. 4:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR protocol, procedures, and/or process for releasing funds on behalf of VOIP MANAGEMENT.

**REQUEST FOR PRODUCTION NO. 5:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO the services YOU provided to each CUSTOMER from February 1, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 6:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR protocol, procedures, and/or process for releasing funds on behalf of each CUSTOMER.

**REQUEST FOR PRODUCTION NO. 7:**

ALL bank account statements for the period from February 1, 2016 to the present for ANY account in which YOU received monies on behalf of the DEBTOR, including but not limited to, the Bank of America, N.A. account with the account number ending in 5992.

**REQUEST FOR PRODUCTION NO. 8:**

ALL bank account statements for the period from February 1, 2016 to the present for ANY account in which YOU received monies on behalf of VOIP MANAGEMENT, including but not limited to, the Bank of America, N.A. account with the account number ending in 5992.

**REQUEST FOR PRODUCTION NO. 9:**

ALL bank account statements for the period from February 1, 2016 to the present for ANY account in which YOU received monies on behalf of each CUSTOMER, including but not limited to, the Bank of America, N.A. account with the account number ending in 5992.

**REQUEST FOR PRODUCTION NO. 10:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR receipt of monies from the DEBTOR from February 1, 2016 to the present, including but not limited to, incoming payment reports.

**REQUEST FOR PRODUCTION NO. 11:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR receipt of monies from VOIP MANAGEMENT from February 1, 2016 to the present, including but not limited to,

1  incoming payment reports.

2  **REQUEST FOR PRODUCTION NO. 12:**

3  ALL DOCUMENTS and COMMUNICATION evidencing any outgoing transfers of

4  monies from February 1, 2016 to the present that were made on behalf of DEBTOR.

5  **REQUEST FOR PRODUCTION NO. 13:**

6  ALL DOCUMENTS and COMMUNICATION evidencing any outgoing transfers of

7  monies from February 1, 2016 to the present that were made on behalf of VOIP MANAGEMENT.

8  **REQUEST FOR PRODUCTION NO. 14:**

9  ALL DOCUMENTS and COMMUNICATION evidencing any outgoing transfers of

10  monies from February 1, 2016 to the present that were made on behalf of each CUSTOMER.

11  **REQUEST FOR PRODUCTION NO. 15:**

12  ALL COMMUNICATION with the DEBTOR from February 1, 2016 to the present.

13  **REQUEST FOR PRODUCTION NO. 16:**

14  ALL COMMUNICATION with VOIP MANAGEMENT from February 1, 2016 to the

15  present.

16  **REQUEST FOR PRODUCTION NO. 17:**

17  ALL COMMUNICATION with each CUSTOMER from February 1, 2016 to the present

18  that RELATE TO the DEBTOR.

19  **REQUEST FOR PRODUCTION NO. 18:**

20  ALL COMMUNICATION with each CUSTOMER from February 1, 2016 to the present

21  that RELATE TO the VOIP MANAGEMENT.

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

B2540 (Form 2540 - Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):*  Custodian of Records for DealDefenders LLC, c/o Harvard Business Services, Inc.
on *(date)*  5/01/20  .

☒ I served the subpoena by delivering a copy to the named person as follows:   Allison Rothmanner, Office Clerk
 Address: 16192 Coastal Highway, Lewes, DE 19958

_____ on *(date)* 5/04/20 @ 11:50 a.m.; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $  40.00  .

My fees are $ _____ for travel and $ _____ for services, for a total of $_____.

    I declare under penalty of perjury that this information is true and correct.

Date:  5/06/20

                                    *Don Oliphant*
                                    *Server's signature*

                                    **Don Oliphant, Delaware process server**
                                    ASAP Legal, LLC   *Printed name and title*
                                    1607 James M. Wood Blvd., Los Angeles, CA 90015
                                    (213) 252-2000            [32084646.rxc]
                                    *Server's address*

Additional information concerning attempted service, etc.:



EXHIBIT 2

1  Aram Ordubegian (SBN 185142)
   Andy S. Kong (SBN 243933)
2  Annie Y. Stoops (SBN 286325)
   **ARENT FOX LLP**
3  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
4  Telephone:    213.629.7400
   Facsimile:    213.629.7401
5  Email:        aram.ordubegian@arentfox.com
                 andy.kong@arentfox.com
6                annie.stoops@arentfox.com

7  Attorneys for Chapter 7 Trustee

8                 **UNITED STATES BANKRUPTCY COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

10

11 | In re: | Case No. 2:19-bk-12607-BR |
12 | **VOIP GUARDIAN PARTNERS I, LLC,** | Chapter 7 |
13 | Debtor. | **ORDER DIRECTING DEALDEFENDERS LLC TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR FAILURE TO PROVIDE COMPLETE RESPONSES PURSUANT TO THE CHAPTER 7 TRUSTEE'S SUBPOENA FOR RULE 2004 EXAMINATION** |

17                                  Order to Show Cause Hearing :

18                                  **Date**:
                                    **Time**:
19                                  **Place**:    255 E. Temple Street, Courtroom 1668
                                                 Santa Ana, CA 92701
20

21       IN   THIS   DISTRICT,   AT   SANTA   ANA,   CALIFORNIA,   ON   THE   DATE

22  INDICATED BELOW:

23          The Court having reviewed and considered (i) the *Notice of Motion and Motion for an*

24  *Order to Show Cause Why DealDefenders LLC Should Not be Held in Civil Contempt for Failure*

25  *to Provide Complete Responses Pursuant to the Chapter 7 Trustee's Subpoena for Rule 2004*

26  *Examination; Memorandum of Points and Authorities; Declarations of Annie Y. Stoops and*

27  *David G. Bayles in Support Thereof* [Dkt. No. 65] (the "Motion")[1]; (ii) the objections thereto, if

28

---

[1]   Capitalized terms not defined in this Order are defined in the Motion.

AFDOCS/22545774.1

1    any; (iii) the statements of counsel and the evidence presented in support of the relief requested

2    by the Trustee in the Motion and at the hearing, if any, and it appearing that the Court has

3    jurisdiction over this matter (and that all parties with any interest in the relief requested in the

4    Motion, by failing to object, have consented thereto); (iv) adequate notice of the Motion has been

5    provided to all interested parties; and (v) it further appearing that the legal and factual bases set

6    forth in the Motion and at the hearing establish just cause for the relief granted herein; and after

7    due deliberation thereon; and good and sufficient cause appearing therefor

8    **IT IS HEREBY ORDERED THAT:**

9    1.    The Motion is granted in its entirety.

10    2.    DealDefenders is hereby ordered to appear at 255 E. Temple Street, Courtroom

11    1668, Los Angeles, CA 90012 on _____ at _____ to show cause why

12    they should not be held in contempt for failing to provide complete responses pursuant to the

13    Trustee's *Subpoena for Rule 2004 Examination* ("Subpoena") and this Court's *Order Granting*

14    *Chapter 7 Trustee's Notice of Motion and Motion for Order Authorizing Examination of*

15    *DealDefenders LLC and Service of Subpoena to Produce Documents Pursuant to Rule 2004 of*

16    *the Federal Rules of Bankruptcy Procedure* [Dkt. No. 45] (the "2004 Order").  The Subpoena and

17    2004 Order specifically and definitely required DealDefenders to produce all non-privileged

18    documents responsive to the Document Requests attached as Exhibit B to the Subpoena, by no

19    later than June 15, 2020 at 5:00 p.m.

20    3.    Any response to the Order to Show Cause <u>must be in writing</u> and must be filed and

21    served by _____ .

22    //

23    //

24    //

25    //

26    //

27    //

28    //

Arent Fox LLP
Attorneys At Law
Los Angeles

AFDOCS/22545774.1

40

1        4.       Where DealDefenders fails to comply with the Order to Show Cause, the Court

2 may, in its discretion and pursuant to Fed. R. Civ. P. 37 (incorporated by Fed. R. Bankr. P. 7037),

3 impose sanctions for each day that they fail to comply with the 2004 Order; and award to the

4 Trustee his attorneys fees and costs incurred in preparing and filing the Motion and attending the

5 hearing thereon.

6                                 # # #

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 3

# How It Works

Home (index.html)  /  How It Works

## Overview

While DealDefenders deals with a variety of escrow transactions, there are two basic escrow types:

**Direct Two Party Transactions**

These are direct transactions between two parties (Seller-Buyer)

**Multi-Party Transactions**

These are transactions that involve three or more parties (Seller-Broker-Buyer, Seller-Wholesaler-Buyer, etc.). In some Multi-Party Transactions, all of the parties know each other party. In other Multi-Party Transactions, only the broker or wholesaler knows the identities of the Buyer and Seller.



