AVI E. MUHTAR, ESQ. (SBN 260728)
8433 W 4th Street
Los Angeles, CA 90048
Email: amuhtar@gmail.com
Telephone: 310.420.6464

*Local Counsel, Specially Appearing on Behalf of DealDefenders LLC*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>**VOIP GUARDIAN PARTNERS I, LLC**<br><br><br>Debtor. | Case No. 2:19-bk-12607-BR<br><br>Chapter 7<br><br>**NON-PARTY DEALDEFENDERS LLC'S NOTICE OF MOTION TO QUASH OR MODIFY SUBPOENA, FILED WITH THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA**<br><br>**[RELATES TO DOCKET NOS. 45 & 65]** |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**

**THE CHAPTER 7 TRUSTEE; AND ALL OTHER INTERESTED PARTIES:**

      **PLEASE TAKE NOTICE** that non-party DealDefenders LLC ("DealDefenders"), through

its counsel Gibbons P.C., has filed its *Motion to Quash or Modify the Subpoena Served by the*

*Chapter 7 Trustee, or, in the alternative, For A Protective Order* (the "Motion to Quash"), a copy of

which (without exhibits) is attached hereto as Exhibit B, with The United States District Court for

the Eastern District of Pennsylvania (the "Compliance Court").

      The Motion to Quash relates to the *Subpoena for Rule 2004 Examination* (the "Subpoena")

that was issued by this Court's *Order Granting Chapter 7 Trustee's Notice of Motion and Motion*

*for Order Authorizing Examination of DealDefenders LLC and Service of Subpoena to Produce*

*Documents Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 45]

(the "2004 Order") and the related *Motion for an Order to Show Cause Why DealDefenders LLC*

1    *Should Not be Held in Civil Contempt for the Failure to Provide Complete Responses Pursuant to*

2    *the Chapter 7 Trustee's Subpoena for Rule 2004 Examination* [Docket No. 65] (the "Contempt

3    Motion").

4         Attorney Muhtar is specially appearing solely for the purposes of providing this Notice.  The

5    need for this Notice and for the Motion to Quash is detailed in the letter (the "Letter") attached

6    hereto as <u>Exhibit A</u>. Neither this Notice nor the Letter should be construed in any way as a

7    submission to the Court's jurisdiction, or as a general appearance in general opposition to the

8    Contempt Motion.

9

10   Dated: July 28, 2020                         Respectfully Submitted By:

11                                               */s/ Avi E. Muhtar*
                                                 Avi E. Muhtar
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



Mark B. Conlan
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4545 Fax: 973-639-6356
mconlan@gibbonslaw.com

July 28, 2020

**VIA ECF FILING**

Hon. Barry Russell, U.S.B.J.
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

> Re:    *In re VoIP Guardian Partners I, LLC* ("Debtor")
>         Case No. 2:19-bk-12607-BR

Dear Judge Russell:

This firm represents DealDefenders LLC ("DealDefenders"), a non-party with respect to a subpoena that was issued in the above-captioned chapter 7 case.  We write to Your Honor for the special purpose of pointing out the Court's lack of jurisdiction to consider the Chapter 7 Trustee's (the "Trustee") *Motion for an Order to Show Cause Why DealDefenders LLC Should Not Be Held in Contempt For Failure to Provide Complete Responses Pursuant to The Chapter 7 Trustee's Subpoena for Rule 2004 Examination* [ECF No. 65] (the "Contempt Motion").  Accordingly, this letter should not be construed in any way as a submission to the Court's jurisdiction, or as a general appearance in general opposition to the Trustee's Contempt Motion.  DealDefenders only wishes to highlight for this Court that the Contempt Motion is plainly before the wrong court.  *See* FED. R. CIV. P. 45(g).[1]

By way of background, the Trustee reached out to DealDefenders via e-mail to its principal Jeff Ellentuck  in November 2019 informally seeking the production of certain documents related to the Debtor's prior business operations.  After engaging our Firm as his counsel, DealDefenders voluntarily produced in excess of 200 documents, spent money to load those documents in a searchable platform as requested by the Trustee's counsel Arent Fox and even made DealDefenders' principal Jeff Ellentuck available for a telephone conversation with the Trustee's counsel to explain the business of DealDefenders and how its services are used by parties like the Debtor in the international telecommunication industry.

The Motion for a 2004 Examination [ECF No. 43] ("2004 Motion") itself was filled with sensational and unsupported allegations, *e.g.*:

- "I believe that the DealDefenders' accounts, which purportedly received payments from the Debtor and released said payments to its customers (some of which appear

---

[1] FED. R. CIV. P. 45(g) Contempt. *The court for the district where compliance is required*—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it (*emphasis added*).

Hon. Barry Russell, U.S.B.J.
July 28, 2020
Page 2

> to be illegitimate shell entities), were used to facilitate fraudulent activities and money laundering." ECF No. 43 at 12:21-25.

- "Based on [Annie Stoops'] assessment of the documents and my own review of the documents, I believe that DealDefenders' document production on March 4th is incomplete and that DealDefenders possesses additional non-privileged documents response to the amended requests." ECF No. 43 at 10:18-21.

The fact is that we are aware of zero support for the Trustee's outlandish and unsupported money laundering allegations and prior to filing the 2004 Motion, the Trustee's counsel never once came back to us seeking any additional or supplemental document productions before it sought relief from this Court. Simply stated, the actions of counsel for the Trustee amount to an abuse of process as well as a lack of candor to this Court which behavior should not be condoned by this Court which has been misled now on several occasions through half-truths and "convenient" omission of all of facts. It is respectfully submitted that had all the facts been properly presented to this Court, it is possible that the very Order that the Trustee now seeks to find DealDefenders in contempt of may never had been entered in the first place.

On April 24, 2020, the Trustee's counsel recklessly and tortiously interfered with DealDefenders' banking relationships when it wrote to Bank of America and stated that DealDefenders "may have misappropriated the Debtor's funds using their Bank of America accounts." ECF No. 47 at 21. Again, we are aware of zero support for the Trustee's misappropriation characterization and DealDefenders rightfully has serious concerns about how the Trustee is conducting his investigation and his ability to control the way his counsel will treat private and confidential information produced by a non-party in this case.

On April 29, 2020, the Trustee through counsel filed a *Notice of Lodgment* [ECF No. 44] of the proposed form of Order granting the Trustee's 2004 Motion. The Proof of Service Document submitted therewith (and erroneously dated two months earlier on February 24, 2020), states that it was served on Robert K, Malone via e-mail. Mr. Malone never consented in writing (as the Proof of Service form itself states is required).

On May 4, 2020, the Trustee's 2004 subpoena was served on DealDefenders' agent for service of process in Delaware. The subpoena identifies the place for compliance as Arent Fox's office in Washington, D.C.

On May 18, 2020, notwithstanding the fact that: (a) the Motion for a Rule 2004 Motion was never properly served in accordance with the Rules and (b) the subpoena was facially defective, DealDefenders, in the spirit of the cooperation which had been shown in connection with the initial voluntary production, timely served its responses and objections to the 2004 subpoena, and specifically objected, among other objections, to Washington D.C. as the place for compliance because it exceeded the 100 mile geographical limitation in FED. R. CIV. P. 45(c).

Hon. Barry Russell, U.S.B.J.
July 28, 2020
Page 3

Now the Trustee has made the "quantum leap" to seek an Order for contempt sanctions in the "issuing court" without first bringing a motion to compel in the proper "compliance court" as FED. R. CIV. P. 45 requires.  There can be only one reason for this maneuver.  The Trustee clearly knows it cannot move for a Motion to Compel based upon the undisputed fact that unless and until an effective subpoena is properly served, it does not have a compliance court in which to make such Motion.

Like thousands of limited liability companies, DealDefenders is a Delaware limited liability company, but it regularly conducts its business in the Eastern District of Pennsylvania, not Delaware.  Likewise, the Company representative, Jeff Ellentuck whom they seek to depose does not live in Delaware.  The subpoena that the Trustee served on DealDefenders' registered agent in Delaware was clearly defective under FED. R. CIV. P. 45(c) as it calls for compliance in Washington D.C., more than 160 miles away from DealDefenders' business.  In fact, the Trustee's counsel admitted on a meet and confer call that he knew that DealDefenders was more than 100 miles from Washington D.C., even though he mistakenly believed at the time that DealDefenders was based in Wilmington, Delaware.  The Trustee's counsel should know that under FED. R. CIV. P. 45, DealDefenders, as a non-party, can only be commanded to perform its obligations under the 2004 subpoena within a court possessing personal jurisdiction over DealDefenders—i.e., a court "within 100 miles of where" DealDefenders "regularly transacts business in person."  FED. R. CIV. P. 45(c)(1)(A).  So, under Rule 45, the only proper forum for the Trustee to enforce the subpoena are those within 100 miles of DealDefenders' place of business in the Eastern District of Pennsylvania.  In order to appear for a deposition in Washington D.C., Mr. Ellentuck would have to travel from Pennsylvania, through Delaware and Maryland (both of which are currently on New Jersey's list of Covid travel restricted states)[2] before getting to Washington D.C.

And DealDefenders is willing to cooperate with the Trustee's investigation of the Debtor's business affairs.  What it will not do is sign a one-sided, heavy-handed "take it or leave it" stipulation that requires DealDefenders, a non-party in the Debtor's chapter 7 case, to have to hire local California counsel to be on standby to run into the Central District of California for the foreseeable future to protect its interests in its confidential documents in whatever future litigation(s) the Trustee decides to commence.  Those concerns can and should be addressed now, in advance.  As the letter and e-mail attached to this letter clearly show, DealDefenders has proceeded in good faith to negotiate a form of protective order that provided DealDefenders with meaningful protections on the use of is confidential business records.  The Trustee complicated the protective order negotiations by adding in the receiver ("DLI Receiver") that was appointed in Securities Exchange Commission v. Direct Lending Investments LLC, Case No. 2:19-cv-2188-DSF-MRW (C.D. Ca.) as a party to the proposed form of protective order.  While we do not object to working on parallel tracks with the Trustee and the DLI Receiver, we respectfully do not believe that this court has jurisdiction over the DLI Receivership case pending in the District Court.  In order to keep things moving, we took the time to prepare two substantially identical proposed forms of protective orders, one for the Bankruptcy Court and one for the District Court, but the

[2] https://covid19.nj.gov/faqs/nj-information/travel-information/which-states-are-on-the-travel-advisory-list-are-there-travel-restrictions-to-or-from-new-jersey

Hon. Barry Russell, U.S.B.J.
July 29, 2020
Page 4

Trustee summarily dismissed our concerns about this Court's ability to exercise jurisdiction over the DLI Receiver's use of DealDefenders' confidential documents in the District Court case.

On July 9, 2020, we wrote to the Trustee's counsel and once again explained our concerns about the use of DealDefenders' confidential business records. A copy of that letter is attached hereto as Exhibit A. In that letter, we invited the Trustee to continue negotiations on an acceptable form of protective order. We received no response. We followed up in a July 16, 2020 e-mail to the Trustee's counsel where we again offered to work to resolve the proposed form of protective orders. A copy of that e-mail is attached hereto as Exhibit B. Again, we received no response before the Trustee's Contempt Motion on July 21, 2020.

DealDefenders remains a non-party. DealDefenders has not submitted itself to the jurisdiction of the Central District of California. If the delay in ironing out terms of a protective order between the Trustee and DealDefenders prompted the Trustee into motion practice, the Trustee's proper course of action would have been to file a motion *in the court where compliance is sought*, *i.e.*, a court with personal jurisdiction over DealDefenders, within 100 miles of where DealDefenders "regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).