## Direct Two Party Transactions

➲ Buyer and Seller agree on terms and conditions of the transaction

➲ They agree to the DealDefenders escrow terms and conditions

➲ The Buyer funds the transaction using funds held by DealDefenders or by transmitting funds to DealDefenders

➲ The Buyer confirms receipt of the services

➲ When the services are accepted, DealDefenders releases the funds to the Seller

42



## Full Disclosure Multi-Party Transactions

➡ Buyer, Broker/Wholesaler and Seller agree on terms and conditions of the transaction

➡ They agree to the DealDefenders escrow terms and conditions

➡ The Buyer funds the transaction using funds held by DealDefenders or by transmitting funds to DealDefenders

➡ The Buyer confirms the services

➡ When the services are accepted, DealDefenders releases the funds to the Seller and Broker/Wholesaler as agreed



## Back to Back Multi-Party Transactions (Circumvention Protection)

➡ Buyer and Broker/Wholesaler agree on terms and conditions of a sell transaction

➡ Seller and Broker/Wholesaler agree on terms and conditions of a buy transaction

➡ Two separate escrows are created under the DealDefenders escrow terms and conditions

❯ The Buyer funds the transaction using funds held by DealDefenders or by transmitting funds to DealDefenders

❯ The Buyer confirms receipt of the services

❯ When the services are accepted, DealDefenders releases the funds as agreed

❯ Broker/Wholesaler is protected from circumvention

## The DealDefenders LLC Team

✔ Has decades of business experience
✔ Has handled thousands of transactions
✔ Has protected billions in value
✔ Will protect your deal

## Contact Us

1000 N West Street
Suite 1200
Wilmington, DE 19801
USA
Phone: +1 302 384 9805
Email: support@dealdefenders.com (mailto:support@dealdefenders.com)

2016 © dealdefenders llc. All Rights Reserved.  Privacy Policy (docs/DD_Privacy_Statement.pdf)  |  Terms of Service (docs/DD_Privacy_Statement.pdf)

 (index.php)



44

EXHIBIT 4

KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

CHRISTOPHER D. SULLIVAN (148083)
*csullivan@diamondmccarthy.com*
STACEY L. PRATT (124892)
*stacey.pratt@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Phone: (415) 692-5200

*Counsel for Bradley D. Sharp,*
*Permanent Receiver*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19−cv−02188−DSF−MRW<br>Hon. Dale S. Fischer |
| Plaintiff, | |
| v. | **NOTICE OF SUBPOENA** |
| DIRECT LENDING INVESTMENTS, LLC, | |
| Defendant. | |

PLEASE TAKE NOTICE THAT, pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Court-appointed Permanent Receiver Bradley D. Sharp, through counsel, will cause the attached Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to be served on

1

1  DealDefenders LLC, a Delaware limited liability company.  A true and correct copy

2  of the Subpoena is attached hereto as Exhibit 1.

3

4  DATED: March 27, 2020              DIAMOND McCARTHY LLP

5

6

7

8  By:  Christopher Sullivan
       Counsel for Bradley D. Sharp
9      Permanent Receiver

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

NOTICE OF SUBPOENA

**PROOF OF SERVICE**

I hereby declare under penalty of perjury pursuant to the laws of the state of California that I am a citizen of the United States, over the age of eighteen years, and not a party to the within-entitled action. My business address is 150 California Street, Suite 2200, San Francisco, CA 94111 and my email address is *aiemee.low@diamondmccarthy.com.*

On **March 27, 2020**, I served a copy of the **NOTICE OF SUBPOENA TO DEALDEFENDERS LLC, A DELAWARE LIMITED LIABILITY COMPANY** on:

X     **SERVED BY UNITED STATES MAIL**:

I served the following persons and/or entities at the last known addresses by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows:

> Amy J. Longo
> Lynn M. Dean
> Christopher A. Nowlin
> Securities and Exchange Commission
> 444 S. Flower Street, Suite 900
> Los Angeles, California 90071
> Counsel for Plaintiff

X     **SERVED VIA ELECTRONIC TRANSMISSION/EMAIL**

On **March 27, 2020,** I served the following persons and/or entities by transmitting via electronic mail the document listed above to the address set forth below:

> Amy Longo, longoa@sec.gov
> Lynn M. Dean, deanl@sec.gov
> Christopher A. Nowlin, nowlinc@sec.gov

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary

1

1  course of business.  I am aware that on motion of the party served, service is
2  presumed invalid if postal cancellation date or postage meter date is more than one
3  day after date of deposit for mailing in affidavit.
4      I declare under penalty of perjury under the laws of the state of California
5  that the above is true and correct.
6      Executed on March 27, 2020, at San Francisco, California.

9  Aiemee K. Low

2

PROOF OF SERVICE

48

# Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No.   2:19-cv-02188-DSF-MRW |
| DIRECT LENDING INVESTMENTS, LLC, | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                     DealDefenders LLC, a Delaware limited liability company

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following
documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the
material:
     See Attachment "A" hereto for the list of documents requested.

| Place: First Legal Records c/o parcels, Inc.<br>230 N. Market Street<br>Wilmington, Delaware 19801 | Date and Time:<br><br>05/08/2020 10:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or
other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party
may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

     The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance;
Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to
respond to this subpoena and the potential consequences of not doing so.

Date:     03/26/2020

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | _Chris Sullivan /ko_ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_  Bradley D. Sharp,
Permanent Receiver                                          , who issues or requests this subpoena, are:

 Christopher D. Sullivan, 150 California Street, Ste. 2200, San Francisco, CA  94111, csullivan@diamondmccarthy.com, 415-692-5200.

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the
inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before
it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:19-cv-02188-DSF-MRW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT "A"

## I. DEFINITIONS

As used herein, unless otherwise indicated:

1.      "YOU" or "YOUR" refers to DealDefenders LLC, a Delaware limited liability company and all of its affiliates, predecessors and successors in interest, all of its present and former members, owners, partners, shareholders, agents, officers, directors, employees, associates, representatives, managers, administrators, advisors, attorneys, subsidiaries, affiliates, divisions, branches, and any other PERSON (as defined below) acting, understood to act, or purporting to act on its behalf or otherwise subject to or under its direction or control, including but not limited to TelFinance and Txt Finance.

2.      "COMMUNICATION(S)" means the transmittal of information (in the form of facts, ideas, inquiries, opinions, thoughts or otherwise), written, electronic, oral or otherwise, of any nature, type or kind including, but not limited to, any DOCUMENTS (as defined below), telephone conversations, discussions, meetings, facsimiles, e-mails, instant and/or text messages, letters, handwritten notes, pagers, memoranda, social media, and any other medium through which any information is conveyed or transmitted, and any DOCUMENTS (as defined below) referred to or attached to any COMMUNICATION(S).

3.      "DLI ENTITIES" means any and all of the entities known as (i) Direct Lending Investments, LLC, a California limited liability company; (ii) Direct Lending Income Fund, L.P., a Delaware limited partnership; (iii) Direct Lending Income Feeder Fund, Ltd., a Cayman Islands Exempted Company; (iv) DLI Capital, Inc., a Nevada corporation; (v) DLI Lending Agent, LLC, a Delaware limited liability company; (vi) DLI Assets Bravo, LLC, a Nevada limited liability company; (vii) DLI Assets, LLC, a Nevada limited liability company; (viii) DLI SPV I, LLC, a Delaware limited liability company; and (ix) DLI TC, LLC, a Delaware limited liability company and any of its or their owners, partners, shareholders, members, agents, officers, directors, employees, representatives, accountants, attorneys, associates, subsidiaries, affiliates, divisions, branches, and all other PERSONS (as defined below) acting, understood to act, or purporting to

- 1 -

53

act on its or their behalf or under its or their direction or control.

4.      "DOCUMENT(S)" means all originals, drafts and modifications of originals, as well as copies, duplicates, and counterparts of originals, of written, printed, typed, graphic, recorded, ELECTRONICALLY STORED INFORMATION (as defined below), and visually or orally reproduced material of any kind, whether or not privileged, and includes, but is not limited to, correspondence, business records, memoranda, reports, telephone records and notations, diaries, calendars, minutes, contracts, agreements, orders, receipts, invoices, bills, pictures, drawings or sketches, blueprints, designs, notebooks, advertising and commercial literature, promotional literature of any kind, cables, telexes, telegrams, recordings, patents, lists, charts, pamphlets, appendices, exhibits, summaries, outlines, logs, journals, agreements, work papers, statements, records of inventory, financial and/or accounting records, catalogues, trade journals, and any other documented or recorded information.  The term "DOCUMENT(S)" also includes every other manner by which information is recorded or transmitted, including but not limited to, microfilms, punch cards, disks, tapes, computer programs, printouts, all recordings made through data processing techniques, and instructions and directions for use of the data processing equipment to obtain the information recorded by that method.  The term "DOCUMENT(S)" refers to copies, duplicates, and/or counterparts only where (i) the copy, duplicate, or counterpart is not exactly identical to the original or (ii) YOUR records only contain a copy, duplicate, or counterpart of the original and not the original itself.