Overall, DealDefenders simply wishes to advise the Court of the jurisdictional issues with the Contempt Motion, which notably fails to include any jurisdictional allegations at all. That of course if because there is no basis for asserting jurisdiction over DealDefenders in the Central District of California. Any motion to enforce may only properly be commenced in the compliance court.

Thank you for your attention to this issue.

Respectfully submitted,

Mark B. Conlan
Director

cc:    Annie Y. Stoops, Esq.
       David G. Bayles, Esq.
       Robert K. Malone, Esq.
       Michael A. Conforti, Esq.
       Andy Kong, Trustee

Hon. Barry Russell, U.S.B.J.
July 28, 2020
Page 5

# E‌XHIBIT A



Mark Conlan
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4545 Fax: 973-639-6356
mconlan@gibbonslaw.com

July 9, 2020

Annie Y. Stoops
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

>           **Re:    In re VoIP Guardian Partners I**
>                   **Case No. 2:19-bk-12607-BR**

Dear Ms. Stoops:

Please accept this letter in response to your letter of July 3, 2020 (a Federal court holiday) to my colleague Robert K. Malone that purports to be your client's *Final Demand for DealDefenders' Complete Responses to the Chapter 7 Trustee's Subpoena for Documents under Fed. R. Bankr. P. 2004* ("July 3 Letter"), an ominous and overbearing title in light of the Trustee's uncured failure to properly serve the subpoena in the first place.  We have raised the Trustee's service deficiencies before, including in DealDefenders' Responses and Objections dated May 18, 2020, *see* General Objections 1-3, none of which have been waived or cured. Rule 45(c) provides for the a subpoena to command discovery within 100 miles of where the person resides, is employed or regularly conducts business.  Neither DealDefenders nor Jeff Ellentuck reside, are employed or conduct business within 100 miles of Washington, D.C., the improper place for compliance designated on the subpoena.  Proper service appears to be of no moment to the Trustee before leveling threats to compel compliance with a third party subpoena which places an undue burden on Deal Defenders and Jeff Ellentuck, especially in the midst of a *COVID-19* pandemic that has forced many businesses, including DealDefenders, to have their employees work remotely, away from their offices where its business records are routinely maintained.

The tone and substance of your July 3 Letter conveniently ignores the fact that ***all of DealDefenders' productions, responses and meet and confer dialogue to date have been done*** **on** *a voluntary basis and in good faith*.  Because the Trustee has yet to properly serve DealDefenders with a 2004 subpoena, DealDefenders would be well within its rights to breakoff discussions with the Trustee until it has been properly served.  Nevertheless, DealDefenders remains cooperative and willing to continue discussions until such time as we have negotiated a form of protective order that adequately addresses its legitimate confidentiality concerns.  What it will not do is voluntarily sign a one-sided, heavy-handed "take it or leave it" stipulation that requires DealDefenders, a non-party in the VoIP chapter 7 case, to have to hire local California counsel to run into a foreign court to protect its interests in its confidential documents.  Those concerns can and should be addressed now, in advance.

GIBBONS P.C.

July 9, 2020
Page 2

The Trustee's artificial attempt to constrain the treatment of DealDefenders' confidential information to FED. R. CIV. P. 26(c), which does allow trade secrets and commercial information to be protected, of course does not apply here as there is no adversary proceeding or "contested matter" before the court. *See* FED. R. BANKR.P. 7026, 9014(c).

DealDefenders is not interested in obstructing the Trustee's investigation, but it is interested in protecting its right to keep its business operating and its financial information out of the public domain. That includes keeping its confidential, non-public information out of the hands and eyes of competitors and others who would be happy to destroy DealDefenders' legitimate business. Your July 3 Letter tries to minimize the problem by characterizing this as "unsubstantiated confidentiality concerns." Let me spell out the issue as simply as I can: DealDefenders' customers are mostly wholesalers. That means the WHOLESALER buys from a seller, PARTY A, at one price and resells to another party, PARTY B, at a higher price. If DealDefenders' records are made available to be viewed by any PARTY, including other wholesalers, they can bypass/circumvent the WHOLESALER and DealDefenders' business will then be destroyed. That is not an "unsubstantiated concern." It's a fact—and a legitimate concern. That is why we included a provision in the proposed form of protective order on "Industry Participants" that you summarily deleted.

It is important to recall how we got where we are. DealDefenders was voluntarily cooperating with your prior informal document request and made Mr. Ellentuck available to your partner, Mr. Bayles, to explain the business of DealDefenders and how their services are used by parties like VoIP Guardian in the international telecommunication industry. We were obviously surprised by your failure to simply pick up the phone or send an e-mail if you sincerely thought that our prior document production, which was quite substantial and organized for you so it could be easily reviewed, was somehow incomplete—prior to seeking a Rule 2004 order from the Bankruptcy Court. Instead, you decided to make some sensational and unfounded allegations in support of your Rule 2004 motion that our client was a participant in a "money laundering scheme." Then on April 24, 2020, the Trustee's counsel recklessly and tortiously interfered with DealDefenders' banking relationships when it wrote to Bank of America and stated that DealDefenders "may have misappropriated the Debtor's funds using their Bank of America accounts." ECF No. 47 at 21. That's a real problem. We are aware of zero support for that outlandish characterization and DealDefenders rightfully has serious concerns about how the Trustee is conducting his investigation and his ability to control the way his counsel will treat private and confidential information produced in this case.

DealDefenders did not complicate the resolution of the proposed form of protective order by inviting the SEC Receiver in the DLI case ("DLI Receiver") to join in—the Trustee did that. While we do not object to working on parallel tracks with the Trustee and the DLI Receiver, we must point out the lack of any concurrent jurisdiction over both these matters. As you are aware, the DLI Receiver was appointed by the District Court in a separate action, not the Bankruptcy Court. Thus, notwithstanding your confidence that Chris Sullivan's June 30, 2020 e-mail is sufficient to grant subject matter jurisdiction to the Bankruptcy Court over the DLI receivership

GIBBONS P.C.

July 9, 2020
Page 3

action in the District Court, we respectfully have our doubts. Doubts that are not a "pretense" or a "delay tactic." Doubts that can easily be addressed by having each court approve substantially similar forms of protective orders, which we took the time to prepare, provided a blackline to show the differences in the two (2) Protective Orders and which you, again, summarily dismissed.

Your July 3 Letter dedicates a fair amount of ink complaining about documents that have not yet been produced due to DealDefenders' confidentiality concerns. First, we never said that the preliminary production made in March represented the universe of documents. Second, the examples you sent of unproduced e-mails that you said should have been produced were outside of the date range in your original request. Why would we have produced those? We already explained this on the phone, why are you repeating it again in your letter? Third, the obvious solution to getting the balance of responsive documents produced is getting the protective orders approved. We remain available to work through those issues. What we will not be doing is producing confidential documents in advance of the entry of a protective order. It's a matter of trust, which was destroyed by the reckless April 24 letter to BOA.

If the Trustee is unwilling to negotiate the terms of the form of protective order in a balanced, even-handed way, then we will move for a Protective Order in the compliance court as Rule 45 envisions, which will not be in California or Washington, D.C.

Please let us know when you are available to discuss the form of Protective Orders in a constructive manner so we can continue to hopefully proceed on a voluntary basis.

Sincerely,

Mark Conlan
Director

MC:

Cc:    Robert K. Malone
       Michael Conforti
       David G. Bayles
       Andy Kong
       Chris Sullivan

Hon. Barry Russell, U.S.B.J.
July 28, 2020
Page 6

# E<small>XHIBIT</small> B

**Conlan, Mark**

---

| | |
|---|---|
| **From:** | Malone, Robert K. |
| **Sent:** | Thursday, July 16, 2020 4:12 PM |
| **To:** | Bayles, David; Christopher Sullivan |
| **Subject:** | FW: In re VoIP Guardian Partners I  - Draft Protective Order |
| **Attachments:** | 07.09.20 Letter to VoIP Trustee Counsel.pdf |

**Importance:**    High

David and Chris,

Good afternoon. Please see below and the attached which was sent one (1) week ago to Annie Stoops.. Have we now reached an impasse or do you want to see if we can still work out the two (2) Protective Orders which in sum and substance are virtually identical.

We remain available to discuss the orders so we can proceed with providing whatever additional documents may be responsive to the document requests after these orders are finalized. Thank you.

Regards,

Bob


Robert K. Malone
Director & Chair
Financial Restructuring
**Gibbons P.C.**
One Gateway Center
Newark, New Jersey  07102-5310
(973) 596-4500
(973) 596-4533 direct
(973) 639-6357 fax
(201) 407-6235 cell
(201) 214-1569 alt cell
rmalone@gibbonslaw.com
www.gibbonslaw.com

---

**From:** Conlan, Mark <MConlan@gibbonslaw.com>
**Sent:** Thursday, July 9, 2020 9:07 PM
**To:** Stoops, Annie Y. <Annie.Stoops@arentfox.com>
**Cc:** Conforti, Michael A. <MConforti@gibbonslaw.com>; Jack Valinoti <jack.valinoti@diamondmccarthy.com>; Bayles, David <David.Bayles@arentfox.com>; Kong, Andy <Andy.Kong@arentfox.com>; Christopher Sullivan <CSullivan@diamondmccarthy.com>; Malone, Robert K. <RMalone@gibbonslaw.com>
**Subject:** RE: In re VoIP Guardian Partners I - Draft Protective Order

Annie,

Attached please find our response to your letter of July 3rd.

We remain available to meet and confer.

Regards,
Mark

Mark B. Conlan, Esq.
Director
Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102
(973) 596-4545
(973) 639-6356 (f)
mailto: mconlan@gibbonslaw.com
http://www.gibbonslaw.com
Newark | New York | Trenton | Philadelphia | Wilmington | Washington DC | West Palm Beach | Red Bank

---

**From:** Stoops, Annie Y. <Annie.Stoops@arentfox.com>
**Sent:** Friday, July 03, 2020 4:41 PM
**To:** Malone, Robert K. <RMalone@gibbonslaw.com>
**Cc:** Conlan, Mark <MConlan@gibbonslaw.com>; Conforti, Michael A. <MConforti@gibbonslaw.com>; Jack Valinoti
<jack.valinoti@diamondmccarthy.com>; Bayles, David <David.Bayles@arentfox.com>; Kong, Andy
<Andy.Kong@arentfox.com>; Christopher Sullivan <CSullivan@diamondmccarthy.com>
**Subject:** RE: In re VoIP Guardian Partners I - Draft Protective Order

Hi Bob,

Attached please find our final meet and confer letter, dated July 3, 2020.  Should you wish to discuss the protective
order next week, please let us know your availability.

Thank you,
Annie

**Annie Y. Stoops**
Associate

**Arent Fox LLP** | Attorneys at Law
Gas Company Tower
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
213.443.7548 DIRECT | 213.629.7401 FAX
annie.stoops@arentfox.com | www.arentfox.com

---

**From:** Malone, Robert K. <RMalone@gibbonslaw.com>
**Sent:** Tuesday, June 30, 2020 11:35 AM
**To:** Christopher Sullivan <CSullivan@diamondmccarthy.com>
**Cc:** Stoops, Annie Y. <Annie.Stoops@arentfox.com>; Conlan, Mark <MConlan@gibbonslaw.com>; Conforti, Michael A.
<MConforti@gibbonslaw.com>; Jack Valinoti <jack.valinoti@diamondmccarthy.com>; Bayles, David
<David.Bayles@arentfox.com>; Kong, Andy <Andy.Kong@arentfox.com>
**Subject:** Re: In re VoIP Guardian Partners I - Draft Protective Order

Chris

With all due respect, there are two (2) very separate court proceedings. The SEC Receiver is neither a creditor or party in interest in the Bankruptcy case and thus is not subject to the jurisdiction of the Bankruptcy Court. Likewise, the Chapter 7 Trustee is not a party to the SEC action pending in the United States District Court. Accordingly two (2) separate Protective Order are indeed required here.