5.      "ELECTRONICALLY STORED INFORMATION" means without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by YOU, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, social media accounts or other information-storing electronic devices.

6.      "FACTORING PARTNERS" refers to any business entities that entered into factoring arrangements with VoIP (as defined below), including but not limited to Hilf Telecom

- 2 -

B.V.

7.     "ISAACS" means the individual Mandy Isaacs and any of her agents, employees, representatives, accountants, or attorneys, and all other PERSONS (as defined below) acting, understood to act, or purporting to act on her behalf or under her direction or control.

8.     "OMANOFF" means the individual Rodney Omanoff and any of his agents, employees, representatives, accountants, or attorneys, and all other PERSONS (as defined below) acting, understood to act, or purporting to act on his behalf or under his direction or control.

9.     "PERSON" means any natural person or any legal entity, including without limitation, any business or governmental entity or association.

10.     "PERTAINING TO" is used in its broadest sense and means directly or indirectly, in whole or in part, mentioning, constituting, describing, concerning, containing, evidencing, detailing, embodying, evaluating, discussing, being connected with, referring to, relating to, dealing with, supporting, corroborating, demonstrating, proving, showing, stating, refuting, disputing, rebutting, controverting, contradicting, supplementing, analyzing, identifying, amending, superseding, replacing, modifying, or in any way reflecting upon a stated subject matter, in whole or in part, including but not limited to the subject matter of the particular request.

11.     "ROSS" means the individual Brendan Ross and any of his agents, employees, representatives, accountants, or attorneys, and all other PERSONS acting, understood to act, or purporting to act on his behalf or under his direction or control.

12.     "VoIP" means VoIP Guardian Partners I, LLC and all of its affiliates, predecessors and successors in interest, all of its present and former members, owners, partners, shareholders, agents, officers, directors, employees, associates, representatives, managers, administrators, advisors, attorneys, subsidiaries, affiliates, divisions, branches, and any other PERSON acting, understood to act, or purporting to act on its behalf or otherwise subject to or under its direction or control.

## II. <u>INSTRUCTIONS</u>

1.      The following document requests are to be responded to fully, by furnishing all information in YOUR possession, custody or control.  YOUR having possession, custody, or control of a DOCUMENT includes YOUR having a right, superior to other parties, to compel the production of such DOCUMENT from a third party, such as your agent, employee, representative, or, unless privileged, attorney.

2.      If any DOCUMENT requested herein has been lost, discarded, or destroyed, the DOCUMENT so lost, discarded, or destroyed should be identified as completely as possible, including without limitation, the date the DOCUMENT was lost, discarded, or destroyed, the manner in which the DOCUMENT was lost, discarded, or destroyed, the reason(s) the DOCUMENT was lost, discarded, or destroyed, the person who authorized that the DOCUMENT be destroyed or discarded, and the person who lost, discarded, or destroyed the DOCUMENT.

3.      If YOU cannot produce a DOCUMENT because it no longer exists or is no longer in YOUR possession, custody, or control, please identify that DOCUMENT by:  (a) its title; (b) its nature (for example, a "letter" or "e-mail"); (c) the date it was created or sent; (d) its author(s) and signator(y/ies); (e) any of its recipient(s); (f) the last place it was known to have been located; (g) the circumstances under which it ceased to exist or passed from YOUR possession, custody, or control; and (h) the identity and last known residence and business address of any PERSON who had knowledge of its existence and location.

4.      Produce the original, as well as all non-identical duplicates or copies and/or drafts, of all requested DOCUMENTS in YOUR possession, in the possession of YOUR agents, attorneys, accountants or employees, or which are otherwise within YOUR custody, control, or access, wherever located.  A DOCUMENT with handwritten notes, editing marks, etc., is not identical to one without such notes or marks and therefore must be produced if within the scope of DOCUMENTS requested.

5.      Produce each requested DOCUMENT in its entirety, including all attachments and enclosures, even if only a portion of the DOCUMENT is responsive to the request.

- 4 -

6.     If YOU withhold from production any DOCUMENT (or portion of any DOCUMENT) that is otherwise responsive to a request on the basis of a claim of privilege, work product, or other ground, YOU must provide sufficient information regarding the withheld DOCUMENT to permit the Court and the parties to evaluate the propriety of your objection. Specifically, YOU must identify:  (a) the name and title of the author(s) of the DOCUMENT; (b) the name and title of each person to whom the DOCUMENT was addressed; (c) the name and title of each person to whom the DOCUMENT was distributed; (d) the name and title of each person to whom the DOCUMENT was disclosed, in whole or in part; (e) the type of DOCUMENT (e.g., "memorandum" or "report"); (f) the subject matter of the DOCUMENT; (g) the purpose(s) of the DOCUMENT; (h) the date on the DOCUMENT and, if different, the date on which the DOCUMENT was created and/or sent; (i) the number of pages of the DOCUMENT; (j) the specific request herein to which the DOCUMENT is responsive; (k) the nature of the privilege(s) asserted as to the DOCUMENT; and (l) a detailed, specific explanation as to why the DOCUMENT is privileged or otherwise immune from discovery, including a presentation of all factual grounds and legal analyses.

7.     If any requested DOCUMENT cannot be produced in full, produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

8.     Please produce each specified DOCUMENT either (a) in the original file or organizational system in which it is regularly maintained or organized or (b) designate which DOCUMENTS are being produced in response to which of the numbered specifications below. Produce the requested DOCUMENTS either in their original file folders or appended to a copy of any writing on the file folders from which the DOCUMENTS are taken.

9.     ELECTRONICALLY STORED INFORMATION should be produced in native format unless otherwise agreed between counsel or unless such information could not be retrieved or accessed with the use of commonly used commercial off-the-shelf software, in which event counsel is requested to contact counsel for the subpoenaing party to discuss the form of production.

a.    ELECTRONICALLY STORED INFORMATION should be produced in single-

page, text searchable TIFF.  Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi).  Each TIFF image file should be one page and named according to the unique bates number, followed by the extension ".TIF".

b.  ELECTRONICALLY STORED INFORMATION should be produced with (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Relativity, Concordance) and shall be in searchable format (i.e., OCR).  Each TIFF in a production must be referenced in the corresponding image load file.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.  The total number of documents in a production should match the total number of records in the database load file.  Each TIFF in a production must be referenced in the corresponding image load file.  The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production.

c.  A document-level text file should be provided along with the image files.  The text of native files should be extracted directly from the native file.  However, if a document has been redacted or does not contain extractable text, OCR of the redacted document will suffice in lieu of extracted text.

d.  To the extent reasonably available, the document load files shall include fields of extracted or generated metadata identifying at least: (1) APPLICATION; (2) BCC; (3) BEGATT; (4) BEGDOC; (5) CC; (6) DATECREATED; (7) CUSTODIAN; (8) ENDATT; (9) ENDDOC; (10) DOCLINK; (11) FILENAME; (12) DOCEXT; (13) FILESIZE; (14) FROM; (15) DATEMOD; (16) MD5_HASH; (17) RECEIVEDATE; (18) RECEIVETIME; (19) RECIPIENTS; (20) SENTDATE; (21) SENTTIME; and (22) SUBJECT.  If YOU or YOUR vendor do not understand these terms (though they are commonly used) YOU should contact counsel for the

subpoenaing party immediately.

e.   When producing, the production volumes should contain three directories: IMG, TEXT and NATIVE, with numbered subdirectories (001, 002, etc.) containing no more than 10,000 files in any one directory.

f.   If YOU chose to produce hard copy documents as scanned TIFFs, documents should be provided with (1) an ASCII delimited data file (.txt, .dat, or .csv), (2) an image load file that can be loaded into commercially acceptable production software (e.g., Relativity, Concordance), and (3) a document-level text file for each document image.   Each TIFF in a production must be referenced in the corresponding image load file.   The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

10.   This request is a continuing one that calls for the supplemental or additional production of DOCUMENTS if YOU obtain supplemental or additional DOCUMENTS.

11.   In responding to the requests below: (a) the disjunctive shall also be read to include the conjunctive and vice versa; (b) "including" shall be read to mean "including without limitation;" (c) the singular shall also be read to include the plural and vice versa; (d) the present shall also be read as if the past tense and vice versa; (e) "any" shall be read to include "all" and vice versa; and (f) "and" shall be read to include "or" and vice versa.

### III.  REQUESTS FOR DOCUMENTS

1.   All DOCUMENTS and COMMUNICATIONS PERTAINING TO the services YOU provided to VoIP from February 1, 2016 to the present, including but not limited to any agreement between YOU and VoIP setting forth the terms for the services and invoices for the services rendered, including all ELECTRONICALLY STORED INFORMATION.

2.   All DOCUMENTS and COMMUNICATIONS PERTAINING TO YOUR protocol, procedures, and/or processes for releasing funds to VoIP'S FACTORING PARTNERS.