If you review them both side by side as I suggested to Annie Stoops, the revisions address for the most part the difference in which Federal Rules shall govern.

I have no problem making a simultaneous document productions and we still wish to be cooperative with both the Trustee and SEC Receiver. However, as a preliminary issue neither subpoena was ever properly served. Notwithstanding  that fact, we remain cooperative in the hopes that when you are finally educated as to the facts and how these transactions work in this industry you will realize our client was a mere conduit in what it believed were legitimate telecommunications transactions.

However, both of you are attempting to  not only improperly consolidate these cases , but also slip in there that we are now subjecting our client to the jurisdiction of the Courts in California which our client as a third party witness has not consented. If we are producing documents to the SEC Receiver, we need the assurance that we have an enforceable Protective Order in both Courts. If you have no issue as to the substance of the SEC Receiver Protective Order and only wish to adopt the comments of the chapter 7 Trustee as they may be applicable to the SEC Receiver, please advise and I will can see when we can schedule a conference call to resolve issues which we clearly have with the latest version sent to us. However we are not going to operate under one (1) Protective Order especially given what has already transpired with respect to the prior actions of the Trustee's counsel  taken with respect to Deal Defenders banking relationships.

Thank you.

Regards,

Bob

Robert K.Malone
Director & Chair
Financial Restructuring
GIBBONS, PC
One Gateway Center
Newark,  New Jersey 07102
(973) 596-4500
(973) 596-4533 direct
(201) 407-6235  cell
rmalone@gibbonslaw.com


On Jun 30, 2020, at 2:06 PM, Christopher Sullivan <CSullivan@diamondmccarthy.com> wrote:



Bob,

We do not believe two separate Protective Orders are needed at this time.   We have no additional comments to what Annie circulated and you should provide comments to that order.

The Receiver will agree to be bound to the order in the Bankruptcy Case and hold in abeyance the subpoena in the SEC matter if the production is moving forward so we can get this going as soon as possible.  That way you will not have to negotiate to different protective orders now.

That process will be the easiest and lead to the least amount of delay.

Chris.

<dm_mailsig_d2de9220-18d0-402e-91b8-dd9a4ffe3894.jpg>
**Christopher Sullivan | Partner**
**150 California Street, Suite 2200**
**San Francisco, California 94111**
415-692-5201 direct
415-692-5200 main
415-263-9200 fax
web  | bio | vCard

HOUSTON | DALLAS | NEW YORK | LOS ANGELES | SAN FRANCISCO

This message and all attachments are confidential and may be protected by the attorney-client or other privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you believe this message has been sent to you in error, please notify the sender by replying to this transmission and delete the message without disclosing it. Thank you.

Pursuant to U.S. Treasury Department Regulations, we are required to advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purposes of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

**From:** Malone, Robert K. [mailto:RMalone@gibbonslaw.com]
**Sent:** Monday, June 29, 2020 5:13 PM
**To:** Stoops, Annie Y.
**Cc:** Conlan, Mark; Conforti, Michael A.; Christopher Sullivan; Jack Valinoti; Bayles, David; Kong, Andy
**Subject:** Re: In re VoIP Guardian Partners I - Draft Protective Order

Annie

We took the time to prepare the two separate Protective Orders because the Bankruptcy and the SEC action are pending in two (2) separate federal courts. We told you and we told Chris and Jack the reason for two (2) Protective Orders. Now  for the first time you have raised an issue when there was no issue raised when we advised you what we did,  why we did it and provided redline of the changes and gave everyone copies of both Protective Orders.

 If you look at the two Protective Orders side by side the only material changes are to the Federal Rules referenced and the Courts each case are pending. We believe that two (2) Protective Orders are necessary and you have provided no legitimate reasons why we should not proceed with two (2) Protective Orders. Accordingly as soon as we receive back any comments from Diamond McCarthy that they may have to the form of Protective Order we would be happy to schedule a conference call with everyone. If they have no additional comments, they can advise us all and we can then move forward with providing you our mark up to your proposed changes and look for a convenient time this week if schedules permit given the Federal Holiday at the end of the week.

Thank you.

Regards,

Robert K.Malone
Director & Chair
Financial Restructuring
GIBBONS, PC
One Gateway Center
Newark,  New Jersey 07102
(973) 596-4500
(973) 596-4533 direct
(201) 407-6235  cell
(201) 214-1569 alt cell
rmalone@gibbonslaw.com


On Jun 29, 2020, at 7:14 PM, Stoops, Annie Y. <Annie.Stoops@arentfox.com> wrote:


Hi Bob,

Thank you for letting us know.  We don't see a reason to further complicate and delay things with separate protective orders.  What about tomorrow (Tuesday) or Wednesday?  David and I are generally available so we can make most times work.  Please let us know.

Thank you,
Annie

**Annie Y. Stoops**
Associate

Arent Fox LLP | Attorneys at Law
Gas Company Tower
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
213.443.7548 DIRECT | 213.629.7401 FAX
annie.stoops@arentfox.com | www.arentfox.com

---

**From:** Malone, Robert K. <RMalone@gibbonslaw.com>
**Sent:** Monday, June 29, 2020 12:29 PM
**To:** Stoops, Annie Y. <Annie.Stoops@arentfox.com>
**Cc:** Conlan, Mark <MConlan@gibbonslaw.com>; Conforti, Michael A. <MConforti@gibbonslaw.com>; Christopher Sullivan <CSullivan@diamondmccarthy.com>; Jack Valinoti <jack.valinoti@diamondmccarthy.com>; Bayles, David <David.Bayles@arentfox.com>; Kong, Andy <Andy.Kong@arentfox.com>
**Subject:** Re: In re VoIP Guardian Partners I - Draft Protective Order

Annie

5

I have been on consecutive conference calls since 8:45 am today and am still on a conference call which will go on for some time this afternoon.  I still have to speak with my people internally.  Also, if you intend to continue in lock step with the SEC Receiver we still have not seen any comments from Diamond & McCarthy which  we would be helpful so we are not dealing with conflicting comments. Thus, if they intend to send their own comments, I rather deal with the comments together vs piecemeal.

Regards

Bob

Robert K.Malone
Director & Chair
Financial Restructuring
GIBBONS, PC
One Gateway Center
Newark,  New Jersey 07102
(973) 596-4500
(973) 596-4533 direct
(201) 407-6235  cell
(201) 214-1569 alt cell
rmalone@gibbonslaw.com

On Jun 29, 2020, at 3:06 PM, Stoops, Annie Y. <Annie.Stoops@arentfox.com> wrote:

Hi Bob,

Hope you had a good weekend.  Please let us know when you're available for a call today or tomorrow.  We need to know if the parties can agree to terms for the protective order.

Thank you,
Annie

**Annie Y. Stoops**
Associate

Arent Fox LLP | Attorneys at Law
Gas Company Tower
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
213.443.7548 DIRECT | 213.629.7401 FAX
annie.stoops@arentfox.com | www.arentfox.com

**From:** Stoops, Annie Y.
**Sent:** Friday, June 26, 2020 6:01 PM
**To:** Malone, Robert K. <RMalone@gibbonslaw.com>
**Cc:** Conlan, Mark <MConlan@gibbonslaw.com>; Conforti, Michael A.

<MConforti@gibbonslaw.com>; Christopher Sullivan
<CSullivan@diamondmccarthy.com>; Jack Valinoti
<jack.valinoti@diamondmccarthy.com>; Bayles, David
<David.Bayles@arentfox.com>; Kong, Andy
<Andy.Kong@arentfox.com>
**Subject:** In re VoIP Guardian Partners I - Draft Protective Order

Hi Bob,

Attached please find the clean and redline versions of the protective order with our edits.  It would be best to schedule a call for us to discuss any remaining issues with the protective order and timing for future productions.  Please let us know what your team's availability is for Monday (6/29) or Tuesday (6/30).

Thank you,
Annie

**Annie Y. Stoops**
Associate

**Arent Fox LLP** | Attorneys at Law
Gas Company Tower
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
213.443.7548 DIRECT | 213.629.7401 FAX
annie.stoops@arentfox.com | www.arentfox.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

<image001.jpg>

**Disclaimer**
The contents of this message, together with any attachments, may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, printing, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify me immediately by reply e-mail or call Gibbons P.C. at 973-596-4500 and delete this message, along with any attachments, from your computer.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

# EXHIBIT B

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re SUBPOENA ISSUED TO:<br><br>DEALDEFENDERS LLC<br><br>in the case of<br><br>In re:<br><br>VOIP GUARDIAN PARTNERS I, LLC,<br><br>Debtor. | Civil Action No.: 2:20-mc-75<br><br>Civil Action No. 2:19-bk-12607-BR<br>(Pending in the United States Bankruptcy<br>Court for the Central District of California –<br>Los Angeles Division)<br><br>*Document Electronically Filed*<br><br><br>**NOTICE OF MOTION** |

**TO:**  David G. Bayles
Aram Ordubegian
Andy S. Kong
Annie Y. Stoops
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Phone: (213) 629-7400
Fax: (213) 629-7401
Email: david.bayles@arentfox.com
Email: aram.ordubegian@arentfox.com
Email: andy.kong@arentfox.com
Email: annie.stoops@arentfox.com

*Attorneys for Chapter 7 Trustee*


   **PLEASE TAKE NOTICE** that on **Tuesday, July 28, 2020,** or as soon thereafter as counsel may be heard, DealDefenders LLC ("DealDefenders") shall move before the United States District Court for the Eastern District of Pennsylvania for an order granting DealDefenders' *Motion to Quash or Modify the Subpoena Served by the Chapter 7 Trustee, Or, In the Alternative, For a Protective Order* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, in support of its Motion, DealDefenders shall rely on the papers submitted herewith and argument of counsel, if any.