3.   All bank account statements for the period from February 1, 2016 to the present for

- 7 -

any account in which YOU received monies PERTAINING TO the factoring arrangements with
VoIP, including but not limited to the Bank of America, N.A. account with the account number
ending in 5992.

4.      All DOCUMENTS and COMMUNICATIONS PERTAINING TO YOUR receipt
of monies from VoIP from February 1, 2016 to the present, including but not limited to incoming
payment reports.

5.      All DOCUMENTS and COMMUNICATIONS evidencing any outgoing transfers
of monies from February 1, 2016 to the present PERTAINING TO the factoring arrangements
with VoIP.

6.      All COMMUNICATIONS with VoIP from February 1, 2016 to the present
PERTAINING TO factoring arrangements between VoIP and any of its FACTORING
PARTNERS, including ELECTRONICALLY STORED INFORMATION.

7.      All COMMUNICATIONS with VoIP's FACTORING PARTNERS from February
1, 2016 to the present PERTAINING TO factoring arrangements between VoIP and any of its
FACTORING PARTNERS, including ELECTRONICALLY STORED INFORMATION.

8.      YOUR entire file PERTAINING TO any of the DLI ENTITIES, including all
ELECTRONICALLY STORED INFORMATION.

9.      YOUR entire file PERTAINING TO ROSS, including all ELECTRONICALLY
STORED INFORMATION.

10.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and any
of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

11.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and
ROSS, including ELECTRONICALLY STORED INFORMATION.

12.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and
ISAACS, including ELECTRONICALLY STORED INFORMATION.

13.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and
OMANOFF PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY

STORED INFORMATION.

14.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and OMANOFF PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

15.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Mark Proto PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

16.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Mark Proto PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

17.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Youssef A. Rahman (a/k/a Joseph Rahman a/k/a Joe Rahman) PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

18.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Youssef A. Rahman (a/k/a Joseph Rahman a/k/a Joe Rahman) PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

19.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and VoIP PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

20.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and VoIP PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

21.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Indigo11 Services Ltd. PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

22.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Indigo11 Services Ltd. PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

23.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Indigo11 Services LLC PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

24.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Indigo11 Services LLC PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

25.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Telacme, Ltd. PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

26.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Telacme, Ltd. PERTAINING TO any of ROSS, including ELECTRONICALLY STORED INFORMATION.

27.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Najd Technologies, Ltd. PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

28.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Najd Technologies, Ltd. PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

29.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and IKarim Business Services Ltd. PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

30.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and IKarim Business Services Ltd. PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

31.    All DOCUMENTS and COMMUNICATIONS exchanged between YOU and IKarim Business Services LLC PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

32.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and IKarim Business Services LLC PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

33.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Harvard Business Services, Inc. PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

34.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and Harvard Business Services, Inc. PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

35.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and any third parties PERTAINING TO any of the DLI ENTITIES, including ELECTRONICALLY STORED INFORMATION.

36.     All DOCUMENTS and COMMUNICATIONS exchanged between YOU and any third parties PERTAINING TO ROSS, including ELECTRONICALLY STORED INFORMATION.

37.     All notes of meetings or calls by YOU (including meetings or calls with third parties) PERTAINING TO any of the DLI ENTITIES.

38.     All notes of meetings or calls by YOU (including meetings or calls with third parties) PERTAINING TO ROSS.

39.     All notes of meetings or calls by YOU (including meetings or calls with third parties) PERTAINING TO ISAACS.

40.     All DOCUMENTS and COMMUNICATIONS, including ELECTRONICALLY STORED INFORMATION to the extent such DOCUMENTS are not produced in response to another request herein.

# EXHIBIT 5

Robert K. Malone, Esq.
Mark B. Conlan, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Non-Party*
*DealDefenders LLC*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

|  |  |
|---|---|
| In re:<br><br>VOIP GUARDIAN PARTNERS I, LLC,<br><br>Debtor. | Case No. 2:19-bk-12607-BR<br><br>Chapter 7<br><br>**NON-PARTY DEALDEFENDERS LLC'S RESPONSES AND OBJECTIONS TO THE CHAPTER 7 TRUSTEE'S SUBPOENA TO PRODUCE DOCUMENTS PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE** |

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure and Rule 45 of the Federal Rules of Civil Procedure, Non-party DealDefenders LLC ("DealDefenders") hereby submits the following responses and objections (the "Response") to the subpoena issued by Timothy Yoo in his capacity as the chapter 7 trustee (the "Trustee") for VoIP Guardian Partners I, LLC (the "Debtor") to produce documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Subpoena"). These responses are made within the limits of, and subject to, the general and specific objections set forth below.

## GENERAL OBJECTIONS

The following general objections apply to each separate request (the "Requests") and are incorporated by reference, to the extent applicable, into each of DealDefenders' specific responses and objections as if set forth in full therein.

1.     DealDefenders objects to the Subpoena on the grounds of improper service and lack of personal jurisdiction under applicable law.  Accordingly, DealDefenders submits this Response to the Subpoena on a voluntary basis, and while continuing to reserve all rights, objections, and defenses (including its jurisdictional defenses) pending the rulings of a court of competent jurisdiction on DealDefenders' jurisdictional objections.

2.     These responses are not to be interpreted as a consent to jurisdiction in Washington D.C., wherein the Trustee mistakenly determined jurisdiction to lay within 100 miles of DealDefenders.  Because a subpoena under Rule 45(c)(1) may only compel a person to attend a deposition within 100 miles of the location where the subpoenaed person resides, is employed, or regularly transacts business *in person*, Fed. R. Civ. P. 45 (c)(1)(A), and the Trustee erroneously opted for his counsel's home jurisdiction of Washington D.C., DealDefenders objects to the Subpoena on the grounds that DealDefenders and its principal Jeff Ellentuck (*i*) do not reside; (*ii*) are not employed; and (*iii*) do not regularly conduct business within 100 miles of Arent Fox LLP's Washington D.C. office.

3.     DealDefenders also objects to the Subpoena to the extent that it does not comply with Fed. R. Civ. P. 45(c)(2)(A), which states that "[a] subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person."  DealDefenders does not operate or have a place of business within 100 miles of Washington, D.C.

2

4.     DealDefenders objects to the Requests to the extent that they seek the production of documents and information that contain confidential, proprietary, private, personal, or otherwise sensitive information of DealDefenders and/or its Customers (as defined in the Subpoena).  To the extent that such information is relevant to and within the proper scope of the Trustee's investigation of the Debtor, and no objection otherwise has been asserted, DealDefenders will provide such information subject to the provisions of an appropriate discovery confidentiality order.

5.     DealDefenders objects to the Requests to the extent that they seek to impose disclosure obligations that exceed the scope of permissible discovery under, or are not required by or consistent with, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, or any applicable local rules of bankruptcy procedure (collectively, the "Rules"). DealDefenders further objects to the Requests to the extent that they go beyond the scope of FED. BANKR. R. P. 2004 because they do not concern matters related to the property and assets of the Debtor's estate; the financial condition of the Debtor; and any matter that may affect the administration of the Debtor's estate.  *See* FED. R. BANKR. P. 2004(b); *see also In re Reconton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 inquiry examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred.").  It is wholly improper for the Trustee to be seeking discovery from DealDefenders about or related to non-debtor entities.

6.     DealDefenders objects to the Requests to the extent that they seek the production of documents or information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, protection, law, or rule.   If any

3

information is inadvertently disclosed in response to the Requests that is properly the subject of any applicable privilege or protection, such inadvertent disclosure is not to be construed as a waiver of such privilege or protection and shall not prejudice DealDefenders' rights to demand the return or destruction of the privileged or protected information and to object to any subsequent use or review.

7.      DealDefenders objects to the "Instruction and Preliminary Statement" and "Definitions" sections set forth in the Subpoena to the extent they seek to impose disclosure obligations on any person or entity other than DealDefenders.

8.      DealDefenders objects to the Requests to the extent that they seek the production of documents or information that (a) do not currently exist or would require DealDefenders to prepare such documents, (b) are not within DealDefenders' possession, custody, or control; (c) are already in the possession, custody, or control of the Trustee or his attorneys, and/or are equally accessible to them as they are to DealDefenders; or (d) can be obtained more readily from a source other than DealDefenders.

9.      DealDefenders objects to the production of documents and information, including electronically stored documents and information, that are not reasonably accessible to it due to undue burden or cost, and reserves all rights under the Rules and applicable law to seek to shift to the Trustee some or all of the costs it incurs in responding to the Subpoena.

10.     The fact that DealDefenders has responded to a particular Request shall not be interpreted as implying that responsive documents exist or that DealDefenders acknowledges the propriety of the request.

11.     DealDefenders' Response to the Subpoena and Requests is not intended to be, and shall not be construed as, an agreement or concurrence by DealDefenders with the Trustee's

characterization of any facts, circumstances, allegations, and/or legal obligations, and DealDefenders reserves the right to contest any such characterizations. DealDefenders also objects to the Subpoena to the extent it contains express or implied assumptions of fact or law with respect to the matters at issue in this case.