Dated:  July 28, 2020

By: */s/ Mark B. Conlan*_____
Mark B. Conlan, Esq. (Pa Bar No. 86599)
Robert K. Malone, Esq. (*pro hac vice* pending)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Phone: (973) 596-4500
mconlan@gibbonslaw.com

*Attorneys for Non-Party*
*DealDefenders LLC*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re SUBPOENA ISSUED TO:<br><br>DEALDEFENDERS LLC<br><br>in the case of<br><br>In re:<br><br>VOIP GUARDIAN PARTNERS I, LLC,<br><br>Debtor. | Civil Action No.: 2:20-mc-75<br><br>Civil Action No. 2:19-bk-12607-BR<br>(Pending in the United States Bankruptcy<br>Court for the Central District of California –<br>Los Angeles Division)<br><br>*Document Electronically Filed*<br><br>**ORAL ARGUMENT REQUESTED** |

---

**NON-PARTY DEALDEFENDERS LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH OR MODIFY THE SUBPOENA SERVED BY THE CHAPTER 7 TRUSTEE, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

---

Mark B. Conlan, Esq. (PA Bar No. 86599)
Robert K. Malone (*pro hac vice* pending)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
mconlan@gibbonslaw.com
-and-
One Logan Square
Suite 1210
Philadelphia, Pennsylvania 19108-2757
(215) 665.0400

*Attorneys for Non-Party
DealDefenders LLC*

2843756.2 113805-97748

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

I.      PRELIMINARY STATEMENT ................................................................... 1

II.     BACKGROUND ........................................................................................... 3

       A.      Understanding DealDefenders' Business. ............................................ 5

       B.      The Trustee's Invasive Discovery Demands on Non-Party DealDefenders. ........... 6

             1.      The Requests Go Too Far. ........................................................ 6

             2.      The Trustee's Requests Demonstrate the Trustee's Lack of Understanding of DealDefenders' Business. .................................. 6

             3.      The Trustee's Actions Have Become Tortious. ........................................ 7

       C.      DealDefenders Proposes A Meaningful Protective Order That Safeguards Its Business. ............................................................. 9

       D.      The Trustee and Non-Party DealDefenders Meet and Confer, But Fail to Reach an Agreement. ........................................................... 10

III.    THE EASTERN DISTRICT OF PENNSYLVANIA IS THE PROPER COMPLIANCE COURT .................................................................. 11

IV.     SERVICE DEFECTS ................................................................................. 12

V.      THIS MOTION IS TIMELY ..................................................................... 14

VI.     ARGUMENT ............................................................................................. 15

       A.      Legal Standard ................................................................................... 15

       B.      In the First Instance, the Court Should Quash the Subpoena Because FED. R. CIV. P. 45(d)(3)(A) Requires the Court to Quash or Modify Subpoenas That Violate the Geographical Limits Specified in Rule 45(c), and Also Because the Subpoena Requires the Disclosure of "Protected Matter." .............. 16

       C.      In the Alternative, the Court Should Enter the Protective Order Under FED. R. BANKR. P. Rule 9018's and Section 107(b)'s Lenient Standards. .......... 17

       D.      Nonetheless, "Good Cause" Exists to Enter the Proposed Protective Order, Which is Necessary to Protect DealDefenders' Business. .................................... 20

i

1.    The Trustee's Discovery Demands are Overbroad and Seek Highly
      Sensitive Information................................................................ 21

2.    The Trustee's Discovery Demands Seek Duplicative Information. ......... 23

3.    DealDefenders Does Not Possess the Requested Discovery. .................. 24

4.    The Remaining Requests Seek Sensitive and Confidential
      Proprietary Business Information of DealDefenders, Requiring a
      Protective Order. ..................................................................... 25

VII.   CONCLUSION.......................................................................... 27

2843756.2 113805-97748

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bennett Funding Grp., Inc.*,
   203 B.R. 24 (Bankr. N.D.N.Y. 1996) .......................................................................18

*Cohen v. City of N.Y.*,
   255 F.R.D. 110 (S.D.N.Y. 2008) ..........................................................................20

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   2010 U.S. Dist. LEXIS 33430 (S.D.N.Y. Apr. 5, 2010) ......................................20

*Europlay Capital Advisors, LLC v. Does*,
   323 F.R.D. 628 (C.D. Cal. 2018) ..........................................................................11

*In re French*,
   145 B.R. 991 (Bankr. D.S.D. 1992) ......................................................................18

*In re GHR Energy Corp.*,
   33 B.R. 451 (Bankr. D. Mass. 1983) .....................................................................18

*In re GHR Energy Corp.*,
   35 B.R. 534 (Bankr. D. Mass. 1983) .....................................................................20

*Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*,
   160 F. Supp. 3d 574 (S.D.N.Y. 2015) ...................................................................11

*Martin v. Howard Univ.*,
   209 F.R.D. 20 (D.D.C. 2002) ................................................................................12

*In re Orion Pictures Corp.*,
   21 F.3d 24 (2d Cir. 1994) ................................................................................15, 17

*In re Phar-Mor, Inc.*,
   191 B.R. 675 (Bankr. N.D. Ohio 1995) ................................................................16

*In re Rafsky*,
   300 B.R. 152 (Bankr. Conn. 2003) .......................................................................22

*Rotter v. Cambex Corp.*,
   1995 WL 374275 (N.D. Ill. 1995) ........................................................................12

*In re Sanomedics, Inc.*,
   583 B.R. 796 (Bankr. S.D. Fla. 2018) ..................................................................22

iii

*Shingara v. Skiles*,
    420 F.3d 301 (3d Cir. 2005)...................................................................................20

*Sines v. Kessler*,
    325 F.R.D. 563 (E.D. La. 2018)..............................................................................14

*State Nat'l Ins. Co. v. County of Camden*,
    2010 WL 2719810 (D.N.J. June 30, 2010) .............................................................16

*In re Subpoena of Am. Nurses Ass'n*,
    788 F. Supp. 2d 444 (D. Md. 2011) .........................................................................11

*In re VoIP Guardian Partners I, LLC*,
    No. 2:19-bk-12607-BR (Bankr. C.D. Cal.)................................................................1

*In re Wilcher*,
    56 B.R. 428 (Bankr. N.D. Ill. 1985) ........................................................................20

**Statutes**

11 U.S.C. § 107(b) .......................................................................................... *passim*

11 U.S.C. § 107(b)(1) ...............................................................................................15

11 U.S.C. § 107(b)(2) ...............................................................................................15

28 U.S.C. §1334(c) ...................................................................................................18

**Other Authorities**

9 COLLIER ON BANKRUPTCY ¶ 2004.01 (16th ed. 2019) ...........................................22

10 COLLIER ON BANKRUPTCY ¶ 9018.03 ..................................................................19

D. Lender, J. Friedmann, J. Bonk, *Subpoenas: Responding to a Subpoena* 6
    (Thomson Reuters 2013)..........................................................................................14

**Rules**

FED. R. BANKR. P. 1017(f)(1)....................................................................................18

FED. R. BANKR. P. 2004 ............................................................................. *passim*

FED. R. BANKR. P. 2007.1(a) .....................................................................................18

FED. R. BANKR. P. 2020 ............................................................................................18

FED. R. BANKR. P. 3015(f) ........................................................................................18

2843756.2 113805-97748

FED. R. BANKR. P. 3015(g)................................................................................................18

FED. R. BANKR. P. 3020(b)(1)..........................................................................................18

FED. R. BANKR. P. 4001(a)(1)..........................................................................................18

FED. R. BANKR. P. 4001(b)(1)..........................................................................................18

Fed. R. Bankr. P. 4001(c)(1)...........................................................................................18

FED. R. BANKR. P. 4003(d)...............................................................................................18

FED. R. BANKR. P. 5011(b)...............................................................................................18

FED. R. BANKR. P. 6004(b)...............................................................................................18

FED. R. BANKR. P. 6004(c)...............................................................................................18

FED. R. BANKR. P. 6004(d)...............................................................................................18

FED. R. BANKR. P. 6006(a)...............................................................................................18

FED. R. BANKR. P. 6006(b)...............................................................................................18

FED. R. BANKR. P. 7001......................................................................................................17

FED. R. BANKR. P. 7030......................................................................................................17

FED. R. BANKR. P. 9014............................................................................................17, 18, 19

FED. R. BANKR. P. 9016..................................................................................................10, 16

FED. R. BANKR. P. 9018.............................................................................................. *passim*

FED. R. BANKR. P. 9020......................................................................................................18

FED. R. BANKR. P. 9027(d)...............................................................................................18

FED. R. CIV. P. 26..........................................................................................................17, 18

Fed. R. Civ. P. 26(b)(2)(C)(i) ...........................................................................................23

FED. R. CIV. P. 26(c) ...................................................................................................... *passim*

FED. R. CIV. P. 26(c)(1)(G) ................................................................................................19

FED. R. CIV. P. 45...............................................................................................11, 12, 15, 20

Fed. R. Civ. P. 45(a)(1)(A)(iii) .........................................................................................15

2843756.2 113805-97748

FED. R. CIV. P. 45(c) ................................................................................................ *passim*

Fed. R. Civ. P. 45(c)(1)(A) .................................................................................... 2, 11

FED. R. CIV. P. 45(d)(3) ............................................................................................ 16

FED. R. CIV. P. 45(d)(3)(A) ...................................................................................... 16

FED. R. CIV. P. 45(d)(3)(A)(ii) ............................................................... 12, 15, 16, 17

Fed. R. Civ. P. 45(d)(3)(A)(iii) ............................................................................... 15

FED. R. CIV. P. 45(f) ................................................................................................. 11

2843756.2 113805-97748

Non-party DealDefenders LLC ("DealDefenders") respectfully submits this memorandum of law in support of its motion to quash the non-party subpoena, or, in the alternative, for entry of a protective order pursuant to FED. R. BANKR. P. 9018 and Section 107(b) of the Bankruptcy Code or, in the alternative, Rule 26(c) of the Federal Rules of Civil Procedure to protect from public disclosure the confidential business information of DealDefenders; to set forth an efficient process for depositions and the production of other discovery in this matter; and to protect against the inadvertent disclosure of confidential information (the "Motion").  The subpoena prompting this Motion seeks the production of documents and examination of DealDefenders.  For the reasons set forth below, DealDefenders respectfully requests the Court grant the Motion and enter the protective order.

## I.      PRELIMINARY STATEMENT

This Motion arises out of a bankruptcy case presently pending in the Central District of California captioned *In re VoIP Guardian Partners I, LLC*,[1] No. 2:19-bk-12607-BR (Bankr. C.D. Cal.).  Timothy Yoo, as Chapter 7 trustee (the "Trustee"), through his counsel, Arent Fox, issued a non-party subpoena on DealDefenders that commands both document production and deposition testimony regarding a host of discovery areas that implicate significant amounts of DealDefenders' confidential business material.  DealDefenders, who despite not being properly served with a subpoena continued to voluntarily cooperate but eventually could not reach agreement with the Trustee on a stipulated protective order, and so DealDefenders' last remaining option to protect its commercially sensitive business information—the public disclosure of which would financially ruin DealDefenders' business—is this application to this Court seeking such relief.  This Court,

---

[1]  Hereinafter referred to as the "Debtor."

moreover, it the proper venue/jurisdiction, as the Eastern District of Pennsylvania is where non-party subpoena compliance is properly required.

The continued vitality of DealDefenders' legitimate business rests largely upon a protective order to safeguard DealDefenders' commercially sensitive business information from public disclosure as well as other parties, including the former principals of the Debtor. DealDefenders sought in good faith to negotiate the proper scope of a protective order, but the Trustee was non-agreeable to what his counsel viewed as "inappropriate change[s]" that "sought to broaden the scope of confidential information far beyond the protection afforded under the appropriate statutory authority, FRCP 26(c)." (Conlan Decl., Ex. A, at 13.) And therein lies the problem: the Trustee does not appreciate that the full scope of its discovery requests—requests with which DealDefenders seeks to comply—*require* a broad protective order to provide meaningful safeguards.

Although the subpoena should be quashed, in the first instance, for its blatant geographic violation of Fed. R. Civ. P. 45(c)(1)(A), as the Trustee served the non-party subpoena on DealDefenders and required compliance in Washington D.C.—167 miles from where DealDefenders "regularly transacts business in person"—DealDefenders secondarily seeks a protective order so that it may assist the Trustee in completing his investigation. At this juncture, however, it is painfully apparent that the Trustee does not comprehend exactly how DealDefenders' business operates, *see infra* Section II (A), and this disconnect is the cause of disagreement on the proper mechanisms to protect DealDefenders' confidential business information in the hands of the Trustee.

Accordingly, DealDefenders files the instant application in this Court under FED. R. BANKR. P. 9018, and Section 107(b) of the Bankruptcy Code, seeking a motion to quash, in the

2843756.2 113805-97748

first instance, or, alternatively, entry of a protective order to protect DealDefenders' confidential

commercial information from public disclosure.