12.     DealDefenders objects to the Requests to the extent that they are overbroad, are impermissibly vague and ambiguous, and/or fail to describe each category of documents sought with reasonable particularity.

13.     DealDefenders objects to the Requests to the extent they are not limited to a relevant or reasonable time period and are therefore overly broad and insufficiently tailored to minimize the burden on DealDefenders, as required by FED. R. CIV. P. 45.

14.     DealDefenders objects to the Requests to the extent they are designed to abuse and harass DealDefenders. *See In re Reconton Corp.*, 307 B.R. at 755 ("[C]ourts may limit, condition or forbid Rule 2004 discovery when it is designed to abuse or harass.").

15.     To the extent that the Requests inquire about "all," "any," "each," or "every" document, as all of the Requests do, DealDefenders objects to the Requests on the grounds that they are overly broad and unduly burdensome. It is impossible to represent, even after a reasonably diligent search, that "all," "any," "each," or "every" document or thing falling within a description can be or has been located. Documents may be kept in numerous locations and files. Many people may have handled them, they may have been moved frequently, and they may have been arranged, rearranged, or reordered. Documents may have been lost or may have been part of materials disposed of in accordance with a record retention policy. Thus, DealDefenders cannot warrant or represent that it has or can produce "all," "any," "each," or "every" document or thing of a type requested, only that, subject to the objections set forth herein, it has or can produce that which

could be located after a reasonably diligent search.  Any further requirement of DealDefenders is objected to as unduly burdensome and oppressive.

16.    By submitting these responses, DealDefenders does not in any way adopt the Trustee's purported definitions of words and phrases contained in the Requests.  DealDefenders objects to those definitions to the extent that they are inconsistent with the ordinary and customary meaning of such words and phrases.  Likewise, DealDefenders objects to the Trustee's purported definitions to the extent that they purport to impose upon DealDefenders any obligations broader than, or inconsistent with, applicable discovery rules and/or common law.

17.    DealDefenders reserves the right to amend these responses and to offer related evidence as additional facts are ascertained, analyses are made, research is completed, and contentions become apparent.

## SPECIFIC RESPONSES AND OBJECTIONS

**Request for Production No. 1:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO the services YOU provided to the DEBTOR from February 1, 2016 to the present.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks the production of documents that are neither relevant nor within the scope permissible under Bankruptcy Rule 2004.  DealDefenders further objects to this Request to the extent that the documents sought are already in the possession, custody, or control of the Trustee.

On January 9, 2020, DealDefenders provided the Trustee with a document reflecting all wires received from the Debtor from January 1, 2016 to the present—*i.e.*, a detailed spreadsheet

6

of 2,354 wire transfers from the Debtor to DealDefenders (as acknowledged in the Certification of David G. Bales in connection with the Trustee's Rule 2004 Motion). Then, on March 4, 2020, DealDefenders produced approximately 200 documents, totaling several thousand pages (*see* DD000001 – DD006302), responsive to the Trustee's requests—including a 5340-page document detailing the Debtor's wire transfers to DealDefenders (*see* DD000957 – DD006296). These document productions were responsive to the Trustee's prior informal document requests.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders responds that it has already produced the documents within its possession, custody, or control (*see* DD000001 – DD006302) that are responsive to this Request.

**Request for Production No. 2:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR protocol, procedures, and/or process for releasing funds on behalf of the DEBTOR.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad in time and in scope, unduly burdensome, vague and ambiguous (including insofar as the term "protocol" is undefined), and seeks the production of documents that are neither relevant nor within the scope permissible under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine.

DealDefenders responds that it has no individualized "protocol" for "releasing funds." DealDefenders states that it receives wire transfers and credits the accounts as directed on the wire transfer notes.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders will produce non-privileged documents responsive to this Request, if any, in its possession, custody, or control.

**Request for Production No. 3:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO the services YOU provided to VOIP MANAGEMENT from February 1, 2016 to the present.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine. DealDefenders also objects to this Request to the extent it is duplicative of Request No. 1.

DealDefenders responds that it provided no services to "VoIP Management" separate and apart from those provided to the Debtor.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders will produce non-privileged documents responsive to this Request, if any, in its possession, custody, or control.

**Request for Production No. 4:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR protocol, procedures, and/or process for releasing funds on behalf of VOIP MANAGEMENT.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad in time and in scope, unduly burdensome, vague and ambiguous (including insofar as the term "protocol" is undefined), and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine. DealDefenders also objects to this Request to the extent it is duplicative of Request No. 2.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders refers the Trustee to its Response to Request No. 2.


**Request for Production No. 5:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO the services YOU provided to each CUSTOMER from February 1, 2016 to the present.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, duplicative of Request No. 1, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004.  DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client

9

privilege and/or work product doctrine.  DealDefenders additionally objects to this Request to the extent it seeks to invade the confidential information for persons or entities others than the Debtor.

DealDefenders responds that the proper procedure the Trustee must follow is to subpoena the documents sought directly from the "Customers" themselves—not to attempt to have DealDefenders disseminating the confidential information of its "Customers."

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders refers the Trustee to its Response to Request No. 1.


**Request for Production No. 6:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR protocol, procedures, and/or process for releasing funds on behalf of each CUSTOMER.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad in time and in scope, unduly burdensome, vague and ambiguous (including insofar as the term "protocol" is undefined), and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine. DealDefenders also objects to this Request to the extent it is duplicative of Request No. 2. DealDefenders additionally objects to this Request to the extent it seeks to invade the confidential information for persons or entities others than the Debtor.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders refers the Trustee to its Response to Request Nos. 2 and 5.

10

**Request for Production No. 7:**

ALL bank account statements for the period from February 1, 2016 to the present for ANY account in which YOU received monies on behalf of the DEBTOR, including but not limited to, the Bank of America, N.A. account with the account number ending in 5992.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad and unduly burdensome. DealDefenders further objects to this Request to the extent that the documents sought would be unreasonably onerous, time-consuming, and expensive to collect, review, and redact. DealDefenders additionally objects to this Request to the extent it seeks to invade the confidential bank account information for persons or entities others than the Debtor.

DealDefenders responds that in order to respond to this Request, each of the thousands of wire transfers identified on the 5,340 pages of DD000957 – DD006296 would have to be manually hand-reconciled with the wire confirmation slips. There is nothing under the applicable discovery rules that requires a non-party to undertake such a burdensome exercise.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders responds that it will not produce the confidential bank account information, and further attempts by the Trustee to demand such legally confidential bank account information will be the subject of an application for a Protective Order.

**Request for Production No. 8:**

ALL bank account statements for the period from February 1, 2016 to the present for ANY account in which YOU received monies on behalf of VOIP MANAGEMENT, including but not limited to, the Bank of America, N.A. account with the account number ending in 5992.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004.

Subject to and without waiving its General Objections, DealDefenders repeats its Response to Request No. 7 as if restated in full.

**Request for Production No. 9:**

ALL bank account statements for the period from February 1, 2016 to the present for ANY account in which YOU received monies on behalf of each CUSTOMER, including but not limited to, the Bank of America, N.A. account with the account number ending in 5992.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004.

Subject to and without waiving its General Objections, DealDefenders repeats its Response to Request No. 7 here as if restated in full.

**Request for Production No. 10:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR receipt of monies from the DEBTOR from February 1, 2016 to the present, including but not limited to, incoming payment reports.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, duplicative of Request No. 1, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine. DealDefenders also objects to this Request to the extent that the documents sought have already been produced to the Trustee by DealDefenders, and the documents sought are already in the possession, custody, or control of the Trustee.

DealDefenders responds that nothing further exists (outside the wire confirmations already produced to the Trustee) relating to the "receipt of monies from the Debtor," except for pdf printout of wire confirmations from the banks. Those wire confirmation sheets, that number in the thousands, are not kept in a central file, they are filed by customer. It would be extremely onerous, time-consuming, and expensive to collect, review, and redact printout confirmations that provide no additional information from the previously -produced schedule of wire confirmations.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders refers the Trustee to its Response to Request No. 1.

**Request for Production No. 11:**

ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR receipt of monies from

VOIP MANAGEMENT from February 1, 2016 to the present, including but not limited to,

incoming payment reports.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly

burdensome, vague and ambiguous, duplicative of Request Nos. 1 through 4, and seeks the

production of documents that are neither relevant nor within the permissible scope of the Trustee's

investigation of the Debtor under Bankruptcy Rule 2004. DealDefenders further objects to this

Request to the extent that it seeks documents and information protected from disclosure by the

attorney-client privilege and/or work product doctrine. DealDefenders also objects to this Request

to the extent that the documents sought have already been produced to the Trustee by

DealDefenders, and the documents sought are already in the possession, custody, or control of the

Trustee.