## II.    <u>BACKGROUND</u>

DealDefenders is not a party to the underlying Chapter 7 case.  The Trustee accompanied

the non-party subpoena with a FED. R. BANKR. P. 2004 motion (the "<u>2004 Motion</u>"), seeking

documents and deposition testimony from DealDefenders related to factoring arrangements Debtor

had with several of DealDefenders' customers, most of which the Trustee asserts are "sham

arrangements" serving "no legitimate business purpose."    (Conlan Decl., Ex. B, at 3.)

DealDefenders has no personal knowledge of any allegedly fraudulent transactions on which a

deposition has been demanded.  The Trustee nonetheless maintains that, because the Debtor used

DealDefenders' business as its escrow agent to carry out an allegedly felonious plot,

DealDefenders must somehow be involved in the Debtor's allegedly illegal scheme and should

therefore "furnish all documents" involving its confidential customer information and banking

records.

The key disconnect with the Trustee's overbroad discovery requests is that he fails to

consider the nature of DealDefenders' business.  DealDefenders provides escrow services for the

telecommunications industry and facilitates wire transfers between entities, *while simultaneously*

*retaining the confidentiality of each entity's identity*.  DealDefenders has already voluntarily

provided the Trustee with all incoming wires DealDefenders received from the Debtor and

approximately 200 additional documents responsive to the Trustee's requests.[2]   The Trustee,

however, seeks much more and demands the confidential information detailing the business/wire

---

[2]  The Debtor was never a "customer" of DealDefenders, and therefore there are a limited number of wires totaling $87 million received by DealDefenders that were disbursed to the Debtor, which DealDefenders previously provided to the Trustee.

3

activity of DealDefenders' *other* customers.  While DealDefenders is sympathetic to the Trustee's

duty financially investigate the Debtor's estate, it cannot provide the Trustee with the unrestricted

use of DealDefenders' confidential information without causing serious financial injury to itself.

And the Trustee's belief regarding the Debtor's purportedly "sham arrangements" with

DealDefenders' customers should not give it carte blanche to cull through the confidential

information of DealDefenders' customers (especially those with zero interactions with the Debtor).

The information sought by the Trustee would effectively put DealDefenders ***out of business***.  One

foundational pillar of DealDefenders' business is guaranteed confidentiality vis-à-vis each of

DealDefenders' other customers.  DealDefenders cannot produce to the Trustee proprietary

information that, if used without a meaningful protective order, would assuredly cause

DealDefenders significant and likely fatal business harm.  It is therefore a paramount concern of

DealDefenders to have a robust and meaningful protective order in place to ensure the security of

its business and the confidential information promised by DealDefenders to its customers.

To this end, however, the Trustee has been nothing short of combative.  In negotiating a

simple protective order to allow the Trustee almost unfettered access to DealDefenders'

confidential information the Trustee needs to trace wired funds, the Trustee has pushed back so

hard on DealDefenders' proposed edits to the protective order's provisions that it created an

impasse.  This is an obviously unacceptable result, as the protective order is meant to provide

***DealDefenders*** with security that its confidential business records will be handled appropriately.

The fact that the Trustee will not agree to terms that ensure these safeguards has caused

DealDefenders to grow worrisome about how the Trustee will handle DealDefenders' confidential

and proprietary information without a meaningful protective order in place.

4

And precariously interplaying with the Trustee's casual attitude toward DealDefenders' confidential information is an ongoing federal criminal investigation. The Debtor's financial activities are under investigation by the Office of the United States Attorney for the Southern District of New York. It is foreseeable that DealDefenders may get caught up in that investigation if it turns out that DealDefenders unknowingly served as an escrow agent for the Debtor's allegedly fraudulent financial scheme, and so there appears to be significant overlap between the criminal investigation and the Debtor's bankruptcy case. It is therefore vital to DealDefenders' interests to have a proper protective order in place with the Trustee prior to producing any confidential business records.

### A. Understanding DealDefenders' Business.

DealDefenders provides secure escrow services for the telecommunications industry and serves over 1200 telephone companies and related industry members worldwide. To become a client of DealDefenders, each individual/business provides DealDefenders with information sufficient for DealDefenders to (*i*) ensure the business is legitimate, (*ii*) run the business through a series of federal databases to ensure it is not a known criminal organization, and (*iii*) coordinate with major regulated banking institutions.

DealDefenders' escrow service is generally operated on the premise of safeguarding client identity. In many transactions, brokers/wholesalers facilitate business deals between a buyer and a seller; this is the essence of the broker/wholesaler's business. If, for example, the buyer could learn the identity of the seller, then the buyer would not need the broker/wholesaler, could simply bypass directly to the seller, and could cut out the broker/wholesaler. This would obviously adversely impact the broker/wholesaler's—and DealDefenders'—business (and its reputation for maintaining confidentiality). DealDefenders has stressed this concept *ad nauseum* to the Trustee

5

in explaining why DealDefenders needs a truly meaningful protective order: the sustained success of DealDefenders' business depends upon it.

**B.**     **The Trustee's Invasive Discovery Demands on Non-Party DealDefenders.**

         **1.**     **The Requests Go Too Far.**

The primary issue with the Trustee's discovery demands are that they seek information not just about the Debtor and the entities with which the Debtor conducted business (understandably), but they seek to exponentially enlarge the scope to include any information stemming therefrom (i.e., any information related to any entity that conducted business with an entity that conducted business with the Debtor, etc.). In other words, if Company A did business with the Debtor, and Company B did business with Company A, the Trustee demands information related to both Company A's and Company B's confidential information *and* any additional Company that did business with Company B. Translated, the Trustee's requests ask for unlimited degrees of separation starting from the Debtor itself, to any entity with which the Debtor conducted business, and to any entity that conducted business with those entities—and so on. (*See* Conlan Decl., Ex. B, at 16.) Not only does this request go far beyond what FED. R. BANKR. P. 2004 permits, this sprawling web of inquiries will obviously consume a large chunk of DealDefenders' business and client information; will include largely irrelevant information; and will undoubtedly include— most importantly—alarmingly significant amounts of confidential information. While DealDefenders is willing to cooperate with the Trustee, it cannot do so without a meaningful protective order.

         **2.**     **The Trustee's Requests Demonstrate the Trustee's Lack of Understanding of DealDefenders' Business.**

The Trustee's Requests, moreover, indicate a serious failure to understand the basic underpinnings that comprise DealDefenders' business. The Trustee's failure to comprehend

2843756.2 113805-97748

DealDefenders' business is noteworthy given the time, over several meet and confers, that DealDefenders has taken to discuss the nature of its business with the Trustee's counsel. Simply put, it is abundantly clear from the Trustee's requests that he does not grasp how an escrow-transactions business in the telecommunications industry operates. If he did, the requests would be considerably narrowed and, in some cases, redirected to the switch that maintains the Call Data Records ("CDRs") from which the invoices that triggers the transfers are generated.

The Trustee's requests, in reality, can be boiled down to three categories of documents:

- (1) documents and communications related to services provided to the Debtor;

- (2) records related to all wires, incoming and outgoing, of the Debtor; and

- (3) all wires of the entities to which the Debtor sent money (i.e., "each CUSTOMER").

DealDefenders already produced what exists within the first category; produced what it maintains related to the Debtor, as a non-customer, of the second category; but cannot produce the vast universe of the third category without a protective order. At any rate, the Trustee managed to break these three categories into *eighteen separate* document requests, as he seems to be under the mistaken impression that (*i*) separate protocols exist for each transaction, (*ii*) communications exist as to each transaction, (*iii*) different communications, protocols, and/or transactions existed as to the Debtor's subsidiaries, and (*iv*) other DealDefenders' customers shared communications with DealDefenders about the Debtor specifically. These issues stem from the Trustee's ignorance as to DealDefenders' business and have created an absurd amount of unnecessary tension between the Trustee and non-party DealDefenders.

### 3. The Trustee's Actions Have Become Tortious.

After DealDefenders had produced 200 documents voluntarily loaded on a platform that allowed the Trustee to read the documents on a searchable format, the Trustee officially began his

7

formal third-party discovery campaign into DealDefenders' business on April 29, 2020, when it filed an *ex parte* motion for entry of an order by the Bankruptcy Court directing DealDefenders to produce documents and appear for examination pursuant to FED. R. BANKR. P. 2004 (*i.e.*, the 2004 Motion). (Conlan Decl., Ex. B.) The Trustee seeks information regarding DealDefenders' business in order to investigate potentially fraudulently transferred assets from the Debtor. (*See id* at 3-5.) Based on representations which were little more than half-truths, inflammatory unsubstantiated allegations, the Bankruptcy Court entered the order authorizing the 2004 Motion on April 30, 2020.

It became immediately apparent to DealDefenders that, to comply with the Trustee's broad discovery requests and fully assist the Trustee in its investigation, a protective order would be necessary before producing another document. Indeed, the Trustee served the 2004 Motion on DealDefenders *after* DealDefenders had already made in initial informal production of all its non-commercially sensitive business information related to the Debtor. (*See generally* Conlan Decl., Ex. C.) And without <u>any requests</u> for additional information or clarification after the initial production, the Trustee instead filed the 2004 Motion and demanded much, much more. Because any additional discovery would now include confidential business information, the parties needed to agree to terms of a protective order before DealDefenders could furnish the Trustee with the commercially sensitive information it sought.

In the midst of these discussions, the Trustee served a Rule 2004 motion on DealDefenders' bank, Bank of America (the "BOA 2004 Motion").[3] (Conlan Decl., Ex. D.) A non-privileged cover letter serving the BOA 2004 Motion on Bank of America advised that: "The Trustee has

---

[3]  Bank of America is one of DealDefenders' two financial services providers serving to assist in the escrow transactions. The loss of any financial services provider, especially one as large and reputable as Bank of America, would unequivocally deal a serious blow to DealDefenders' ability to conduct business.

been informed that several accountholders of yours may have misappropriated the Debtor's funds

using their Bank of America accounts.  The suspected accountholders are DealDefenders LLC and

its wholly owned subsidiaries, TelFinance LLC, TxtFinance LLC, and DealDefenders EU LLC."

(*Id.* at 21-22.)  Based on that letter, it is apparent that the Trustee and his counsel do not care about

DealDefenders' ability to continue in business, and in fact have tortiously interfered with

DealDefenders' critical banking relationships.

        In a perfect world, DealDefenders could simply produce any information the Trustee

needed and assist in a fully cooperative manner, with the assurance that the Trustee will safeguard

confidential information, redact where necessary, and consult with DealDefenders should any

potential issues arise.  But unfortunately, the Trustee has proceeded in such an overly aggressive

and reckless manner in his investigation, DealDefenders has reasonable reservations regarding the

Trustee's willingness and ability to safeguard DealDefenders' confidential materials.  Indeed,

serving the scandalously worded correspondence on Bank of America and accusing DealDefenders

of misappropriating the Debtor's funds is outrageous and illustrative of the Trustee's desire to

cripple DealDefenders' legitimate business.

        DealDefenders must accordingly secure a protective order before providing the current

counsel working on the Trustee's matter with any of DealDefenders' sensitive business

information.

### C.      DealDefenders Proposes A Meaningful Protective Order That Safeguards Its Business.

On June 19, 2020, DealDefenders circulated its edits to a proposed protective order.

(Conlan Decl., Ex. E.)  DealDefenders marked its edits against the first draft prepared by the

Trustee, which was relatively barebones and one-sided in favor of the Trustee, clearly a stock form

of protective order copy and pasted from their internal system, and did nothing to address

9

DealDefenders' genuine concerns about sharing proprietary information with the Trustee.  (*See* Conlan Decl., Ex. F.)  Although DealDefenders' reasonable edits *to the form of protective order* could have been the end of it, allowing for the production of documents the Trustee seeks, counsel for the Trustee disregarded DealDefenders' edits and largely reverted to the original draft initially sent to DealDefenders.    (Conlan Decl., Ex. G.)    Overall, the Trustee's markup against DealDefenders edits to the proposed protective order demonstrated a lack of any concern whatsoever for DealDefenders' legitimate confidentiality concerns.