DealDefenders responds that "VoIP Management" was not a customer of DealDefenders,

and so DealDefenders did not provide any services to "VoIP Management" separate and apart from

the services provided to the Debtor.

Subject to and without waiving the foregoing Specific and General Objections,

DealDefenders refers the Trustee to its Response to Request No. 1.


**Request for Production No. 12:**

ALL DOCUMENTS and COMMUNICATION evidencing any outgoing transfers of monies from

February 1, 2016 to the present that were made on behalf of DEBTOR.

14

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, duplicative of Request Nos. 1 and 2, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004.  DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine.  DealDefenders also objects to this Request to the extent that the documents sought have already been produced to the Trustee by DealDefenders, and the documents sought are already in the possession, custody, or control of the Trustee.

DealDefenders responds that the Debtor did not direct transfers of money *from* any person or entity.  Rather, the Debtor would wire money to DealDefenders and direct DealDefenders to credit those funds to another entity's account.  The entity that sent the wire has no ability to thereafter direct how the receiving entity uses those funds.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders refers the Trustee to its Response to Request No. 1.

**Request for Production No. 13:**

ALL DOCUMENTS and COMMUNICATION evidencing any outgoing transfers of monies from February 1, 2016 to the present that were made on behalf of VOIP MANAGEMENT.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, duplicative of Request Nos. 11 and 12, and seeks the

15

production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine. DealDefenders also objects to this Request to the extent that the documents sought have already been produced to the Trustee by DealDefenders, and the documents sought are already in the possession, custody, or control of the Trustee.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders refers the Trustee to its Response to Request Nos. 11 and 12.

**Request for Production No. 14:**

ALL DOCUMENTS and COMMUNICATION evidencing any outgoing transfers of monies from February 1, 2016 to the present that were made on behalf of each CUSTOMER.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad and unduly burdensome. DealDefenders further objects to this Request to the extent that the documents sought would be unreasonably onerous, time-consuming, and expensive to collect, review, and redact. DealDefenders additionally objects to this Request to the extent it seeks to invade the confidential information for persons or entities others than the Debtor. DealDefenders further objects to the extent that this Request seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004.

16

DealDefenders responds that the proper procedure the Trustee must follow is to subpoena the documents sought directly from the "Customers" themselves—not to attempt to have DealDefenders disseminating the confidential information of its "Customers."

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders responds that it will not produce the confidential information of its customers, and further attempts by the Trustee to demand such legally confidential information will be the subject of a Protective Order.

**Request for Production No. 15:**

ALL COMMUNICATION with the DEBTOR from February 1, 2016 to the present.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, duplicative of Request Nos. 3 and 4, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation of the Debtor under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine. DealDefenders also objects to this Request to the extent that the documents sought have already been produced to the Trustee by DealDefenders, and the documents sought are already in the possession, custody, or control of the Trustee.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders refers the Trustee to its Response to Request No. 1.

**Request for Production No. 16:**

ALL COMMUNICATION with VOIP MANAGEMENT from February 1, 2016 to the present.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, duplicative of Request Nos. 3 and 4, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine. DealDefenders also objects to this Request to the extent that the documents sought have already been produced to the Trustee by DealDefenders, and the documents sought are already in the possession, custody, or control of the Trustee.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders refers the Trustee to its Response to Request No. 3.

**Request for Production No. 17:**

ALL COMMUNICATION with each CUSTOMER from February 1, 2016 to the present that RELATE TO the DEBTOR.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation under Bankruptcy Rule 2004. DealDefenders further objects to this Request to the extent that it seeks documents and information protected from

18

disclosure by the attorney-client privilege and/or work product doctrine.  DealDefenders also objects to this Request to the extent it is duplicate of Request No. 1.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders will produce non-privileged documents responsive to this Request, if any, in its possession, custody, or control.

**Request for Production No. 18:**

ALL COMMUNICATION with each CUSTOMER from February 1, 2016 to the present that RELATE TO the VOIP MANAGEMENT.

**RESPONSE**:

DealDefenders objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks the production of documents that are neither relevant nor within the permissible scope of the Trustee's investigation under Bankruptcy Rule 2004.  DealDefenders further objects to this Request to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product doctrine.  DealDefenders also objects to this Request to the extent it is duplicate of Request Nos. 1 and 17.

Subject to and without waiving the foregoing Specific and General Objections, DealDefenders will produce non-privileged documents responsive to this Request, if any, in its possession, custody, or control.

19

Dated:  May 18, 2020

Respectfully submitted,

s/  Robert K. Malone
Robert K. Malone, Esq.
Mark B. Conlan, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
rmalone@gibbonslaw.com
mconlan@gibbonslaw.com

*Attorneys for Non-Party*
*DealDefenders LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert K. Malone, Esq., hereby certify as follows:

1.      I am an attorney at law of the State of New Jersey and am a Director at Gibbons P.C., attorneys for DealDefenders LLC in this matter.

2.      On May 18, 2020, I caused a copy of DealDefenders LLC's Responses and Objections to the Chapter 7 Trustee's Subpoena to Produce Documents Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to be served by electronic mail on the Trustee's counsel.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  May 18, 2020                          s/  Robert K. Malone
                                             Robert K. Malone, Esq.

21

EXHIBIT 6

# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

May 27, 2020

**David Bayles**

213.629.7406 DIRECT
213.629.7401 FAX
david.bayles@arentfox.com

**VIA EMAIL**
*rmalone@gibbonslaw.com*

Robert K. Malone, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: (973) 596-4533
Fax: (973) 639-6357

Re:    Meet and Confer re DealDefenders LLC's Responses and Objections to the Chapter 7
       Trustee's Subpoena for Documents under Fed. R. Bankr. P. 2004; *In re VoIP Guardian
       Partners I*, Case No. 2:19-bk-12607-BR

Dear Mr. Malone:

This is an effort to meet and confer about DealDefenders' responses and objections to the
*Subpoena for Rule 2004 Examination* and the underlying documents requests, served on May 4,
2020 and initiated by the chapter 7 trustee ("Trustee") of the above-referenced bankruptcy estate.

We are aware that DealDefenders has also been subpoenaed for documents by the Receiver in the
action entitled, Securities and Exchange Commission v. Direct Lending Investments, LLC, Case
No. 2:19-cv-02188-DSF-MRW. To facilitate DealDefenders' responses to both subpoenas, we
will coordinate with the Receiver to resolve DealDefenders' concerns and objections. To that end,
please let us know if you are available on for a call with myself and counsel for the Receiver to
discuss further.

**Place for Production and Oral Examination**

DealDefenders takes issue with the fact that the Washington D.C. office of the Trustee's counsel,
Arent Fox LLP – the designated place for the oral examination and document production – is not
within 100 miles of DealDefenders. While this concern has more to do with form than substance
(as the Washington D.C. office is approximately 108 miles from DealDefenders' headquarters in
Delaware), we are amenable to having DealDefenders' oral examination at your office and request
that the production of documents be made available at the location below:

**Arent Fox**

Robert K. Malone
May 27, 2020
Page 2

Harris Investigations, LLC
Michele Harris
17291 Queen Anne Way, Lewes, DE 19958

## Confidentiality Concerns

We disagree with your assertion that the documents encompassed in the Requests, including RFP No. 7, 8, 9, 14 , contain confidential information that would preclude disclosure under the subpoena. Regardless, we can allay these concerns by having a protective order in place. To that end, we have prepared a protective order for review. Please let us know if you have any changes as soon as possible so we can discuss any remaining issues on our call.

## Subpoena Responses

**A)** **Responses to RFP No. 1, 5, 10, 11, 12, 13, 15**

These Requests seek all documents and communication regarding DealDefenders' services to the Debtor (RFP No. 1) and those certain customers that transacted with the Debtor through DealDefenders (RFP No. 5); the receipt of monies from the Debtor (RFP No. 10), the Debtor's manager, VoIP Guardian LLC (RFP No. 11); the outgoing transfers of monies made on behalf of the Debtor (RFP No. 12) and VoIP Guardian LLC (RFP No. 13); communication with the Debtor (RFP No. 15). In response, DealDefenders represents that the approximately 200 documents (DD000001–DD006302) previously produced are the responsive documents within its possession, custody, or control ("Preliminary Production").

DealDefenders' responses to these Requests are insufficient. The subpoena compels DealDefenders to produce all documents as well as all communication that relate to the topics for these particular Requests. The Preliminary Production is comprised mainly of emails that were either incomplete or not substantive. It is inconceivable that the Preliminary Production represents a complete production of every single responsive document and communication to these Requests. Especially given the fact that the Debtor has relevant documents and communications with DealDefenders that were not included in the Preliminary Production. We maintain that the Trustee is entitled to receive a complete production from DealDefenders of all documents and communication that are responsive to these Requests. To the extent, DealDefenders withholds information based on privilege, the documents and communication withheld must be described in a corresponding privilege log.