> **D.** **The Trustee and Non-Party DealDefenders Meet and Confer, But Fail to Reach an Agreement.**

The Trustee and DealDefenders conducted multiple meet and confers to no avail.  After the Trustee shared his edits to the proposed protective order on June 26, 2020 and it became clear an impasse loomed, the Trustee sent DealDefenders' counsel a document entitled "Final Meet and Confer Letter re DealDefenders Subpoena Responses" on July 3, 2020.  (Conlan Decl., Ex. H.) However, the document was really a "take it or leave it," "final demand for DealDefenders to provide complete responses to the Trustee's document requests" by July 21, 2020—before any form of protective order was entered.    (*Id.*)    On July 9, 2020, DealDefenders exchanged correspondence regarding its contention that the Trustee's protective order did not take seriously any of DealDefenders' concerns, demonstrated a total lack of understanding of how DealDefenders' business operates, and failed to bridge the gap in trust. (Conlan Decl., Ex. I.)  The Trustee's counsel thereafter went "radio silent."  On July 16, 2020, DealDefenders again reached out to the Trustee to attempt to see if it could work towards a cohesive resolution with the protective order, but the Trustee did not return any communication and waited until its arbitrary July 21, 2020 production deadline to make a "quantum leap" and file his contempt motion in the Central District of California.    (Conlan Decl., Ex. J.)    This motion is the only means for

DealDefenders to protect itself against the Trustee's use of DealDefenders' proprietary information.

## III. THE EASTERN DISTRICT OF PENNSYLVANIA IS THE PROPER COMPLIANCE COURT

The United States District Court for the Eastern District of Pennsylvania has jurisdiction to consider this motion pursuant to Fed. R. Civ. P. 45(c) and Fed. R. Bankr. P. 9016. DealDefenders moves to quash the facially defective subpoena, in the first instance, or, alternatively, moves for a protective order in this Court, as opposed to the Central District of California (where the underlying bankruptcy case is pending), because this Court—and not the Central District of California—has jurisdiction over DealDefenders with respect to the non-party subpoena served on DealDefenders.[4]  The court must have personal jurisdiction over a non-party to determine the scope of compliance with a subpoena, which the Central District of California does not have.  *See, e.g.*, *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (holding that the Central District of California could not compel compliance with the non-party subpoena because only the Northern District of California had jurisdiction over the non-party).

The Advisory Committee Notes for Rule 45 state that "subpoena-related motions and applications are *to be made to the court where compliance is required* under Rule 45(c)." Advisory Committee Notes, Fed. R. Civ. P. 45.  And although Rule 45 subpoenas may be served anywhere in the United States, Rule 45 imposes strict geographical limits on where compliance is

---

[4] The Trustee lists Washington, D.C. as the place for document production and deposition compliance, but the District of Columbia similarly lacks jurisdiction over non-party DealDefenders, as it is 167 miles from where DealDefenders "regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).  It would therefore be nonsensical to submit to jurisdiction in the District of Columbia—where no personal jurisdiction over DealDefenders exists, and 3000 miles from where the underlying bankruptcy case is venued.  The Trustee's mistake in erroneously calling for Washington D.C. as the place for compliance is his own, and DealDefenders should not be forced to bear the brunt of that mistake, especially under the non-party rules (like Rule 45) that are aimed at providing protection for non-parties against such procedural abuses.

2843756.2 113805-97748

required:  "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c).[5]

DealDefenders' majority equity owner and managing member resides in the Commonwealth of Pennsylvania.  DealDefenders, the entity subject to the Trustee's subpoena, regularly transacts business in Morrisville (Yardley), Pennsylvania.    (Ellentuck Decl.)  DealDefenders' counsel maintains an office in Philadelphia, Pennsylvania, the Trustee's counsel maintains an office in New York City, and so the proper location for DealDefenders to comply with the subpoena and submit to jurisdiction is the Eastern District of Pennsylvania.

## IV.    SERVICE DEFECTS

Failure to properly serve a Rule 45 subpoena has been found to constitute grounds to quash or modify the subpoena.  *See, e.g.*, *Rotter v. Cambex Corp.*, 1995 WL 374275, at *4 (N.D. Ill. 1995).  And non-party subpoena recipients are not obligated to file a motion to quash or modify when service is defective.  *See, e.g.*, *Martin v. Howard Univ.*, 209 F.R.D. 20, 20-21 (D.D.C. 2002) (upholding a witness's refusal to appear based on defective service).  Here, the subpoena blatantly violates the geographical limitations of Rule 45(c), as it commands compliance for the production of documents and appearance for an examination in Washington, D.C.—167 miles away from Morrisville, Pennsylvania (i.e., where DealDefenders regularly transacts business in person).[6]

---

[5]  And although the Eastern District of Pennsylvania, as the proper compliance court, may transfer a subpoena-related motion to the issuing court, DealDefenders must either consent to such transfer, or the court must find exceptional circumstances permitting transfer.  *See* FED. R. CIV. P. 45(f); *see also Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*, 160 F. Supp. 3d 574, 579 (S.D.N.Y. 2015); *In re Subpoena of Am. Nurses Ass'n*, 788 F. Supp. 2d 444, 446 (D. Md. 2011).  Here, no exceptional circumstances for transfer exist, and a ruling by this Court on a protective order will not disrupt the issuing court's management of the underlying bankruptcy case because DealDefenders only seeks to safeguard its confidential business information against public disclosure, but all of DealDefenders discovery material will still be available to the issuing court, and to the Trustee, to further the administration of the bankruptcy estate.  This is all, not to mention, on top of the undue burden and cost on DealDefenders should it be forced to submit to jurisdiction in the Central District of California.

[6]  *See* FED. R. CIV. P. 45(d)(3)(A)(ii) (noting that courts ***must*** quash subpoenas that require compliance beyond the established geographical limits).

2843756.2 113805-97748

The Trustee served the subpoena on DealDefenders' registered agent, at DealDefenders' place of incorporation in Delaware. DealDefenders, like thousands of other business entities, may have been formed in Delaware, but that does not matter under Rule 45, as it (*i*) does not reside, (*ii*) is not employed, and (*iii*) does not regularly conduct business in Delaware. Even assuming DealDefenders' Delaware address, as its mere place of incorporation, qualified as the starting point for measuring the 100-mile radius under Rule 45(c), the Trustee admits Washington, D.C. is "approximately 108 miles away from DealDefenders' place of business." (Conlan Decl., Ex. A, at 12 n.9.)

Trustee's counsel, Arent Fox, with an office in New York, New York (approximately 67 miles from Morrisville, Pennsylvania), rather than communicate with DealDefenders or conduct any due diligence into the correct locale for proper service, opted to blindly and self-servingly select its home base in Washington D.C. as the location for compliance with the 2004 Motion and accompanying subpoena. And, moreover, Trustee's counsel falsely alleged on its Proof of Service for the subpoena that Robert K. Malone (attorney for DealDefenders) "consented in writing" to service by email. (*See* Conlan Decl., Ex. B, at 19.) No such consent was ever requested or provided.

Notwithstanding the Trustee's fatal service of a defective subpoena, DealDefenders must secondarily move for a protective order. DealDefenders understands the serious nature of the Trustee's financial investigation and (hopefully) locating the approximately hundreds of millions of dollars allegedly missing from the Debtor's estate. To this end, DealDefenders remains willing to assist the Trustee in that investigation—notwithstanding its lack of effective service—but his counsel's unprofessional demeanor and lack of candor toward the bankruptcy court thus far has

2843756.2 113805-97748

conclusively demonstrated to DealDefenders that, before DealDefenders can turn over confidential

business materials to the Trustee, a meaningful protective order must be in place.

## V.  <u>THIS MOTION IS TIMELY</u>

Although neither FED. R. BANKR. P. 9018 nor Section 107(b) of the Bankruptcy Code

require a motion for a protective order to be "timely" made, DealDefenders' motion is nonetheless

timely because the parties mutually agreed to "hold in abeyance" the dates set for compliance in

the court-ordered subpoena until a protective order was entered.[7]  (*See* Conlan Decl., Ex. A, at 14.)

And because a protective order has yet to be entered, the compliance date has yet to pass.  *See,*

*e.g.*, *Sines v. Kessler*, 325 F.R.D. 563, 566-67 (E.D. La. 2018) (citing D. Lender, J. Friedmann, J.

Bonk, *Subpoenas: Responding to a Subpoena* 6 (Thomson Reuters 2013) (noting that "courts may

excuse delay" where, for example, "the recipient and the issuing party attempted to negotiate"

toward the goal of compliance with the subpoena)).

On March 4, 2020, DealDefenders informally and voluntarily produced approximately 200

documents, totaling 6,302 pages, to the Trustee.  The very next communication with the Trustee

occurred when he launched a vast third-party discovery campaign into DealDefenders' business

on April 29, 2020, when it filed the 2004 Motion.  (Conlan Decl., Ex. B.)  On May 4, 2020, the

Trustee served the 2004 Motion on DealDefenders.  (Conlan Decl., Ex. K.)  On May 18, 2020 (i.e.,

within 14 days), DealDefenders objected to the subpoena.  (Conlan Decl., Ex. C.)

The date set for compliance of the document production was June 15, 2020.  The date set

for compliance for deposition was June 22, 2020.  The dates set for compliance have passed only

because the parties at least initially reached agreement that for DealDefenders to comply with the

---

[7]  The dates set for compliance with both document production and deposition examination were set by the Trustee
and order by the court.  After the parties agreed to disregard those dates and instead work on the prerequisite
protective order, the Trustee's July 3, 2020 communication purporting to—unilaterally, without court order—set July
21, 2020 as the new date for compliance is a non-binding, arbitrary deadline.  (*See* Conlan Decl., Ex. H, at 3.)

Trustee's extremely broad discovery requests and fully assist the Trustee in its investigation, a protective order would be necessary before producing another document.  (*See* Conlan Decl., Ex. L.)  In fact, DealDefenders was under the impression that the parties were still engaged in discussing the parameters of the protective order (*see* Conlan Decl., Ex. M; Ex. I; Ex. J.)  Then, unexpectedly and irrationally, the Trustee filed a motion for civil contempt against DealDefenders—rather than a motion to compel.  (Conlan Decl., Ex. A.).  Which of course, begs the question why the Trustee did not bring a motion to compel?  The answer is quite simple—The Trustee knew the subpoena was ineffective and this did not have a compliance court to bring such a motion.

## VI.     ARGUMENT

### A.     Legal Standard

Fed. R Civ. P. 45 governs discovery of non-parties by subpoena.  Rule 45 provides that a party may command a non-party to testify at a deposition and/or "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Rule 45 further provides that:  "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); [and] (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(ii), (iii).  And the proper Federal Rule of Bankruptcy Procedure applicable to DealDefenders' seeking a protective order so that it may fully assist the Trustee in its investigation is Fed. R. Bankr. P. 9018, and its statutory corollary 11 U.S.C. § 107(b).