**B)** **Responses to RFP No. 7, 8, and 9**

These Requests seek all bank account statements for the period from February 1, 2016 to the present for any account that DealDefenders received monies on behalf of the Debtor (RFP No. 7),

# Arent Fox

Robert K. Malone
May 27, 2020
Page 3

VoIP Guardian LLC (RFP No. 8), and those certain customers who transacted with the Debtor through DealDefenders (RFP No. 10).

DealDefenders responds that it will not produce the bank account statements due to confidentiality concerns. However, there is no further explanation as to what types of information DealDefenders believes to be confidential. Nor do we believe a legitimate confidentiality privilege applies to DealDefenders' interactions with the Debtor and the various shell entities that were purportedly counterparties in the Debtor's factoring arrangements.

**C)      Responses to RFP No. 2, 3, 4, 6, 16, 17, 18**

These Requests seek information about DealDefenders' services to VoIP Guardian LLC (RFP No. 3); DealDefenders' procedures for receiving and releasing wire transfers made on behalf of the Debtor (RFP No. 2), VoIP Guardian LLC (RFP No. 4), those certain customers transacting with the Debtor through DealDefenders (RFP No. 6); DealDefenders' communication with VoIP Guardian LLC (RFP No. 16) and those certain customers transacting with the Debtor (RFP No. 17) or VoIP Guardian LLC (RFP No. 18).

DealDefenders has said that it will produce non-privileged documents responsive to these Requests. We would like DealDefenders' assurance that it will produce each and every non-privileged and responsive document and communication within its possession, custody, or control. To the extent, DealDefenders withholds information based on privilege, the documents and communication withheld must be described in a corresponding privilege log.

We look forward to resolving these issues and concerns with you.

Sincerely,

David Bayles

cc: Christopher Sullivan, Esq., via e-mail

# EXHIBIT 7

# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

July 3, 2020

**VIA EMAIL**

Robert Malone
**GIBBONS, PC**
One Gateway Center
Newark, New Jersey 07102
rmalone@gibbonslaw.com

**Annie Y. Stoops**
Associate
213.443.7548 DIRECT
213.629.7401 FAX
Annie.Stoops@arentfox.com

Re:   Final Demand for DealDefenders' Complete Responses to the
Chapter 7 Trustee's Subpoena for Documents under Fed. R.
Bankr. P. 2004; *In re VoIP Guardian Partners I*, Case No. 2:19-bk-12607-BR

Dear Mr. Malone:

This is in response to your email sent on June 30, 2020, and serves as a final demand for
DealDefenders to provide complete responses to the Trustee's document requests underlying the
*Subpoena for Rule 2004 Examination*, served on May 4, 2020.

The document requests seek information on the transfers of VoIP Guardian Partners I's
("Debtor") monies that DealDefenders carried out in its role as the escrow company.  In this
capacity, DealDefenders received millions of dollars from the Debtor and purportedly sent said
monies to various offshore entities that are believed to be shell entities with no legitimate
purpose.  The information sought is vital to the Trustee's investigation and within the purview of
DealDefenders.

As already detailed in our prior meet and confer letter, dated May 27, 2020, DealDefenders'
responses continue to be insufficient for the following reasons.

In response to RFP Nos. 1, 5, 10, 11, 12, 13 and 15, DealDefenders represented that its
preliminary production of approximately 200 documents ("Preliminary Production") constituted
responsive documents within its possession, custody, or control.  However, the Preliminary
Production is nowhere near a complete production of non-privileged, responsive documents.

In our subsequent meet and confer correspondence and discussions, we provided examples of
emails sent from Jeffery Ellentuck, the principal of DealDefenders, the Rodney Omanoff, the
principal of the Debtor, that are responsive to the requests, but were not included in the
Preliminary Production.  We also noted that the Preliminary Production did not contain any
documents or communication from DealDefenders' subsidiaries: TelFinance LLC,
DealDefenders EU LLC, and TxtFinance LLC.  The responsive materials from TelFinance are of
particular importance as all communications and transactions with DealDefenders' customers,
including the entities believed to be shell companies that received the Debtor's money, were
conducted through TelFinance.

AFDOCS/22457804.1

# Arent Fox

Robert Malone
July 3, 2020
Page 2

In response to RFP No. 2, 3, 4, 6, 16, 17, and 18, DealDefenders indicated that it would produce non-privileged documents responsive to these requests.  To date, DealDefenders has not produced any further materials.  Even documents that do not contain confidential information have not been produced.

In response to RFP No. 7, 8, and 9, DealDefenders said that it would not produce the bank account statements due to confidentiality concerns.  You have yet to identify a legitimate confidentiality concern.  Moreover, despite our requests for copies of escrow agreements governing the disclosure of your customers' confidential information and applicable case law supporting your argument that privacy rights extend to bank account statements, you have provided neither.

To address DealDefenders' unsubstantiated confidentiality concerns, on May 27, 2020, we provided a proposed protective order that would apply to DealDefenders' responses to both the Trustee's subpoena and the subpoena served on DealDefenders by the Receiver.[1]  Your changes to the protective order – provided more than 3 weeks later on June 19, 2020 – were untenable and impermissibly self-serving.  Such that we believe certain changes were made in bad faith to prolong the meet and confer process and further delay DealDefenders' production of responsive documents.

One example is your change to shift the burden of challenging confidentiality designations from the designating party to the challenging party.  This is unacceptable as the burden of proving that information has been properly designated should be on the actual party making the designation.  Another change sought to broaden the scope of confidential information far beyond the protection afforded under the appropriate statutory authority, FRCP 26(c).

On June 26, 2020, we provided our edits in response to your changes and requested a call for the parties to discuss the issues with the protective order and timing for future productions.  On June 29, 2020, I followed up with another email asking to schedule a call.  This time I made our intention clear that we wanted to get on a call with you to determine once and for all whether the parties could agree to terms for the protective order.  That same day, you responded saying that you wanted to wait to get comments from the Receiver on the nearly identical version of the protective order that you believe is necessary for the separate receivership action.  In my reply, I said that we did not see a reason to further complicate and delay things with separate protective orders.  In your response, you said that if the Receiver did not have comments then you could move forward with providing markups on our edits and look to schedule a call.

The next day, on June 30, 2020, Chris Sullivan, counsel for the Receiver, replied with affirmation that the Receiver would agree to be bound to the protective order entered in the

---

[1] This was done with the consent and support of Chris Sullivan, counsel for the Receiver appointed in the action entitled, Securities and Exchange Commission v. Direct Lending Investments, LLC, Case No. 2:19-cv-02188-DSF-MRW.

AFDOCS/22457804.1

# Arent Fox

Robert Malone
July 3, 2020
Page 3

bankruptcy case and would hold in abeyance the Receiver's subpoena so long as DealDefenders'
production in response to the Trustee's subpoena continued to move forward.  Even after this
assurance that two separate protective orders are not necessary, you still refused to get on a call
with our office on the pretense that you do not believe a stipulated protective order to which the
Receiver is a party and which would be signed by a federal bankruptcy judge would be
enforceable in a federal receivership action.  Thus, it appears that your insistence on having two
separate protective orders is yet another attempt to hinder the Trustee's efforts to obtain
information on where and to whom the Debtor's monies were sent.

We understand that due to the particularities of how DealDefenders maintains its books and
records, DealDefenders requires some time to gather and produce the relevant materials
responsive to the Trustee's requests.  To accommodate for this, we will continue to meet and
confer in good faith on the protective order so long as **DealDefenders commits to a complete
production of all non-privileged, responsive documents by no later than 5:00 p.m. (PT) on
July 21, 2020.**  Any documents produced prior to that time will be kept as confidential pending
resolution on the final form of a protective order, if possible, and the entry of a protective order.

However, should DealDefenders fail to provide complete responses by this time, we will proceed
with a motion to compel based on, among others, the inadequacy of DealDefenders' responses
and seek an order for the retention of an e-discovery vendor to conduct a thorough and adequate
search for responsive electronic documents.

Please let me know if you have any questions.