Fed. R. Bankr. P. 9018 states, in pertinent part, that "the court may make any order which justice requires (1) to protect the estate *or any entity* in respect of a trade secret or other confidential research, development, or commercial information, [or] (2) to protect any entity against scandalous

15

or defamatory matter contained in any paper filed in a case under the Code." Section 107(b) of

the Bankruptcy Code echoes the language in FED. R. BANKR. P. 9018 and protects "an entity with

respect to a trade secret or confidential research, development, or commercial information," 11

U.S.C. § 107(b)(1) (emphasis added), or "a person with respect to scandalous or defamatory matter

contained in a paper filed in a case under this title," 11 U.S.C. § 107(b)(2).

Unlike its counterpart in FED. R. CIV. P. 26(c), Section 107(b) of the Bankruptcy Code does

not require an entity seeking protection thereunder to demonstrate "good cause." *See, e.g.*, *In re*

*Orion Pictures Corp.*, 21 F.3d 24, 28 (2d Cir. 1994) ("When Congress addressed the secrecy

problem in § 107(b) of the Bankruptcy Code it imposed no requirement to show 'good cause' as a

condition to sealing confidential commercial information."); *In re Phar-Mor, Inc.*, 191 B.R. 675,

679 (Bankr. N.D. Ohio 1995). Instead, the moving party must simply demonstrate that the material

sought to be protected satisfies <u>one</u> of the categories identified in Section 107(b) of the Bankruptcy

Code.

> **B.      In the First Instance, the Court Should Quash the Subpoena Because FED. R. CIV. P. 45(d)(3)(A) Requires the Court to Quash or Modify Subpoenas That Violate the Geographical Limits Specified in Rule 45(c), and Also Because the Subpoena Requires the Disclosure of "Protected Matter."**

Pursuant to FED. R. CIV. P. 45(d)(3), as made applicable here by FED. R. BANKR. P. 9016,

DealDefenders moves to quash the subpoena because (*i*) it requires DealDefenders to comply

beyond the geographical limits specified in FED. R. CIV. P. 45(c), and (*ii*) requires disclosure of

DealDefenders' "protected matter."

DealDefenders regularly transacts business in person in Morrisville, Pennsylvania.

Compelling DealDefenders to produce documents and to testify at a deposition held in

Washington, D.C.—167 miles from Morrisville, Pennsylvania; and admittedly 108 miles from

even Wilmington, Delaware (where the Trustee believed DealDefenders regularly transacted

16

business in person)—would violate the geographical limits specified in Federal Rule 45(c) and impose an undue burden on DealDefenders.  Under these crystal clear circumstances, there is little room for discretion:  the Rule *requires* the subpoena be quashed or modified.  *See* Fed. R. Civ. P. 45(d)(3)(A)(ii) (mandating the court "must quash or modify a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c)"); *see also State Nat'l Ins. Co. v. County of Camden*, 2010 WL 2719810, at *2 (D.N.J. June 30, 2010) ("[It is] clear that a court must quash any subpoena that calls for a deposition beyond the 100 mile limit for non-party witness.  Indeed, no other result is available as the rule itself requires such action by the court if a motion to quash is filed.").

Because the subpoena—by the Trustee's own admission—violates the geographical limitations set forth in Fed. R. Civ. P. 45(c), the Court *must* quash the subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A)(ii).

### C.    In the Alternative, the Court Should Enter the Protective Order Under Fed. R. Bankr. P. Rule 9018's and Section 107(b)'s Lenient Standards.

Because neither Fed. R. Bankr. P. 9018 nor Section 107(b) of the Bankruptcy Code require a showing of "good cause" as a prerequisite to a protective order, courts are much more inclined to protect entities' confidential information from public disclosure, *see In re Orion Pictures Corp.*, 21 F.3d at 28 (noting "the broad protection in bankruptcy proceedings that § 107(b) contemplates for confidential commercial information").

Contrary to the Trustee's assertions, Fed. R. Civ. P. 26 does not apply to the resolution of this issue.  Rule 26 can only apply in one of two scenarios:  (*i*) if this is an "adversary proceeding" (which it is not); or (*ii*) if this is a "contested matter" (which it is not).  In fact, the Trustee's counsel conceded in his 2004 Motion, his counsel declared under oath that:

> The examination sought cannot proceed under Federal Rules of Bankruptcy Procedure 7030 or 9014 because the Trustee is not a party to an adversary

17

> proceeding or contested matter that is currently pending in this Court under which the proposed examination and document production can properly be made, and thus a Rule 2004 exam is the only means for the Trustee to obtain deposition testimony and the production of documents from DealDefenders.

Conlan Decl., Ex. B at 11.

An "adversary proceeding" begins with the filing of a complaint, commencing a proceeding, and the parties involved are adverse to one another. *See* FED. R. BANKR. P. 7001. A "contested matter," on the other hand, involves "an actual dispute, other than an adversary proceeding, before the bankruptcy court." Advisory Committee Note to FED. R. BANKR. P. 9014. There are a myriad of issues that qualify as "contested matters" under the Bankruptcy Rules and, indeed, a laundry list's worth of Bankruptcy Rules cite to FED. R. BANKR. P. 9014 applying them as "contested matters."[8] Subpoenas are not one.

In *In re French*, the Bankruptcy Court provided the following helpful explanation of FED. R. BANKR. P. 2004, which elucidates exactly why a subpoena issued pursuant to Rule 2004 is neither an adversary proceeding nor a contested matter:

> Generally, Rule 2004 is the basic discovery device used in bankruptcy cases. The rule allows any entity to be examined without the requisite of any pending action such as an adversary proceeding or contested matter. As a discovery device, Bankruptcy Rule 2004 may seem similar to the discovery provisions found in the Federal Rules of Civil Procedure, but the two are different. *If a contested matter or adversary proceeding is pending, Rule 2004*

---

[8] Examples include: certain proceedings to dismiss, convert or suspend a case, FED. R. BANKR. P. 1017(f)(1); a motion to appoint a trustee or examiner, FED. R. BANKR. P. 2007.1(a); a proceeding to contest any act or failure to act by the U.S. Trustee, FED. R. BANKR. P. 2020; an objection to confirmation or modification of a chapter 12 or chapter 13 plan, FED. R. BANKR. P. 3015(f), (g); an objection to confirmation of a chapter 9 or chapter 11 plan, FED. R. BANKR. P. 3020(b)(1); a motion for relief from the automatic stay or to prohibit or condition the use, sale or lease of property, FED. R. BANKR. P. 4001(a)(1); a motion for authorization to use cash collateral, FED. R. BANKR. P. 4001(b)(1); a motion for authority to obtain credit, Fed. R. Bankr. P. 4001(c)(1); a proceeding to avoid a lien or other transfer of exempt property, FED. R. BANKR. P. 4003(d); a motion for abstention pursuant to 28 U.S.C. §1334(c), FED. R. BANKR. P. 5011(b); an objection to the proposed use, sale or lease of property, FED. R. BANKR. P. 6004(b), (d); a motion to sell property free and clear of liens and other interests, FED. R. BANKR. P. 6004(c); a proceeding to assume, reject or assign an executory contract or unexpired lease, other than as part of a plan, FED. R. BANKR. P. 6006(a); a proceeding to compel assumption or rejection of an executory contract or unexpired lease, FED. R. BANKR. P. 6006(b); a motion for an order of contempt, FED. R. BANKR. P. 9020; and a motion to remand a removed claim or cause of action (FED. R. BANKR. P. 9027(d).

> *should not be used, but, rather, the various discovery provisions of the Federal Rules of Civil Procedure should apply. Bankruptcy Rule 2004 is designed to be a quick "fishing expedition" into general matters and issues regarding the administration of the bankruptcy case and, as such, does not offer the procedural safeguards available under Rule 26 of the Federal Rules of Civil Procedure.*

145 B.R. 991, 992 (Bankr. D.S.D. 1992) (emphasis added) (citing *In re GHR Energy Corp.*, 33 B.R. 451, 453-54 (Bankr. D. Mass. 1983)); *see also In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well-recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the FED. R. BANKR. P. 7026 *et seq.*, rather than by a FED. R. BANKR. P. 2004 examination."). Therefore, where a Trustee utilizes a Rule 2004 "fishing expedition" motion, this is so because there are no "adversary proceedings" or "contested matters" pending between the Trustee and the non-party.

DealDefenders is accordingly entitled to a protective order under FED. R. BANKR. P. 9018 and Section 107(b), as the rule and statute both provide protection to an entity from the public disclosure of confidential material. *See also* 10 COLLIER ON BANKRUPTCY ¶ 9018.03 (adding that FED. R. BANKR. P. 9018 "authorize[s] the court to enter any protective order otherwise available under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure"). This is especially so given that the Trustee moved for document productions and deposition under the broad Rule 2004 bankruptcy discovery mechanism.

Because DealDefenders has affirmatively demonstrated that the discovery the Trustee seeks is confidential commercial information pursuant to Section 107(b) of the Bankruptcy Code, DealDefenders is therefore entitled to a protective order under FED. R. BANKR. P. 9018.

19

### D.    Nonetheless, "Good Cause" Exists to Enter the Proposed Protective Order, Which is Necessary to Protect DealDefenders' Business.

Assuming, *arguendo*, the Court determines that this minor disagreement on the proper scope of a protective order's precise language qualifies as a "contested matter," and accordingly FED. R. BANKR. P. 9014 and FED. R. CIV. P. 26(c) apply, the Court should nevertheless enter the protective order because "good cause" nonetheless exists to protect DealDefenders' legitimate business from serious financial injury should its confidential business information become publicly available.

FED. R. CIV. P. 26(c)'s standard on a motion for a protective order states "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (G) requiring that . . . commercial information not be revealed or be revealed only in a specified way." Thus, "[u]nder FED. R. CIV. P. 26(c), a court 'for good cause shown' may, in certain circumstances, enter a protective order in the context of discovery." *Shingara v. Skiles*, 420 F.3d 301, 305-06 (3d Cir. 2005).

Courts further recognize that the protections provided by Rule 45 are especially important because discovery is demanded from a person or entity who is not a party to the underlying action. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 2010 U.S. Dist. LEXIS 33430, at *31-32 (S.D.N.Y. Apr. 5, 2010); *see also Cohen v. City of N.Y.*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008) (noting courts give "special weight" to "the burden on non-parties of producing documents to parties involved in the litigation"). Accordingly, courts "should be particularly sensitive to weighing the probative value of the information sought against the burden of production on a nonparty." *Copantitla*, 2010 U.S. Dist. LEXIS 33430, at *32. In this vein, in *In re Wilcher*, the Court found that:

> Thus, although Rule 2004 permits examinations of "third parties"
> the language of the rule makes it "evident that an examination may

2843756.2 113805-97748

be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs*.

56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (emphasis added) (quoting *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr. D. Mass. 1983)).

When viewed in this context, it is clear that—at a minimum—"good cause" exists here because the information sought by the Trustee goes well beyond the Debtor's financial affairs and encompasses the confidential information of DealDefenders' customers. Specifically, the Trustee demands information that, if made publicly available, would expose the identity of a multitude of DealDefenders' customers to each of DealDefenders' other customers.[9] The Trustee's discovery demands on non-party DealDefenders, thus, are unduly burdensome and threaten to put DealDefenders out of business. As set forth, the Trustee's discovery demands are overbroad, seek irrelevant information and documents, seek information and documents previously produced by DealDefenders, and seek information and documents that simply do not exist. As the Trustee continues to seek this inappropriate discovery from DealDefenders that DealDefenders is either unable to produce or cannot produce without guaranteed assurances as to its continued confidentiality, the issuance of a protective order is warranted.