Sincerely,

*/s/ Annie Y. Stoops*


Annie Y. Stoops


cc:    Mark Conlan; Michael A. Conforti; Christopher Sullivan; Jack Valinoti;
       David Bayles; and Andy Kong

AFDOCS/22457804.1

EXHIBIT 8

July 9, 2020


Annie Y. Stoops
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

> **Re:    In re VoIP Guardian Partners I**
> **Case No. 2:19-bk-12607-BR**

Dear Ms. Stoops:

Please accept this letter in response to your letter of July 3, 2020 (a Federal court holiday) to my colleague Robert K. Malone that purports to be your client's *Final Demand for DealDefenders' Complete Responses to the Chapter 7 Trustee's Subpoena for Documents under Fed. R. Bankr. P. 2004* ("July 3 Letter"), an ominous and overbearing title in light of the Trustee's uncured failure to properly serve the subpoena in the first place.  We have raised the Trustee's service deficiencies before, including in DealDefenders' Responses and Objections dated May 18, 2020, *see* General Objections 1-3, none of which have been waived or cured. Rule 45(c) provides for the a subpoena to command discovery within 100 miles of where the person resides, is employed or regularly conducts business.  Neither DealDefenders nor Jeff Ellentuck reside, are employed or conduct business within 100 miles of Washington, D.C., the improper place for compliance designated on the subpoena.  Proper service appears to be of no moment to the Trustee before leveling threats to compel compliance with a third party subpoena which places an undue burden on Deal Defenders and Jeff Ellentuck, especially in the midst of a *COVID-19* pandemic that has forced many businesses, including DealDefenders, to have their employees work remotely, away from their offices where its business records are routinely maintained.

The tone and substance of your July 3 Letter conveniently ignores the fact that **all of DealDefenders' productions, responses and meet and confer dialogue to date have been done on** *a voluntary basis and in good faith*.  Because the Trustee has yet to properly serve DealDefenders with a 2004 subpoena, DealDefenders would be well within its rights to breakoff discussions with the Trustee until it has been properly served.  Nevertheless, DealDefenders remains cooperative and willing to continue discussions until such time as we have negotiated a form of protective order that adequately addresses its legitimate confidentiality concerns.  What it will not do is voluntarily sign a one-sided, heavy-handed "take it or leave it" stipulation that requires DealDefenders, a non-party in the VoIP chapter 7 case, to have to hire local California counsel to run into a foreign court to protect its interests in its confidential documents.  Those concerns can and should be addressed now, in advance.

The Trustee's artificial attempt to constrain the treatment of DealDefenders' confidential information to FED. R. CIV. P. 26(c), which does allow trade secrets and commercial information to be protected, of course does not apply here as there is no adversary proceeding or "contested matter" before the court. *See* FED. R. BANKR.P. 7026, 9014(c).

DealDefenders is not interested in obstructing the Trustee's investigation, but it is interested in protecting its right to keep its business operating and its financial information out of the public domain. That includes keeping its confidential, non-public information out of the hands and eyes of competitors and others who would be happy to destroy DealDefenders' legitimate business. Your July 3 Letter tries to minimize the problem by characterizing this as "unsubstantiated confidentiality concerns." Let me spell out the issue as simply as I can: DealDefenders' customers are mostly wholesalers. That means the WHOLESALER buys from a seller, PARTY A, at one price and resells to another party, PARTY B, at a higher price. If DealDefenders' records are made available to be viewed by any PARTY, including other wholesalers, they can bypass/circumvent the WHOLESALER and DealDefenders' business will then be destroyed. That is not an "unsubstantiated concern." It's a fact—and a legitimate concern. That is why we included a provision in the proposed form of protective order on "Industry Participants" that you summarily deleted.

It is important to recall how we got where we are. DealDefenders was voluntarily cooperating with your prior informal document request and made Mr. Ellentuck available to your partner, Mr. Bayles, to explain the business of DealDefenders and how their services are used by parties like VoIP Guardian in the international telecommunication industry. We were obviously surprised by your failure to simply pick up the phone or send an e-mail if you sincerely thought that our prior document production, which was quite substantial and organized for you so it could be easily reviewed, was somehow incomplete—prior to seeking a Rule 2004 order from the Bankruptcy Court. Instead, you decided to make some sensational and unfounded allegations in support of your Rule 2004 motion that our client was a participant in a "money laundering scheme." Then on April 24, 2020, the Trustee's counsel recklessly and tortiously interfered with DealDefenders' banking relationships when it wrote to Bank of America and stated that DealDefenders "may have misappropriated the Debtor's funds using their Bank of America accounts." ECF No. 47 at 21. That's a real problem. We are aware of zero support for that outlandish characterization and DealDefenders rightfully has serious concerns about how the Trustee is conducting his investigation and his ability to control the way his counsel will treat private and confidential information produced in this case.

DealDefenders did not complicate the resolution of the proposed form of protective order by inviting the SEC Receiver in the DLI case ("DLI Receiver") to join in—the Trustee did that. While we do not object to working on parallel tracks with the Trustee and the DLI Receiver, we must point out the lack of any concurrent jurisdiction over both these matters. As you are aware, the DLI Receiver was appointed by the District Court in a separate action, not the Bankruptcy Court. Thus, notwithstanding your confidence that Chris Sullivan's June 30, 2020 e-mail is sufficient to grant subject matter jurisdiction to the Bankruptcy Court over the DLI receivership

GIBBONS P.C.

July 9, 2020
Page 3

action in the District Court, we respectfully have our doubts.  Doubts that are not a "pretense" or a "delay tactic."  Doubts that can easily be addressed by having each court approve substantially similar forms of protective orders, which we took the time to prepare, provided a blackline to show the differences in the two (2) Protective Orders and which you, again, summarily dismissed.

Your July 3 Letter dedicates a fair amount of ink complaining about documents that have not yet been produced due to DealDefenders' confidentiality concerns.  First, we never said that the preliminary production made in March represented the universe of documents.  Second, the examples you sent of unproduced e-mails that you said should have been produced were outside of the date range in your original request.  Why would we have produced those?  We already explained this on the phone, why are you repeating it again in your letter?  Third, the obvious solution to getting the balance of responsive documents produced is getting the protective orders approved.  We remain available to work through those issues.  What we will not be doing is producing confidential documents in advance of the entry of a protective order.  It's a matter of trust, which was destroyed by the reckless April 24 letter to BOA.

If the Trustee is unwilling to negotiate the terms of the form of protective order in a balanced, even-handed way, then we will move for a Protective Order in the compliance court as Rule 45 envisions, which will not be in California or Washington, D.C.

Please let us know when you are available to discuss the form of Protective Orders in a constructive manner so we can continue to hopefully proceed on a voluntary basis.

Sincerely,

Mark Conlan
Director

MC:

Cc:    Robert K. Malone
       Michael Conforti
       David G. Bayles
       Andy Kong
       Chris Sullivan

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR AN ORDER TO SHOW CAUSE WHY DEALDEFENDERS LLC SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR FAILURE TO PROVIDE COMPLETE RESPONSES PURSUANT TO THE CHAPTER 7 TRUSTEE'S SUBPOENA FOR RULE 2004 EXAMINATION MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ANNIE Y. STOOPS AND DAVID G. BAYLES IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **07/21/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **07/21/2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**JUDGE**

Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **07/21/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**ATTORNEY FOR DEALDEFENDERS LLC (*Via E-mail*)**

Robert K. Malone - rmalone@gibbonslaw.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/21/2020 | AYLIN SOOKASSIANS | /s/ Aylin Sookassians |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Jessica L Bagdanov on behalf of Trustee Timothy Yoo (TR)
jbagdanov@bg.law, ecf@bg.law

Steven T Gubner on behalf of Trustee Timothy Yoo (TR)
sgubner@bg.law, ecf@bg.law

Vivian Ho on behalf of Creditor FRANCHISE TAX BOARD
BKClaimConfirmation@ftb.ca.gov

Andy Kong on behalf of Trustee Timothy Yoo (TR)
Kong.Andy@ArentFox.com

Ian Landsberg on behalf of Other Professional Rodney Omanoff
ilandsberg@sklarkirsh.com,
lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com;kfrazier@skl
arkirsh.com

Douglas M Neistat on behalf of Interested Party Douglas Neistat
dneistat@gblawllp.com, mramos@gblawllp.com

Aram Ordubegian on behalf of Trustee Timothy Yoo (TR)
ordubegian.aram@arentfox.com

Annie Y Stoops on behalf of Trustee Timothy Yoo (TR)
annie.stoops@arentfox.com, yvonne.li@arentfox.com

Christopher D Sullivan on behalf of Other Professional Bradley D. Sharp
csullivan@diamondmccarthy.com,
mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com;quentin.roberts@diamondmccarthy.com;erika.shann
on@diamondmccarthy.com;aiemee.low@diamondmccarthy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Timothy Yoo (TR)
tjytrustee@lnbyb.com, tjy@trustesolutions.net

2. **SERVED BY UNITED STATES MAIL**:

**DEBTOR**

VoIP Guardian Partners I, LLC
1221 Ocean Avenue
Unit 507
Santa Monica, CA 90401

| **INTERESTED PARTY** | **ATTORNEYS FOR DEALDEFENDERS LLC** |
|---|---|
| DealDefenders LLC<br>1000 N. West St., Ste. 1200<br>Wilmington, Delaware 19801-1058 | Robert Malone<br>Mark Conlan<br>Michael A. Conforti<br>One Gateway Center<br>Newark, NJ 07102-5310 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

AFDOCS/21173619.1

**F 9013-3.1.PROOF.SERVICE**