1.    **The Trustee's Discovery Demands are Overbroad and Seek Highly Sensitive Information.**

The Trustee seeks the production of information from DealDefenders on certain topics with virtually no limitations. Requests of this nature are grossly overbroad (even under the Federal

---

[9] As explained above, *supra* Section II (A), DealDefenders' customers are mostly telecommunications wholesalers. Generally, that means the wholesaler buys from the seller (Party A) at one price and sells to another party (Party B) at a higher price. If DealDefenders' records are made available to be viewed by any party, including other wholesalers, they can bypass/circumvent the wholesaler, and DealDefenders' business will be destroyed.

2843756.2 113805-97748

Rules of Bankruptcy Procedure's lenient discovery rules), and the Requests in particular go well beyond information of just the Debtor and instead seek the confidential information of DealDefenders' other myriad of customers. By way of example, the following are samples of the Trustee's overbroad requests:

- "ALL DOCUMENTS and COMMUNICATION that RELATE TO the services YOU provided to each CUSTOMER[10] from February 1, 2016 to the present."
- "ALL DOCUMENTS and COMMUNICATION that RELATE TO YOUR protocol, procedures, and/or process for releasing funds on behalf of each CUSTOMER."
- "ALL bank account statements for the period from February 1, 2016 to the present for ANY account in which YOU received money on behalf of each CUSTOMER, including but not limited to, the Bank of America, N.A. account with the account number ending in 5992."
- "ALL DOCUMENTS and COMMUNICATION evidencing any outgoing transfers of monies from February 1, 2016 to the present that were made on behalf of each CUSTOMER."

The Trustee also seeks discovery from DealDefenders beyond the scope of the matters at issue in the underlying bankruptcy case. Although a party seeking discovery is entitled to broad discovery under FED. R. BANKR. P. 2004, courts have discretion to limit that discovery in certain circumstances. *See generally* 9 COLLIER ON BANKRUPTCY ¶ 2004.01 (16th ed. 2019). If the entity from which discovery is sought believes the information demanded is outside the scope permitted under FED. R. BANKR. P. 2004, it may move to quash or modify the subpoena. *See, e.g.*, *In re Sanomedics, Inc.*, 583 B.R. 796 (Bankr. S.D. Fla. 2018); *In re Rafsky*, 300 B.R. 152 (Bankr. Conn. 2003). Here, because the Trustee's requests stray into impermissible bounds, DealDefenders wishes to secure a meaningful protective order to protect its clients and its business. DealDefenders does not seek to impede the Trustee's investigation into tracing funds of the Debtor, but the Trustee has engendered, through its innumerable aggressive tactics, a worrying lack of trust that requires nothing short of a court-mandated protective order to set firm boundaries.

---

[10] "Customer" is defined as "any business entities for which [DealDefenders] received funds from the Debtor, including but not limited to, MyCore-4 Wholesale B.V. and IKarim Business Services, LLC."

2843756.2 113805-97748

2. <u>**The Trustee's Discovery Demands Seek Duplicative Information**</u>.

The Trustee seeks "all documents and communication that relate to the services [DealDefenders] provided to the Debtor." (Conlan Decl., Ex. B, at 16.) On January 9, 2020, and again on March 4, 2020, DealDefenders provided the Trustee with all documents of services provided to the Debtor and all communications that DealDefenders possessed with the Debtor within the requested time frame. Request No. 1 does nothing more than asks DealDefenders to provide the same information yet again.

And as to Request No. 3 (demanding "all documents and communication that relate to the services [DealDefenders] provided to VoIP Management" (i.e., the Debtor's "management entity")), Request No. 10 (demanding "all documents and communication that relate to [DealDefenders'] receipt of monies from the Debtor"), Request No. 11 (demanding "all documents and communication that related to [DealDefenders'] receipt of monies from VoIP Management"), Request No. 15 (demanding "all communication with the Debtor from February 1, 2016 to the present"), Request No. 16 (demanding "all communication with VoIP Management from February 1, 2016 to the present"), Request No. 17 (demanding "all communication with each Customer from February 1, 2016 to the present that relate to the Debtor"), and Request No. 18 (demanding "all communication with each Customer from February 1, 2016 to the present that relate to the VoIP Management"), each of these Requests, in essence ask for the same exact information about the Debtor that DealDefenders had in its possession and already supplied to the Trustee. (*See* Conlan Decl., Ex. C, at 6-19.)

According to the Trustee, VoIP Management is the management entity of the Debtor—*an entity* (excluding its principal) with which DealDefenders had no business dealings whatsoever—and so each Request that demands information related to "VoIP Management" is merely asking for information related to the Debtor, of which DealDefenders already produced. Clearly, such

requests are duplicative of discovery the Trustee has already received in its case. Specifically, the Trustee has already sought *and obtained* documents in DealDefenders' custody, control, or possession pertaining to <u>all</u> communications between <u>any</u> parties that in <u>any</u> way discussed or included the Debtor. As such, there can be no dispute that many of the Trustee's subpoena requests are duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (noting that a court may limit discovery where the discovery sought "is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive").

Likewise, there is no reason to believe that DealDefenders possesses additional relevant materials that differ from that which DealDefenders has already produced. DealDefenders' business, again, is an escrow business that largely facilitates wire transfers, while simultaneously safeguarding the identify of its customers from one another. The communications, needless to say, are minimal—and in most circumstances, nonexistent. Certainly, very few entities even knew the Debtor existed, almost zero entities ever discussed the Debtor, and no customer had ever, to the best of DealDefenders' belief and recollection, discussed "VoIP Management," a fictional defined term referencing the Debtor's "management entity." The Trustee simply re-demanding all the same documents it previously demanded and received will not make them suddenly exist just because the Trustee thinks they must exist. Thus, because the burden and expense of the proposed duplicative discovery to DealDefenders substantially outweighs its alleged benefit to the Trustee, the Court should issue the requested protective order.

### 3. <u>DealDefenders Does Not Possess the Requested Discovery</u>.

Separate and aside from the fact that the Trustee's discovery demands on DealDefenders are overly burdensome, irrelevant, and duplicative, it is simply impossible for DealDefenders, a non-party to the underlying litigation, to comply with them. DealDefenders cannot produce what it does not have.

2843756.2 113805-97748

For example, Request No. 2 (demanding "all documents and communication that relate to [DealDefenders'] protocol, procedure, and/or process for releasing funds on behalf of the Debtor") candidly does not exist. DealDefenders does not possess, nor has it ever, documents or communication related to protocols specific to releasing funds on behalf of the Debtor. Indeed, DealDefenders provides secure escrow services to its customers, facilitating wire transfers, and this applies uniformly to all DealDefenders' customers. DealDefenders previously explained this to the Trustee in a prior meet and confer, but the Trustee is under the mistaken assumption that some kind of endless paper trail exists documenting each and every transaction of the Debtor.[11] Request Nos. 4 and 6 ask for the same nonexistent information.

Thus, DealDefenders has nothing to produce in response to these Requests and, because without a protective order in place the Trustee will assuredly continue to ask for them in its sustained ignorance of how DealDefenders' escrow business works, a protective order shielding DealDefenders from the Trustee's continued harassment is necessary.

4. **The Remaining Requests Seek Sensitive and Confidential Proprietary Business Information of DealDefenders, Requiring a Protective Order.**

The remaining Requests seek proprietary information (*e.g.*, Request Nos. 5, 7-9, and 12-14) that, if released, would cause serious financial injury to DealDefenders. DealDefenders sought to negotiate a protective order with the Trustee that, theoretically, should have been an easy-to-manage process. However, the Trustee treated that process as a give-and-take negotiating process. DealDefenders simply sought to maximize protection for its business and its customers, but the Trustee opted instead to push back—on a stipulated protective order that, in essence, is merely a

---

[11] To briefly explain the absurdity of this position, it would be just as inexplicable if someone requested every document you had related to each of your Venmo (or PayPal) transactions, apart from simply the details of the transaction itself.

promise of the receiving party to protect the confidential information it receives from further disclosure.

For example, DealDefenders added a clause, entitled "Industry Participants." That clause sought to keep confidential information from disclosure to the Debtor or the Debtor's principal. DealDefenders has **_consistently_** stated its concern and the need to protect customers' confidentiality from other customers, or else those customers could circumvent the brokers/wholesalers that comprise a significant chunk of DealDefenders' business, thereby severely harming DealDefenders' continued vitality as a business. Simple and standard, yet the Trustee could not make that promise and summarily deleted the clause in its entirety. (*See* Conlan Decl., Ex. G, at 9.) And it is exactly this kind of overly aggressive take-it-or-leave-it position-taking the Trustee has exhibited time and time again when interacting with DealDefenders: as if the Trustee is entitled to all of DealDefenders' commercially sensitive information, and without any restraints on how it chooses to use that information.

These are obviously unacceptable results. DealDefenders is not asking for anything outrageous in its desire to protect its business moving forward in the face of serious investigations, and especially up against a Trustee that has demonstrated little concern of anything related to DealDefenders.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, DealDefenders respectfully requests that the Court enter a protective order governing the scope of its Rule 2004 subpoena and protecting any documents DealDefenders produces marked "Confidential" or "Advisors' Eyes Only."

Respectfully submitted,

Dated:  July 28, 2020                    GIBBONS P.C.

By:  */s/ Mark B. Conlan*
          Mark B. Conlan, Esq. (PA Bar No. 86599)
          Robert K. Malone, Esq. (*pro hac vice* pending)
          One Gateway Center
          Newark, New Jersey 07102
          Phone: (973) 596-4500
          mconlan@gibbonslaw.com
          -and-
          One Logan Square
          Suite 1210
          Philadelphia, Pennsylvania 19108-2757
          (215) 665.0400

          *Attorneys for Non-Party*
          *DealDefenders LLC*

2843756.2 113805-97748

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

8433 W 4th Street, Los Angeles, CA 90048

A true and correct copy of the foregoing document entitled (*specify*): **NON-PARTY DEALDEFENDERS LLC'S NOTICE OF MOTION TO QUASH OR MODIFY SUBPOENA, FILED WITH THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **07/28/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) **07/28/2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE**

Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

⊠ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **07/21/2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/28/2020 | AVI MUHTAR | /s/ Avi Muhtar |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Jessica L Bagdanov on behalf of Trustee Timothy Yoo (TR)
jbagdanov@bg.law, ecf@bg.law

Steven T Gubner on behalf of Trustee Timothy Yoo (TR)
sgubner@bg.law, ecf@bg.law

Vivian Ho on behalf of Creditor FRANCHISE TAX BOARD
BKClaimConfirmation@ftb.ca.gov

Andy Kong on behalf of Trustee Timothy Yoo (TR)
Kong.Andy@ArentFox.com

Ian Landsberg on behalf of Other Professional Rodney Omanoff
ilandsberg@sklarkirsh.com,
lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com;kfrazier@sklarkirsh.com

Douglas M Neistat on behalf of Interested Party Douglas Neistat
dneistat@gblawllp.com, mramos@gblawllp.com

Aram Ordubegian on behalf of Trustee Timothy Yoo (TR)
ordubegian.aram@arentfox.com

Annie Y Stoops on behalf of Trustee Timothy Yoo (TR)
annie.stoops@arentfox.com, yvonne.li@arentfox.com

Christopher D Sullivan on behalf of Other Professional Bradley D. Sharp
csullivan@diamondmccarthy.com,
mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com;quentin.roberts@diamondmccarthy.com;erika.shannon@diamondmccarthy.com;aiemee.low@diamondmccarthy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Timothy Yoo (TR)
tjytrustee@lnbyb.com, tjy@trustesolutions.net


2. **SERVED BY UNITED STATES MAIL**:

**DEBTOR**

VoIP Guardian Partners I, LLC
1221 Ocean Avenue
Unit 507
Santa Monica, CA 90401

**INTERESTED PARTY**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**