| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>JASON B. KOMORSKY – Bar No. 155677<br>JESSICA L. BAGDANOV – Bar No. 281020<br>BG LAW LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile:   (818) 827-9099<br>Email:  sgubner@bg.law; jkomorsky@bg.law<br>          jbagdanov@bg.law<br><br>☐  *Movant(s) appearing without an attorney*<br>☒  *Attorney for Movant(s)* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>VOIP GUARDIAN PARTNERS I, LLC,<br><br><br><br><br>                                                    Debtor(s). | CASE NO.: 2:19-bk-12607-BR<br><br>CHAPTER: 7<br><hr>**DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION**<br>**LBR 9013-1(o)(3)**<br><hr>[No Hearing Required] |
|---|---|

1. I am the ☐ Movant(s) or ☒ attorney for Movant(s) or ☐ employed by attorney for Movant(s).

2. On (*date*): 04/11/2023   Movant(s) filed a motion or application (Motion) entitled: Trustee's Motion to Approve Compromise With DealDefenders Pursuant to Fed. R. Bankr. P. 9019 [Doc. 184].

3. A copy of the Motion and notice of motion is attached to this declaration.

4. On (*date*): 04/11/2023   Movant(s), served a copy of ☐ the notice of motion or ☒ the Motion and notice of motion on required parties using the method(s) identified on the Proof of Service of the notice of motion.

5. Pursuant to LBR 9013-1(o), the notice of motion provides that the deadline to file and serve a written response and request for a hearing is 14 days after the date of service of the notice of motion, plus 3 additional days if served by mail, or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

6. More than 17   days have passed after Movant(s) served the notice of motion.

7. I checked the docket for this bankruptcy case and/or adversary proceeding, and no response and request for hearing was timely filed.

8. No response and request for hearing was timely served on Movant(s) via Notice of Electronic Filing, or at the street address, email address, or facsimile number specified in the notice of motion.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                              Page 1                              **F 9013-1.2.NO.REQUEST.HEARING.DEC**

9.   Based on the foregoing, and pursuant to LBR 9013-1(o), a hearing is not required.

Movant(s) requests that the court grant the motion and enter an order without a hearing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Date: <u>05/01/2023</u>          <u>/s/ Jessica L. Bagdanov</u>
                                Signature


                                <u>JESSICA L. BAGDANOV</u>
                                Printed name

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 2                    **F 9013-1.2.NO.REQUEST.HEARING.DEC**

STEVEN T. GUBNER – Bar No. 156593
JASON B. KOMORSKY – Bar No. 155677
JESSICA L. BAGDANOV – Bar No. 281020
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:       sgubner@bg.law
             jkomorsky@bg.law
             jbagdanov@bg.law

Special Litigation Counsel for
Timothy J. Yoo, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:19-bk-12607-BR |
| VOIP GUARDIAN PARTNERS I, LLC, | Chapter 7 |
| Debtor. | **TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH DEALDEFENDERS PURSUANT TO FED. R. BANKR. P. 9019; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF TIMOTHY J. YOO IN SUPPORT THEREOF** |
| | [No Hearing Required Unless Requested Under L.B.R. 9013-1(o)] |

Timothy J. Yoo, the duly appointed and acting chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of VoIP Guardian Partners I, LLC (the "Debtor"), hereby moves (the "Motion") this Court for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019") approving a compromise with DealDefenders LLC ("Dealdefenders"). The proposed compromise is set forth in the Settlement Agreement attached hereto as **Exhibit 1** (the "Agreement"). In support of the Motion, the Trustee respectfully represents as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By the Motion, the Trustee seeks Court approval of a settlement agreement with Dealdefenders. The Agreement, if approved, will result in dismissal of Dealdefenders from pending litigation commenced by the Trustee and resolves Dealdefenders' pending counterclaim filed against the Trustee. The Agreement does not provide a monetary recovery for the Estate, however the Trustee believes the settlement is appropriate as it narrows disputed issues in pending complex litigation, described below, and provides a mechanism for Dealdefenders' cooperation with the Trustee in connection with his ongoing investigation in to the Debtor's pre-bankruptcy business activities. The Trustee has considered the factors set forth in the seminal case of *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986), and in his business judgment, he has determined that the Agreement should be approved as in the best interests of these estates.

## II.    RELEVANT BACKGROUND

### A.    Procedural History

On March 11, 2019 the Debtor filed a voluntary petition under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing this bankruptcy case. Timothy J. Yoo was duly appointed as Chapter 7 Trustee, in which capacity he continues to serve.

On March 10, 2021, the Trustee filed a complaint naming numerous defendants, seeking to avoid and recover certain transfers and trace over $160 million of funds that the Debtor lost shortly before its bankruptcy filing. *Yoo v. VoIP Guardian, LLC, et al.*, 2:21-01044-BR (the "VoIP Action"). Dealdefenders is a defendant in the VoIP Litigation. As to Dealdefenders, in the operative

2

complaint filed January 4, 2022 [Adv. Doc. 225] (the "Second Amended Complaint"), the Trustee

seeks damages for alleged aiding and abetting breaches of fiduciary duties by certain insiders of the

Debtor in its position as a purported independent escrow company. *See* Second Claim for Relief,

Adv. Doc. 225.

Along with its answer to the operative complaint filed on October 5, 2021, Dealdefenders

brought a counterclaim against the Trustee for defamation, tortious interference with prospective

economic advantage, tortious interference with contract, and malicious abuse of process [Adv. Doc.

205] (the "Dealdefenders Counterclaim"), alleging that the Trustee's investigation into

Dealdefenders has caused its business significant loss in value and interrupted its relationship with

its own customers.[1]  In their pursuit of settlement negotiations, the Trustee and Dealdefenders agreed

to a stand-still of litigation over the Second Amended Complaint and Dealdefenders Counterclaim.

**B.    The Estate's Claims Against Dealdefenders and Description of Proposed Settlement**

Substantively, the Second Amended Complaint alleges that, prepetition, Dealdefenders

operated as a third party escrow for the Debtor to facilitate the Debtor's voice-over-internet-protocol

financing business.  Dealdefenders provided a mechanism by which the Debtor was able to transfer

monies to its customers "safely" regardless of whether the customer was a domestic or foreign

entity. The Trustee alleges that the Debtor provided millions of dollars of financing to illegitimate

businesses overseas in high-risk transactions without sufficient protection for its investment, and that

Dealdefenders had knowledge of the problems with these businesses, and further profited from the

Debtor's transactions with the entities, either directly or indirectly. During discovery, the Trustee

learned that defendant Zoom Telecom, Inc., owned by Joseph Rahman, one of the main people

involved in the Debtor's own business, owns a 24.9% interest in Dealdefenders, and the Trustee

alleges that this ownership interest was undisclosed to the Debtor during its operations. The Trustee

alleges that Dealdefenders aided and abetted Debtor insiders' breaches of fiduciary duties owed to

the Debtor by, among other things, profiting off of the Debtor's relationships with illegitimate

---

[1] While the Dealdefenders Counterclaim pre-dates the operative Second Amended Complaint based
on the respective filing dates, the Trustee notes that a stand-still agreement was reached with
Dealdefenders prior to the Trustee's filing of the Second Amended Complaint.

overseas companies, and alleges that, without the material assistance of Dealdefenders—i.e., in its purporting to serve as an independent third party escrow company—the Debtor would not have been able to operate its business. *E.g.,* Second Amended Complaint ¶¶ 60-65; 194-196.

By the proposed settlement, attached hereto as **Exhibit 1,** the Trustee agrees to dismiss Dealdefenders from the VoIP Action with prejudice and resolves the Dealdefenders Counterclaim with prejudice, subject to representations and warranties as well as a tolling agreement. The following section provides a summary of the salient terms of the Dealdefenders settlement; parties in interest should review **Exhibit 1** in detail. To the extent this summary conflicts with the Agreement, the Agreement shall control.

**1. Effective Date.** The Agreement is subject to bankruptcy court approval, and becomes effective (the "Effective Date") upon entry of an order approving the Agreement. Agreement ¶ 7.

**2. Cooperation with Trustee's Investigation and Discovery.** Dealdefenders will cooperate with the Trustee in producing all non-privileged information relevant to various aspects of the Trustee's claims; it will not interfere with any post-judgment collection efforts by the Trustee as to other defendants (i.e., Zoom-Tel or Rahman). *See* Agreement, ¶¶ 4, 5.

**3. Representations and Warranties By Dealdefenders.** In the Agreement, Dealdefenders represents and warrants, among other things, the following (Agreement ¶ 4):

• Dealdefenders has not received any payments other than de minimis escrow fees from questionable customers of the Debtor, including Najd, Telacme, Indigo 11, Ikarim, or IKBS (defined in the Second Amended Complaint), and represents that it had no involvement other than as a mere conduit of funds in the disappearance of the Debtor's funds via these entities;

• The Debtor was not charged fees by Dealdefenders as it was not a customer of Dealdefenders; Dealdefenders never made any payment to the Debtor other than in its capacity as a conduit;

• With regard to Zoom-Tel's 24.9% ownership interest in Dealdefenders, Dealdefenders represents and warrants that Dealdefenders received initial non-cash consideration from Zoom-Tel as membership consideration

2886917

**4. Tolling.** In the event the Trustee discovers that any representation made by Dealdefenders in the Agreement was knowingly false, the Trustee may bring an action for breach of the Agreement within 18 months of the Effective Date. Agreement ¶ 9.

**5. Dismissal of Litigation.** Upon Court approval of the Agreement, the Dealdefenders Counterclaim shall be dismissed with prejudice and the Trustee's claims against Dealdefenders shall be dismissed with prejudice, all parties to bear their respective fees and costs. Agreement ¶¶ 8, 9.

For the reasons set forth herein, the Trustee respectfully requests that the Court approve the Agreement.

## III.    THE COURT SHOULD APPROVE THE AGREEMENT

### A.    Legal Standard for Approval

Rule 9019 provides that on motion by a Trustee, the Court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a). The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. *In re Walsh Construction, Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988); *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).

More specifically, a Court should review the following factors in considering whether to approve a proposed settlement: (a) the probability of success in the litigation; (b) the difficulty, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises. *Woodson, supra*, 839 F.2d at 620 (quoting *A&C Properties, supra*, 784 F.2d at 1381). A settlement negotiated by a trustee, as a representative of the estate, is entitled to deference. *In re Morrison*, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

The Court need not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. *In re Walsh Construction, Inc., supra*, 669 F.2d at 1328. In fact, the Court need not decide the questions of law and fact raised in the controversies sought to be settled and need not determine whether the settlement presented is the best one that

could possibly have been achieved.  Instead, the Court's responsibility is only to "canvass the issues to see 'whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) (quoting *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)).

The Trustee has the right to exercise reasonable business judgment in an effort to maximize the value of assets of the Estate.  So long as a proposed compromise results in a recovery above the lowest point in the range of reasonable compromises, the Trustee should be authorized to proceed with such compromise.  In light of the facts and circumstances in this case, the application of the *A&C Properties* factors shows that the compromise set forth in the Agreement is fair and equitable, is in the best interests of the Estate, and is well above the lowest point in the range of reasonableness.

**B.    Application of the *A&C Properties* Factors Demonstrates that the Agreement Should Be Approved**

The Trustee has evaluated the Agreement and has compared the benefits of entering into the Agreement with the potential risks, expense, and detriment to the estate inherent in continuing litigation with Dealdefenders.  In evaluating his decision to enter into the Agreement, the Trustee has reviewed the numerous documents and information available to him in this bankruptcy case and the Adversary Proceeding, including all records of the pre-conversion Debtor produced to date.  Based on this evaluation, the Trustee has determined that the Agreement is in the best interests of the estate because it is fair and equitable, is a reasonable and appropriate exercise of the Trustee's business judgment, and will avoid the time, expense, and risk inherent in continuing litigation with these parties.  The Trustee has evaluated the *A&C Properties* factors in exercising his business judgment as to whether to agree to the terms of the Agreement, and has concluded that under these factors, the Agreement should be approved.  The Trustee's analysis of the *A&C Properties* factors is as follows:

**1.    Probability of Success on the Merits / Complexity, Expense, and Inconvenience of Litigation**

The Trustee strongly believes in the merits of his breach of fiduciary duty claims asserted against those who took on management roles for the Debtor's operations (i.e., Rodney Omanoff, Joseph Rahman, Mark Proto, etc.).  However, his claim against Dealdefenders is derivative in nature from those claims in that it alleges aiding and abetting such breaches of fiduciary duties, and the

2886917

Trustee recognizes that such claims are subject to a higher standard of proof. In order to state a claim for aiding and abetting an intentional tort, the plaintiff must plead that the defendant "(a) had knowledge that another's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat'l. Assn.*, 127 Cal. App. 4th 1138, 1144 (2005). As to Dealdefenders, its knowledge of wrongdoing is critical to the Trustee's case, given that "liability for aiding and abetting depends on proof the defendant had ***actual knowledge of the specific primary wrong*** the defendant substantially assisted." *Id.* at 1145 (emphasis added). Thus, the Trustee believes that his case against Dealdefenders is highly complex and fact-intensive, and hinges on whether Dealdefenders (likely through its principal, Jeff Ellentuck), had actual knowledge that the Debtor was engaging in business with illegitimate companies where such companies were fabricating fake call traffic to support their demands for millions of dollars from the Debtor in financing. This heightened standard, coupled with multiple colorable defenses Dealdefenders can raise (such as the potential defense of *in pari delicto*), factored into his decision to settle with Dealdefenders.

Separately, the Trustee believes that the Dealdefenders Counterclaim asserted against him is utterly meritless. DealDefenders seeks to sue the Trustee, first, for abuse of process based solely on the Trustee's filing of the operative complaint against DealDefenders and for seeking judicial enforcement of a Rule 2004 subpoena and, secondly, for defamation based solely upon correspondence sent on the Trustee's behalf in the context of seeking a Rule 2004 examination in the Debtor's bankruptcy case. These claims are barred by the litigation privilege, applicable statute of limitations, and are otherwise improper, and the Trustee is confident that he would achieve dismissal with prejudice of these claims. However, such effort would needlessly increase the administrative burden on this estate in having to defend against claims in addition to pursuing highly complex claims belonging to the estate.

The Trustee believes that the expenses and inconvenience associated with further litigation with Dealdefenders, as well as the risk that the estate may not prevail in the litigation as against Dealdefenders are significant factors weighing in favor of approval of the Agreement.

2886917

**2.      Potential Difficulties in Collection**

Dealdefenders has claimed that the VoIP Action has damaged its business reputation, however the Trustee is informed that Dealdefenders continues to conduct business as an operating company, and does not believe there are difficulties in collecting a potential judgment against Dealdefenders.

**3.      The Paramount Interests of Creditors**

The Trustee submits that the Agreement is in the best interests of creditors because it reduces the disputes in the VoIP Action, allowing the Trustee to spend resources focusing on his primary claims asserted against the former management of the Debtor and pursue collection efforts abroad. The settlement also provides a mechanism to ensure that the Trustee receives crucial discovery and information from Dealdefenders that the Trustee would otherwise need to spend significant resources pursuing through normal discovery tools. The Trustee believes that without settlement, he will be required to spend significant time and resources litigating with Dealdefenders, and in light of the heightened standard of proof as to such claims, the Trustee does not believe that effort is a valuable use of resources. Additionally, the Agreement preserves the status quo for a period of time, in that, if the Trustee discovers through litigation with other parties that Dealdefenders has knowingly made false representations and warranties, the Agreement preserves the Trustee's rights to seek damages against Dealdefenders.

## IV.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order granting this Motion, approving the Agreement; and granting to the Trustee such other and further relief as the Court deems just and proper under the circumstances.

DATED:    April 10, 2023                    BG LAW LLP


By: _____
       Jason B. Komorsky
       Jessica L. Bagdanov
       Special Litigation Counsel for Timothy Yoo,
       Chapter 7 Trustee

## DECLARATION OF TIMOTHY J. YOO

I, Timothy J. Yoo, declare:

1.      I am the duly appointed and acting chapter 7 trustee for the bankruptcy estate of VoIP Guardian Partners I, LLC (the "Debtor"). The facts contained herein are based upon my personal knowledge or upon documents and information I review in the normal course of my duties as Trustee, and if called as a witness, I could and would competently testify thereto under oath.

2.      I make this declaration in support of the motion to approve compromise with Dealdefenders (the "Motion"). All initial capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

3.      On or about March 2, 2023, I executed the Agreement. A true and correct copy of the Agreement is attached hereto as **Exhibit 1.**

4.      In evaluating the Agreement and deciding whether to settle with Dealdefenders or pursue litigation, I reviewed the numerous documents and information available to me in this bankruptcy case and the Adversary Proceeding, including all records of the pre-conversion Debtor produced to date.  Based on this evaluation, I believe the Agreement is in the best interests of the estate because it is fair and equitable, is a reasonable and appropriate exercise of my business judgment, and will avoid the time, expense, and risk inherent in continuing litigation with these parties.  In my analysis, I considered the *A&C Properties* factors as follows:

5.      **Probability of Success on the Merits / Complexity, Expense, and Inconvenience of Litigation.** The estate holds strong claims for breach of fiduciary duty against those who took on management roles for the Debtor's operations (i.e., Rodney Omanoff, Joseph Rahman, Mark Proto, etc.). However, the sole claim against Dealdefenders, aiding and abetting breach of fiduciary duty, is necessarily derivative in nature.  I recognize that this type of claim is subject to a higher standard of proof than the direct breach claims, and I understand that it has a heightened knowledge requirement.  I think proving such elements as against Dealdefenders will be highly complex and fact-intensive, and I understand that the claim essentially hinges on whether Dealdefenders (likely through its principal, Jeff Ellentuck), had actual knowledge that the Debtor was engaging in business with illegitimate companies where such companies were fabricating fake call traffic to support their

demands for millions of dollars from the Debtor in financing. This heightened standard, coupled

with multiple colorable defenses Dealdefenders can raise (such as the potential defense of *in pari*

*delicto*), factored into my decision to settle with Dealdefenders.

6.      As to Dealdefenders' Counterclaim, however, I believe it is utterly meritless.

Dealdefenders has sued me for, first, abuse of process based solely on my filing of the operative

complaint against Dealdefenders and for seeking judicial enforcement of a Rule 2004 subpoena and,

secondly, for defamation based solely upon correspondence sent by my general counsel in the

context of seeking a Rule 2004 examination in the Debtor's bankruptcy case. I believe these claims

are barred by the litigation privilege, applicable statute of limitations, and are otherwise improper.

However, such effort would needlessly increase the administrative burden on this estate in having to

defend against claims in addition to pursuing highly complex claims belonging to the estate. Because

the Agreement provides for dismissal of all claims with prejudice, I believe the settlement properly

addresses the Dealdefenders Counterclaim.

7.      I believe that the expenses and inconvenience associated with further litigation with

Dealdefenders, as well as the risk that the estate may not prevail in the litigation as against

Dealdefenders are significant factors weighing in favor of approval of the Agreement.

8.      **Potential Difficulties in Collection.** Dealdefenders has claimed that the VoIP Action

has damaged its business reputation, however I am informed that Dealdefenders continues to

conduct business as an operating company, and do not believe there are difficulties in collecting a

potential judgment against Dealdefenders if one were obtained.

9.      **The Paramount Interests of Creditors.** The Agreement is in the best interests of

creditors because it reduces the disputes in the VoIP Action, allowing the estate to spend resources

focusing on primary claims asserted against the former management of the Debtor and pursue

collection efforts abroad. The settlement also provides a mechanism to ensure that I receive crucial

discovery and information from Dealdefenders that I would otherwise need to spend significant

resources pursuing through normal discovery tools. Without settlement, the estate will be required to

spend significant time and resources litigating with Dealdefenders, and in light of the heightened

standard of proof as to such claims, I do not believe that effort is a valuable use of resources.

2886917

1   Additionally, the Agreement preserves the status quo for a period of time, in that, if I discover

2   through litigation with other parties that Dealdefenders has knowingly made false representations

3   and warranties, the Agreement preserves my rights to seek damages against Dealdefenders.

4       10.    For these reasons, I believe the Agreement is appropriate and in the best interests of

5   this estate, and respectfully request that it be approved.

6       I declare under penalty of perjury under the laws of the United States of America that the

7   foregoing is true and correct.

8       Executed this 10th day of April, 2023, at Los Angeles, California.

Timothy J. Yoo

2886917

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between (i) Timothy Yoo, as chapter 7 trustee ("Trustee") for VoIP Guardian Partners I, LLC (the "Debtor"), and (ii) DealDefenders, LLC ("DealDefenders," on behalf of itself and its affiliates, each a "Party" and together, the "Parties").

## RECITALS

A.    On March 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7, title 11, United States Code. 11 U.S.C. §§ 101 - 1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") (Case No. 19-12607-BR) (the "Bankruptcy Case").

B.    On or about March 10, 2021, the Trustee commenced an adversary proceeding, assigned adversary number 21-01044 (BR) (the "Adversary Proceeding") by filing a complaint [ECF No. 1] (the "Complaint") naming numerous defendants, including DealDefenders, seeking, among other relief, to avoid and recover certain transfers in the amount of $14,133,475.74 (collectively, the "Transfers"), which were listed on Exhibit 20 to the Complaint.

C.    On March 31, 2021, the Trustee filed his First Amended Complaint [ECF No. 11] ("First Amended Complaint"), seeking, among other relief, to avoid and recover the Transfers from DealDefenders.

D.    On August 17, 2021, the Trustee filed his Second Amended Complaint [ECF No. 130] ("Second Amended Complaint"), in which the Trustee abandoned his efforts of avoiding and recovering the Transfers from DealDefenders, and alleged that the DealDefenders aided and abetted certain breaches of fiduciary duties by certain insiders of the Debtor.

E.    On August 31, 2021, DealDefenders filed its Motion to Dismiss the Second Amended Complaint [ECF No. 136], which the Trustee opposed [ECF No. 158], and which the Bankruptcy Court denied by Order dated September 30, 2021 [ECF No. 178].

F.    On October 5, 2021, DealDefenders filed its Answer to the Second Amended Complaint, Affirmative Defenses, and Counter-Claims against the Trustee [ECF No. 190], which DealDefenders later amended to include two counter-claims against the Trustee [ECF No. 205]: (i) Defamation; and (ii) Abuse of Process (collectively, the "Counter-Claims").

G.    The Bankruptcy Court has subject matter jurisdiction over the Adversary Proceeding.

H.    The Parties, after engaging in good faith arms' length negotiations, have agreed to compromise and resolve their disputes on the terms set out in this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing recitals, each of which are true and correct, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and the Parties intending to be legally bound, the Parties agree that:

4985116

## EXHIBIT 1

## 12

## AGREEMENT

1.      **Incorporation**. The Recitals set forth above are incorporated herein as though fully set forth at length.

2.      **Relevant Time Period**. The "Relevant Time Period" for each paragraph below shall be from January 1, 2016 through and including the Petition Date.

3.      **Protective Order**. All formal and informal discovery shall be governed by the terms of that certain Stipulated Protective Order entered in the United States District Court for the Eastern District of Pennsylvania on November 3, 2020, Case No. 2:20-mc-00075 (KSM) [ECF Nos. 19 & 20], a copy of which is attached hereto as Exhibit A (the "Stipulated Protective Order"). For the avoidance of doubt and notwithstanding anything to the contrary in the Stipulated Protective Order, any subpoenas served on DealDefenders and/or Jeff Ellentuck for documents and/or testimony in connection with the information referenced in paragraph 4 below shall be issued from the United States Bankruptcy Court of the Central District of California and any disputes regarding the terms and conditions of this Agreement including any disputes regarding discovery propounded to DealDefenders and DealDefenders' obligation to cooperate (as set forth herein) shall be presented and adjudicated in the Debtor's bankruptcy in the United States Bankruptcy Court of the Central District of California.

4.      **Consideration.** In return for dismissal of the Adversary Proceeding as to DealDefenders, DealDefenders agrees, subject to the service of a valid subpoena by the Trustee on notice to any party referenced therein, (DealDefenders agrees that a valid subpoena can and will be issued from the Bankruptcy Case, and not from the United States District Court for the Eastern District of Pennsylvania, and DealDefenders will comply with a subpoena issued from the Bankruptcy Case and any disputes thereon shall be presented in the Bankruptcy Case for resolution), to the extent not previously produced, to provide non-privileged documentation reflecting the following: (i) All consideration provided by Rahman/Zoom-Tel for its ownership interest in DealDefenders; (ii) All consideration, including distributions, provided to Rahman/Zoom-Tel on account of its ownership interest in DealDefenders; (iii) All communications between Rahman/Zoom-Tel and DealDefenders (and internal DealDefenders' communications) relating to Rahman/Zoom-Tel's ownership in DealDefenders; (iv) All documents memorializing Rahman/Zoom-Tel's ownership in DealDefenders; (v) All disclosures to any third party regarding Rahman/Zoom-Tel's ownership in DealDefenders including, without limitation, any evidence of such disclosure to Rodney Omanoff; (vi) All documents relating to DealDefenders' (including, but not limited to, due diligence documents) with respect to Najd, Telacme, Ikarim, Rahman, Proto, Nazmul Hoque, Colin Eccles, Indigo11, IKBS, Zoom-Tel, Mohammed Shakeel Mughal, Interswitch, Vineet Singh Notwal, HCT, Highland, Tech Ltd, Arco, Tee Telecommunications, Inc., Ikrik Limited, and any other entities then known by DealDefenders to be owned and/or controlled by Rahman, Chris Lara, Omanoff, and/or Proto; (vii) all communications relating to Direct Lending Investments, LLC ("DLI"), Ikarim, IKBS, Indigo11, Telacme, Najd, Zoom-Tel, Interswitch, Ikrik Limited, Vineet Singh Notwal, Rahman, Proto, Eccles, Lara, Orange, Hoque, to the extent traceable to money from the Debtor and/or VoIP Guardian LLC, including but not limited to information regarding any business relationship between Rahman, Omanoff, and/or Proto and these entities, information relating to bank accounts, flow of monies and invoices for minutes, (viii) all documents relating to claims of

4985116

2

**EXHIBIT 1**

**13**

spoofed minutes relating to DLI, Ikarim, Indigo 11, Najd and Telacme (ix) all documents relating to Omanoff, (x) All documents relating to DealDefenders' history with Omanoff, Rahman, Lara, and/or Proto, (xi) all communications relating to Jeff Ellentuck's "word on the street" regarding Omanoff having the $160 million, and (xii) All sub-ledger accounts maintained by DealDefenders that track transactions/transfers between parties within the DealDefenders' systems for all parties identified in subsection (vi) and any other parties relating to Rahman, Proto and Omanoff but solely to the extent DealDefenders knew of such affiliations. The above list of documents is deemed a limitation on the scope of any subpoena served upon DealDefenders.

As part of its settlement consideration, DealDefenders makes the following representations and warranties, which representations and warranties are deemed material to this settlement:

(i).    DealDefenders ®LLC charges standard fees to its customers through TelFinance® LLC, its wholly owned subsidiary. DealDefenders and Telfinance are referred to collectively herein as "DealDefenders." The fees received by DealDefenders include and are limited to a fixed Wire Fee for each wire in or out of its customer accounts and a fixed fee for each cancellation of a wire, a fixed Currency Conversion (FX) Fee, a fixed Transfer Fee for funds transferred within the DealDefenders system, an Hourly Service Fee for matters such as database searches and arbitration (which fee has not ever been charged to the best of its knowledge), and a percentage fee applied against each invoice payment made pursuant to an escrow or as a penalty for the failure of a DealDefenders customer to pass funds through escrows (collectively, "Fees").

(ii).    Neither DLI nor Voip Guardian (I and II) are or ever were customers of DealDefenders. Accordingly, none of DLI, Voip Guardian I, or Voip Guardian II has ever been charged any Fees by DealDefenders. None of DLI, Voip Guardian I, or Voip Guardian II has ever made any other payment to DealDefenders other than in DealDefenders' capacity as a conduit. DealDefenders has not made any payments to DLI or Voip Guardian other than in DealDefenders' capacity as a conduit.

(iii).    During the Relevant Time Period, DealDefenders received funds in its capacity as a conduit from Najd, Telacme, Indigo 11, Ikarim, and IKBS (collectively, "Subject Customers") and received Fees from the Subject Customers for services rendered to or on behalf of those entities in the normal course of DealDefenders' business as a conduit. Except for Fees, DealDefenders has not received payments from, has no agreement to receive payments from, and has no expectation that it will receive payments for its own account from any of the Subject Customers.

(iv).    DealDefenders received and released funds as a conduit in accordance with the instructions of the relevant customers, for which services DealDefenders charged Fees. Funds designated as being for the payment of call termination that were not returned to buyers were released to selling carriers by DealDefenders based on buying carriers' approval and were understood by DealDefenders to be payment for the direct or indirect termination of telephone calls. Whether an individual call was directly or indirectly terminated by a selling carrier can be determined by an examination of Call

3

**EXHIBIT 1**

**14**

Detail Records (CDRs) generated by that selling carrier's or the buyer's switching equipment. DealDefenders did not collect CDRs. Neither DealDefenders nor Ellentuck had knowledge that payments made for the termination of calls were made for any other purpose. Payments for services or capital assets were released from customer accounts by DealDefenders against individual invoices presented to DealDefenders and approved by the respective customer.

(v) DealDefenders received Fees from Zoom-Tel as a DealDefenders customer for escrow related services rendered to Zoom-Tel. Zoom-Tel is a 24.9% owner of DealDefenders LLC. DealDefenders LLC has made LLC member distributions to Zoom-Tel in accordance with the DealDefenders Operating Agreement. DealDefenders LLC received initial non-cash consideration from Zoom Telecom as membership consideration in connection with the formation of DealDefenders.

(vi).    REPRESENTATION REGARDING LOSS OF VOIP GUARDIAN FUNDS. Other than as a mere conduit, neither DealDefenders nor Ellentuck were involved in any manner with any transfer that the Trustee has alleged was a disappearance of Voip's/DLI's funds relating to Ikarim, Telacme, Najd, or Indigo11, or to entities known by DealDefenders to be controlled by Proto, Rahman, Omanoff, and Lara.

5.    **Additional Consideration:**

(i).    Upon service of a charging order duly entered in favor of the Trustee by a court of competent jurisdiction, and against Zoom-Tel, any subsequent funds owed to or to be paid to Zoom-Tel will be escrowed by DealDefenders pending further order of the issuing court.

(ii).    DealDefenders agrees it will not interfere with or object to any post-judgment collection efforts by the Trustee against any individual or entity other than DealDefenders or Jeff Ellentuck.

(iii).    DealDefenders undertakes no obligation to continue its operations or corporate existence.

(iv).    Upon full execution of the Settlement Agreement and Court approval thereof, DealDefenders shall be dismissed from the Adversary Proceeding with prejudice.

6.    **Authority**. The Parties warrant that they are authorized to enter into this Agreement and that by their signatures below, it will become a binding agreement.

7.    **Effective Date of the Agreement**. The date upon which the Court enters an order approving this Agreement shall be referred to as the "Agreement Effective Date."

8.    **Dismissal of Litigation**. Within ten (10) business days after full execution of this Agreement, the Trustee, with the cooperation of DealDefenders, shall seek the Bankruptcy Court's approval of this Agreement, including the dismissal of DealDefenders from the

4

**EXHIBIT 1**

**15**

Adversary Proceeding with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees and costs.

9.      **Mutual Release and Remedies**. Subject to the Parties' obligations under this Agreement, on the Agreement Effective Date, the Trustee, on behalf of the Debtor and its chapter 7 estate on the one hand, and DealDefenders on the other, hereby release, discharge, and acquit each other from and against all claims and Counter-Claims between each other in the Adversary Proceeding with prejudice. The Parties agree that money damages would be inadequate to remedy any breach of this Agreement (including in the event that a court of competent jurisdiction shall later determine that any of DealDefenders' express representations and warranties set forth herein were knowingly untrue in any material respect when made). As a result, a non-breaching Party shall be entitled to seek, and a court of competent jurisdiction may grant specific performance and injunctive or other equitable relief as a remedy for any breach of this Agreement. Such remedy shall be in addition to all other remedies, including money damages, available to a non-breaching Party at law or in equity. The prevailing Party in such action shall be entitled to reasonable attorney fees and other out-of-pocket incurred in the prosecution or defense of any claim brought under this Agreement. Any action for a breach of this Agreement, including that any representation and warranty made by DealDefenders was knowingly false, shall be made no later than eighteen (18) months from the Agreement Effective Date.

10.      **Attorneys' Fees**. Each Party shall bear its own attorneys' fees and costs in connection with the Bankruptcy Case and the Adversary Proceeding, including the negotiation, documentation, execution, delivery, and performance of this Agreement. Notwithstanding the preceding sentence, should any action, suit, or proceeding be commenced by any Party to this Agreement to enforce any provision hereof, the prevailing Party shall be entitled to recover reasonable attorneys' fees, all costs (whether or not denominated as such in 28 U.S.C. § 1920), and expert expenses incurred in said action, suit, or proceeding, including any appeal.

11.      **No Assignment**. Each Party represents and warrants to all of the other Parties and each of them, that it has not assigned or transferred any of the claims, Counter-Claims, or interests addressed in this Agreement as of the date hereof. Each Party agrees to defend and indemnify all of the other Parties and each of them against any claim based upon, arising out of, or arising in connection with any such alleged or actual assignment or transfer prior to the date hereof.

12.      **Mutual Cooperation**. The Parties hereby provide assurances of cooperation to each other and agree to take any and all necessary and reasonable steps, including executing any other and further documents or instructions and performing any other and further acts, appropriate to effect the provision of the specific information requested in paragraph 4 above. For the avoidance of doubt, nothing herein shall obligate DealDefenders to create any document, report, analysis, tracing, or similar work product that does not exist as of the date hereof.

13.      **Retention of Jurisdiction**. The Parties specifically consent to the jurisdiction and power of the Bankruptcy Court to determine any dispute relating to this Agreement, including any claim for breach, and to the power and authority of the Bankruptcy Court to enter a final judgment in connection therewith.

4985116

5

**EXHIBIT 1**

**16**

14.    **Notice**.  The Parties may give notice to each other by sending a written communication by overnight mail or e-mail to the Parties at the addresses set forth below, which notice shall be effective on the first business day after notice is sent.

      a.    To DealDefenders LLC:

            **GIBBONS P.C.**
            Robert K. Malone, Esq.
            Mark B. Conlan, Esq.
            One Gateway Center
            Newark, NJ 07102
            Email:  rmalone@gibbonslaw.com
            Email:  mconlan@gibbonslaw.com

            -and-

            **ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP**
            Michael I. Gottfried, Esq.
            Roye Zur, Esq.
            10345 W. Olympic Blvd.
            Los Angeles, California 90064
            Email:  mgottfried@elkinskalt.com
            Email:  rzur@elkinskalt.com

      b.    To the Trustee:

            **BG LAW LLP**
            Jason B. Komorsky, Esq.
            Jessica L. Bagdanov, Esq.
            21650 Oxnard Street, Suite 500
            Woodland Hills, CA 91367
            Email:  jkomorsky@bg.law
            Email:  jbagdanov@bg.law

Any Party wishing to change the address or email address at which he, she, or it receives notices or payments may do so by giving notice as provided in this paragraph.

15.    **Applicable Law**.  This Agreement is to be construed under and governed by the internal laws of the State of California (without regard to conflict of laws principles) and, as applicable, the Bankruptcy Code.

16.    **Entirety of Agreement**.  Except as set forth in paragraph 3 above, this Agreement contains the entire agreement and understanding among the Parties solely concerning the matters set forth herein and supersedes all prior or contemporaneous stipulations, negotiations, representations, understandings, and discussions among the Parties or their respective counsel with respect to the subject matter of this Agreement.  No other representations, covenants, undertakings, or other earlier or contemporaneous agreements

4985116

6

**EXHIBIT 1**

**17**

respecting these matters may be deemed in any way to exist or bind any of the Parties. The Parties acknowledge that they have not executed this Agreement in reliance on any promise, representation, or warranty other than those contained in this Agreement.

17.     **Construction**.  This Agreement is the product of negotiation among the Parties and represents the jointly conceived and bargained-for language mutually determined by the Parties to express their intentions.  Any ambiguity or uncertainty in this Agreement is therefore to be deemed to be caused by or attributable to the Parties collectively and is not to be construed against any particular Party.  Instead, this Agreement is to be construed in a neutral manner, and no term or provision of this Agreement as a whole is to be construed more or less favorably to any one Party.  Each Party warrants that it has been represented and advised by counsel or has had a full opportunity to be represented and advised by counsel with respect to this Agreement and all matters covered by it.

18.     **Written Modification**.  This Agreement may not be modified except as mutually agreed to in a writing signed by all the Parties.

19.     **Waiver**.  No waiver, forfeiture, or forbearance of or concerning any provision of this Agreement shall be deemed or shall constitute a waiver, forfeiture, or forbearance of or concerning any of the other provisions, or a continuing waiver, forfeiture, or forbearance.

20.     **Severability**.  If, for any reason, any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and the remaining provisions of this Agreement shall be construed, performed, and enforced as if the reformed provision had been included in this Agreement at inception.

21.     **No Admission**.  The Parties hereto understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission of guilt, wrongdoing, liability, or noncompliance with federal, state, or local law, statute, order, or regulation, tortious act, breach of contract, violation of common law, or any other wrongdoing whatsoever.

22.     **Execution**.  This Agreement may be executed in several counterparts, and any and all such executed counterparts, taken together, will constitute a single agreement binding on all Parties to this Agreement.  Facsimiles of signatures and electronic signatures may be taken as the actual signatures.

4985116

7

**EXHIBIT 1**

**18**

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the date set forth below.

Dated: 3/5/23

DealDefenders LLC

By: _____

Print Name: Jeff Ellentuck
Its Managing Member

Dated: March 2, 2023

Timothy Yoo, as chapter 7 trustee for VoIP Guardian Partners I, LLC

By: _____

Timothy Yoo,
Chapter 7 Trustee for
VoIP Guardian Partners I, LLC

4985116

8

**EXHIBIT 1**

**19**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled**: TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH DEALDEFENDERS PURSUANT TO FED. R. BANKR. P. 9019; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF TIMOTHY J. YOO IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **April 11, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **April 11, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY LESS THAN 25 PAGES NOT REQUIRED (GENERAL ORDER 23-01).**

Honorable Barry Russell
United States Bankruptcy Judge
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 11, 2023 | Mela Galvan | /s/ Mela Galvan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Gretchen S Carner**    gretchen.carner@clydeco.us, kathy.rollins@clydeco.us
- **Jeffrey D Cawdrey**    jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Cynthia M Cohen**    ccohen@brownwhitelaw.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Aaron E. DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com,
  cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
- **Jason B Komorsky**    ecf@bg.law, jkomorsky@bg.law
- **Andy Kong**    Kong.Andy@ArentFox.com
- **Steven N Kurtz**    skurtz@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Ian Landsberg**    ilandsberg@sklarkirsh.com,
  lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com;kfrazi
  er@sklarkirsh.com;mduran@sklarkirsh.com
- **Avi Edward Muhtar**    amuhtar@laklawyers.com
- **Olaf J Muller**    olaf@olafmullerlaw.com
- **Douglas M Neistat**    dneistat@gblawllp.com, mramos@gblawllp.com;tkrant@gblawllp.com
- **Jennifer E Newcomb**    jnewcomb@kdvlaw.com, jnewcomb@kdvlaw.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Uzzi O Raanan**    uraanan@DanningGill.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- **David J Richardson**    drichardson@bakerlaw.com, aagonzalez@bakerlaw.com
- **Scott H Siegel**    ssiegel@laklawyers.com, smcfadden@laklawyers.com
- **Annie Y Stoops**    annie.stoops@afslaw.com, yvonne.li@arentfox.com
- **Christopher D Sullivan**    csullivan@sullivanblackburn.com,
  qroberts@sullivanblackburn.com;mhassett@sullivanblackburn.com;spratt@sullivanblackburn.com;rbahadurji@sulli
  vanblackburn.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law
- **Timothy Yoo (TR)**    tjytrustee@lnbyg.com, tjy@trustesolutions.net
- **Roye Zur**    rzur@elkinskalt.com,
  cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>JASON B. KOMORSKY – Bar No. 155677<br>JESSICA L. BAGDANOV – Bar No. 281020<br>BG LAW LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile:  (818) 827-9099<br>Email: sgubner@bg.law<br>        jkomorsky@bg.law<br>        jbagdanov@bg.law<br><br>☐ *Debtor(s) appearing without an attorney*<br>☒ *Attorney for:* Timothy J. Yoo, Chapter 7 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>VOIP GUARDIAN PARTNERS I, LLC,<br><br><br><br>Debtor(s). | CASE NO.: 2:19-bk-12607-BR<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF OPPORTUNITY TO REQUEST A HEARING ON MOTION**<br><br>**[LBR 9013-1(o)]** |
| | [No hearing unless requested in writing] |

**TO THE U.S. TRUSTEE AND ALL PARTIES ENTITLED TO NOTICE, PLEASE TAKE NOTICE THAT:**

1. Movant(s) Timothy J. Yoo, Chapter 7 Trustee _____,
   filed a motion or application (Motion) entitled Trustee's Motion to Approve Compromise with DealDefenders
   Pursuant to Fed. R. Bankr. P. 9019; Memorandum of Points and Authorities and Declaration of Timothy J. Yoo ____.

2. Movant(s) is requesting that the court grant the Motion without a hearing as provided for in LBR 9013-1(o), unless a party in interest timely files and serves a written opposition to the Motion and requests a hearing.

3. The Motion is based upon the legal and factual grounds set forth in the Motion.  (*Check appropriate box below*):

   ☒ The full Motion is attached to this notice; or

   ☐ The full Motion was filed with the court as docket entry # _____, and a detailed description of the relief sought is attached to this notice.

4. **DEADLINE FOR FILING AND SERVING OPPOSITION PAPERS AND REQUEST FOR A HEARING:** Pursuant to LBR 9013-1(o), any party who opposes the Motion may request a hearing on the Motion.  The deadline to file and serve a written opposition and request for a hearing is 14 days after the date of service of this notice, plus 3 additional days if you were served by mail or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

a.  If you timely file and serve a written opposition and request for a hearing, movant will file and serve a notice of hearing at least 14 days in advance of the hearing. [LBR 9013-1(o)(4)]

b.  If you fail to comply with this deadline:

(1)  Movant will file a declaration to indicate: (1) the Motion was properly served, (2) the response period elapsed, and (3) no party filed and served a written opposition and request for a hearing within 14 days after the date of service of the notice [LBR 9013-1(o)(3)];

(2)  Movant will lodge an order that the court may use to grant the Motion; and

(3)  The court may treat your failure as a waiver of your right to oppose the Motion and may grant the Motion without further hearing and notice. [LBR 9013-1(h)]


Respectfully submitted,


Date:  04/11/2023                                   /s/ Jessica L. Bagdanov
                                                    Signature of Movant or attorney for Movant

                                                    JESSICA L. BAGDANOV
                                                    Printed name of Movant or attorney for Movant

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 2                    **F 9013-1.2.OPPORTUNITY.HEARING.NOTICE**

STEVEN T. GUBNER – Bar No. 156593
JASON B. KOMORSKY – Bar No. 155677
JESSICA L. BAGDANOV – Bar No. 281020
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:       sgubner@bg.law
             jkomorsky@bg.law
             jbagdanov@bg.law

Special Litigation Counsel for
Timothy J. Yoo, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:19-bk-12607-BR |
| VOIP GUARDIAN PARTNERS I, LLC, | Chapter 7 |
| Debtor. | **TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH DEALDEFENDERS PURSUANT TO FED. R. BANKR. P. 9019; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF TIMOTHY J. YOO IN SUPPORT THEREOF** |
| | [No Hearing Required Unless Requested Under L.B.R. 9013-1(o)] |

1

Timothy J. Yoo, the duly appointed and acting chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of VoIP Guardian Partners I, LLC (the "Debtor"), hereby moves (the "Motion") this Court for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019") approving a compromise with DealDefenders LLC ("Dealdefenders").  The proposed compromise is set forth in the Settlement Agreement attached hereto as **Exhibit 1** (the "Agreement").  In support of the Motion, the Trustee respectfully represents as follows:

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

By the Motion, the Trustee seeks Court approval of a settlement agreement with Dealdefenders. The Agreement, if approved, will result in dismissal of Dealdefenders from pending litigation commenced by the Trustee and resolves Dealdefenders' pending counterclaim filed against the Trustee. The Agreement does not provide a monetary recovery for the Estate, however the Trustee believes the settlement is appropriate as it narrows disputed issues in pending complex litigation, described below, and provides a mechanism for Dealdefenders' cooperation with the Trustee in connection with his ongoing investigation in to the Debtor's pre-bankruptcy business activities. The Trustee has considered the factors set forth in the seminal case of *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986), and in his business judgment, he has determined that the Agreement should be approved as in the best interests of these estates.

## II.    RELEVANT BACKGROUND

### A.    <u>Procedural History</u>

On March 11, 2019 the Debtor filed a voluntary petition under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing this bankruptcy case.  Timothy J. Yoo was duly appointed as Chapter 7 Trustee, in which capacity he continues to serve.

On March 10, 2021, the Trustee filed a complaint naming numerous defendants, seeking to avoid and recover certain transfers and trace over $160 million of funds that the Debtor lost shortly before its bankruptcy filing. *Yoo v. VoIP Guardian, LLC, et al.,* 2:21-01044-BR (the "VoIP Action"). Dealdefenders is a defendant in the VoIP Litigation. As to Dealdefenders, in the operative

complaint filed January 4, 2022 [Adv. Doc. 225] (the "Second Amended Complaint"), the Trustee

seeks damages for alleged aiding and abetting breaches of fiduciary duties by certain insiders of the

Debtor in its position as a purported independent escrow company. *See* Second Claim for Relief,

Adv. Doc. 225.

Along with its answer to the operative complaint filed on October 5, 2021, Dealdefenders

brought a counterclaim against the Trustee for defamation, tortious interference with prospective

economic advantage, tortious interference with contract, and malicious abuse of process [Adv. Doc.

205] (the "Dealdefenders Counterclaim"), alleging that the Trustee's investigation into

Dealdefenders has caused its business significant loss in value and interrupted its relationship with

its own customers.[1]   In their pursuit of settlement negotiations, the Trustee and Dealdefenders agreed

to a stand-still of litigation over the Second Amended Complaint and Dealdefenders Counterclaim.

**B.** **The Estate's Claims Against Dealdefenders and Description of Proposed
Settlement**

Substantively, the Second Amended Complaint alleges that, prepetition, Dealdefenders

operated as a third party escrow for the Debtor to facilitate the Debtor's voice-over-internet-protocol

financing business.  Dealdefenders provided a mechanism by which the Debtor was able to transfer

monies to its customers "safely" regardless of whether the customer was a domestic or foreign

entity. The Trustee alleges that the Debtor provided millions of dollars of financing to illegitimate

businesses overseas in high-risk transactions without sufficient protection for its investment, and that

Dealdefenders had knowledge of the problems with these businesses, and further profited from the

Debtor's transactions with the entities, either directly or indirectly. During discovery, the Trustee

learned that defendant Zoom Telecom, Inc., owned by Joseph Rahman, one of the main people

involved in the Debtor's own business, owns a 24.9% interest in Dealdefenders, and the Trustee

alleges that this ownership interest was undisclosed to the Debtor during its operations. The Trustee

alleges that Dealdefenders aided and abetted Debtor insiders' breaches of fiduciary duties owed to

the Debtor by, among other things, profiting off of the Debtor's relationships with illegitimate

---

[1] While the Dealdefenders Counterclaim pre-dates the operative Second Amended Complaint based
on the respective filing dates, the Trustee notes that a stand-still agreement was reached with
Dealdefenders prior to the Trustee's filing of the Second Amended Complaint.

2886917

overseas companies, and alleges that, without the material assistance of Dealdefenders—i.e., in its purporting to serve as an independent third party escrow company—the Debtor would not have been able to operate its business. *E.g.,* Second Amended Complaint ¶¶ 60-65; 194-196.

By the proposed settlement, attached hereto as **Exhibit 1,** the Trustee agrees to dismiss Dealdefenders from the VoIP Action with prejudice and resolves the Dealdefenders Counterclaim with prejudice, subject to representations and warranties as well as a tolling agreement. The following section provides a summary of the salient terms of the Dealdefenders settlement; parties in interest should review **Exhibit 1** in detail. To the extent this summary conflicts with the Agreement, the Agreement shall control.

1. **Effective Date.** The Agreement is subject to bankruptcy court approval, and becomes effective (the "Effective Date") upon entry of an order approving the Agreement. Agreement ¶ 7.

2. **Cooperation with Trustee's Investigation and Discovery.** Dealdefenders will cooperate with the Trustee in producing all non-privileged information relevant to various aspects of the Trustee's claims; it will not interfere with any post-judgment collection efforts by the Trustee as to other defendants (i.e., Zoom-Tel or Rahman). *See* Agreement, ¶¶ 4, 5.

3. **Representations and Warranties By Dealdefenders.** In the Agreement, Dealdefenders represents and warrants, among other things, the following (Agreement ¶ 4):

- Dealdefenders has not received any payments other than de minimis escrow fees from questionable customers of the Debtor, including Najd, Telacme, Indigo 11, Ikarim, or IKBS (defined in the Second Amended Complaint), and represents that it had no involvement other than as a mere conduit of funds in the disappearance of the Debtor's funds via these entities;

- The Debtor was not charged fees by Dealdefenders as it was not a customer of Dealdefenders; Dealdefenders never made any payment to the Debtor other than in its capacity as a conduit;

- With regard to Zoom-Tel's 24.9% ownership interest in Dealdefenders, Dealdefenders represents and warrants that Dealdefenders received initial non-cash consideration from Zoom-Tel as membership consideration

4

2886917

**4.**  **Tolling.** In the event the Trustee discovers that any representation made by Dealdefenders in the Agreement was knowingly false, the Trustee may bring an action for breach of the Agreement within 18 months of the Effective Date. Agreement ¶ 9.

**5.**  **Dismissal of Litigation.** Upon Court approval of the Agreement, the Dealdefenders Counterclaim shall be dismissed with prejudice and the Trustee's claims against Dealdefenders shall be dismissed with prejudice, all parties to bear their respective fees and costs. Agreement ¶¶ 8, 9.

For the reasons set forth herein, the Trustee respectfully requests that the Court approve the Agreement.

## III.    THE COURT SHOULD APPROVE THE AGREEMENT

### A.    Legal Standard for Approval

Rule 9019 provides that on motion by a Trustee, the Court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a).  The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. *In re Walsh Construction, Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988); *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).

More specifically, a Court should review the following factors in considering whether to approve a proposed settlement: (a) the probability of success in the litigation; (b) the difficulty, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises. *Woodson, supra*, 839 F.2d at 620 (quoting *A&C Properties, supra*, 784 F.2d at 1381).  A settlement negotiated by a trustee, as a representative of the estate, is entitled to deference. *In re Morrison*, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

The Court need not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. *In re Walsh Construction, Inc., supra*, 669 F.2d at 1328.  In fact, the Court need not decide the questions of law and fact raised in the controversies sought to be settled and need not determine whether the settlement presented is the best one that

2886917

could possibly have been achieved. Instead, the Court's responsibility is only to "canvass the issues to see 'whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) (quoting *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)).

The Trustee has the right to exercise reasonable business judgment in an effort to maximize the value of assets of the Estate. So long as a proposed compromise results in a recovery above the lowest point in the range of reasonable compromises, the Trustee should be authorized to proceed with such compromise. In light of the facts and circumstances in this case, the application of the *A&C Properties* factors shows that the compromise set forth in the Agreement is fair and equitable, is in the best interests of the Estate, and is well above the lowest point in the range of reasonableness.

**B.    Application of the *A&C Properties* Factors Demonstrates that the Agreement Should Be Approved**

The Trustee has evaluated the Agreement and has compared the benefits of entering into the Agreement with the potential risks, expense, and detriment to the estate inherent in continuing litigation with Dealdefenders. In evaluating his decision to enter into the Agreement, the Trustee has reviewed the numerous documents and information available to him in this bankruptcy case and the Adversary Proceeding, including all records of the pre-conversion Debtor produced to date. Based on this evaluation, the Trustee has determined that the Agreement is in the best interests of the estate because it is fair and equitable, is a reasonable and appropriate exercise of the Trustee's business judgment, and will avoid the time, expense, and risk inherent in continuing litigation with these parties. The Trustee has evaluated the *A&C Properties* factors in exercising his business judgment as to whether to agree to the terms of the Agreement, and has concluded that under these factors, the Agreement should be approved. The Trustee's analysis of the *A&C Properties* factors is as follows:

**1.    Probability of Success on the Merits / Complexity, Expense, and Inconvenience of Litigation**

The Trustee strongly believes in the merits of his breach of fiduciary duty claims asserted against those who took on management roles for the Debtor's operations (i.e., Rodney Omanoff, Joseph Rahman, Mark Proto, etc.). However, his claim against Dealdefenders is derivative in nature from those claims in that it alleges aiding and abetting such breaches of fiduciary duties, and the

2886917

Trustee recognizes that such claims are subject to a higher standard of proof. In order to state a claim

for aiding and abetting an intentional tort, the plaintiff must plead that the defendant "(a) had

knowledge that another's conduct constitutes a breach of duty and gives substantial assistance or

encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing

a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to

the third person." *Casey v. U.S. Bank Nat'l. Assn.*, 127 Cal. App. 4th 1138, 1144 (2005). As to

Dealdefenders, its knowledge of wrongdoing is critical to the Trustee's case, given that "liability for

aiding and abetting depends on proof the defendant had ***actual knowledge of the specific primary***

***wrong*** the defendant substantially assisted." *Id.* at 1145 (emphasis added). Thus, the Trustee believes

that his case against Dealdefenders is highly complex and fact-intensive, and hinges on whether

Dealdefenders (likely through its principal, Jeff Ellentuck), had actual knowledge that the Debtor

was engaging in business with illegitimate companies where such companies were fabricating fake

call traffic to support their demands for millions of dollars from the Debtor in financing. This

heightened standard, coupled with multiple colorable defenses Dealdefenders can raise (such as the

potential defense of *in pari delicto*), factored into his decision to settle with Dealdefenders.

Separately, the Trustee believes that the Dealdefenders Counterclaim asserted against him is

utterly meritless. DealDefenders seeks to sue the Trustee, first, for abuse of process based solely on

the Trustee's filing of the operative complaint against DealDefenders and for seeking judicial

enforcement of a Rule 2004 subpoena and, secondly, for defamation based solely upon

correspondence sent on the Trustee's behalf in the context of seeking a Rule 2004 examination in the

Debtor's bankruptcy case. These claims are barred by the litigation privilege, applicable statute of

limitations, and are otherwise improper, and the Trustee is confident that he would achieve dismissal

with prejudice of these claims. However, such effort would needlessly increase the administrative

burden on this estate in having to defend against claims in addition to pursuing highly complex

claims belonging to the estate.

The Trustee believes that the expenses and inconvenience associated with further litigation

with Dealdefenders, as well as the risk that the estate may not prevail in the litigation as against

Dealdefenders are significant factors weighing in favor of approval of the Agreement.

### 2.    Potential Difficulties in Collection

Dealdefenders has claimed that the VoIP Action has damaged its business reputation, however the Trustee is informed that Dealdefenders continues to conduct business as an operating company, and does not believe there are difficulties in collecting a potential judgment against Dealdefenders.

### 3.    The Paramount Interests of Creditors

The Trustee submits that the Agreement is in the best interests of creditors because it reduces the disputes in the VoIP Action, allowing the Trustee to spend resources focusing on his primary claims asserted against the former management of the Debtor and pursue collection efforts abroad. The settlement also provides a mechanism to ensure that the Trustee receives crucial discovery and information from Dealdefenders that the Trustee would otherwise need to spend significant resources pursuing through normal discovery tools. The Trustee believes that without settlement, he will be required to spend significant time and resources litigating with Dealdefenders, and in light of the heightened standard of proof as to such claims, the Trustee does not believe that effort is a valuable use of resources. Additionally, the Agreement preserves the status quo for a period of time, in that, if the Trustee discovers through litigation with other parties that Dealdefenders has knowingly made false representations and warranties, the Agreement preserves the Trustee's rights to seek damages against Dealdefenders.

## IV.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order granting this Motion, approving the Agreement; and granting to the Trustee such other and further relief as the Court deems just and proper under the circumstances.

DATED:    April 11, 2023                    BG LAW LLP


By: _____
        Jason B. Komorsky
        Jessica L. Bagdanov
    Special Litigation Counsel for Timothy Yoo,
    Chapter 7 Trustee

2886917

8

## DECLARATION OF TIMOTHY J. YOO

I, Timothy J. Yoo, declare:

1.      I am the duly appointed and acting chapter 7 trustee for the bankruptcy estate of VoIP Guardian Partners I, LLC (the "Debtor"). The facts contained herein are based upon my personal knowledge or upon documents and information I review in the normal course of my duties as Trustee, and if called as a witness, I could and would competently testify thereto under oath.

2.      I make this declaration in support of the motion to approve compromise with Dealdefenders (the "Motion"). All initial capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

3.      On or about March 2, 2023, I executed the Agreement. A true and correct copy of the Agreement is attached hereto as **Exhibit 1.**

4.      In evaluating the Agreement and deciding whether to settle with Dealdefenders or pursue litigation, I reviewed the numerous documents and information available to me in this bankruptcy case and the Adversary Proceeding, including all records of the pre-conversion Debtor produced to date.  Based on this evaluation, I believe the Agreement is in the best interests of the estate because it is fair and equitable, is a reasonable and appropriate exercise of my business judgment, and will avoid the time, expense, and risk inherent in continuing litigation with these parties.  In my analysis, I considered the *A&C Properties* factors as follows:

5.      **Probability of Success on the Merits / Complexity, Expense, and Inconvenience of Litigation.** The estate holds strong claims for breach of fiduciary duty against those who took on management roles for the Debtor's operations (i.e., Rodney Omanoff, Joseph Rahman, Mark Proto, etc.). However, the sole claim against Dealdefenders, aiding and abetting breach of fiduciary duty, is necessarily derivative in nature.  I recognize that this type of claim is subject to a higher standard of proof than the direct breach claims, and I understand that it has a heightened knowledge requirement.  I think proving such elements as against Dealdefenders will be highly complex and fact-intensive, and I understand that the claim essentially hinges on whether Dealdefenders (likely through its principal, Jeff Ellentuck), had actual knowledge that the Debtor was engaging in business with illegitimate companies where such companies were fabricating fake call traffic to support their

9

demands for millions of dollars from the Debtor in financing. This heightened standard, coupled with multiple colorable defenses Dealdefenders can raise (such as the potential defense of *in pari delicto*), factored into my decision to settle with Dealdefenders.

6.    As to Dealdefenders' Counterclaim, however, I believe it is utterly meritless. Dealdefenders has sued me for, first, abuse of process based solely on my filing of the operative complaint against Dealdefenders and for seeking judicial enforcement of a Rule 2004 subpoena and, secondly, for defamation based solely upon correspondence sent by my general counsel in the context of seeking a Rule 2004 examination in the Debtor's bankruptcy case. I believe these claims are barred by the litigation privilege, applicable statute of limitations, and are otherwise improper. However, such effort would needlessly increase the administrative burden on this estate in having to defend against claims in addition to pursuing highly complex claims belonging to the estate. Because the Agreement provides for dismissal of all claims with prejudice, I believe the settlement properly addresses the Dealdefenders Counterclaim.

7.    I believe that the expenses and inconvenience associated with further litigation with Dealdefenders, as well as the risk that the estate may not prevail in the litigation as against Dealdefenders are significant factors weighing in favor of approval of the Agreement.

8.    **Potential Difficulties in Collection.** Dealdefenders has claimed that the VoIP Action has damaged its business reputation, however I am informed that Dealdefenders continues to conduct business as an operating company, and do not believe there are difficulties in collecting a potential judgment against Dealdefenders if one were obtained.

9.    **The Paramount Interests of Creditors.** The Agreement is in the best interests of creditors because it reduces the disputes in the VoIP Action, allowing the estate to spend resources focusing on primary claims asserted against the former management of the Debtor and pursue collection efforts abroad. The settlement also provides a mechanism to ensure that I receive crucial discovery and information from Dealdefenders that I would otherwise need to spend significant resources pursuing through normal discovery tools. Without settlement, the estate will be required to spend significant time and resources litigating with Dealdefenders, and in light of the heightened standard of proof as such claims, I do not believe that effort is a valuable use of resources.

1    Additionally, the Agreement preserves the status quo for a period of time, in that, if I discover

2    through litigation with other parties that Dealdefenders has knowingly made false representations

3    and warranties, the Agreement preserves my rights to seek damages against Dealdefenders.

4          10.      For these reasons, I believe the Agreement is appropriate and in the best interests of

5    this estate, and respectfully request that it be approved.

6         I declare under penalty of perjury under the laws of the United States of America that the

7    foregoing is true and correct.

8         Executed this 10th day of April, 2023, at Los Angeles, California.

 

                             Timothy J. Yoo

11

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between
(i) Timothy Yoo, as chapter 7 trustee ("Trustee") for VoIP Guardian Partners I, LLC (the
"Debtor"), and (ii) DealDefenders, LLC ("DealDefenders," on behalf of itself and its affiliates,
each a "Party" and together, the "Parties").

## RECITALS

A.      On March 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for
relief under chapter 7, title 11, United States Code. 11 U.S.C. §§ 101 - 1532 (the "Bankruptcy
Code") in the United States Bankruptcy Court for the Central District of California (the
"Bankruptcy Court") (Case No. 19-12607-BR) (the "Bankruptcy Case").

B.      On or about March 10, 2021, the Trustee commenced an adversary proceeding,
assigned adversary number 21-01044 (BR) (the "Adversary Proceeding") by filing a complaint
[ECF No. 1] (the "Complaint") naming numerous defendants, including DealDefenders, seeking,
among other relief, to avoid and recover certain transfers in the amount of $14,133,475.74
(collectively, the "Transfers"), which were listed on Exhibit 20 to the Complaint.

C.      On March 31, 2021, the Trustee filed his First Amended Complaint [ECF No. 11]
("First Amended Complaint"), seeking, among other relief, to avoid and recover the Transfers
from DealDefenders.

D.      On August 17, 2021, the Trustee filed his Second Amended Complaint [ECF No.
130] ("Second Amended Complaint"), in which the Trustee abandoned his efforts of avoiding
and recovering the Transfers from DealDefenders, and alleged that the DealDefenders aided and
abetted certain breaches of fiduciary duties by certain insiders of the Debtor.

E.      On August 31, 2021, DealDefenders filed its Motion to Dismiss the Second
Amended Complaint [ECF No. 136], which the Trustee opposed [ECF No. 158], and which the
Bankruptcy Court denied by Order dated September 30, 2021 [ECF No. 178].

F.      On October 5, 2021, DealDefenders filed its Answer to the Second Amended
Complaint, Affirmative Defenses, and Counter-Claims against the Trustee [ECF No. 190], which
DealDefenders later amended to include two counter-claims against the Trustee [ECF No. 205]:
(i) Defamation; and (ii) Abuse of Process (collectively, the "Counter-Claims").

G.      The Bankruptcy Court has subject matter jurisdiction over the Adversary
Proceeding.

H.      The Parties, after engaging in good faith arms' length negotiations, have agreed to
compromise and resolve their disputes on the terms set out in this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing recitals, each of which are true
and correct, for good and valuable consideration, the receipt and sufficiency of which is hereby
acknowledged, and the Parties intending to be legally bound, the Parties agree that:

4985116

## EXHIBIT 1
## 12

## AGREEMENT

1.    **Incorporation**. The Recitals set forth above are incorporated herein as though fully set forth at length.

2.    **Relevant Time Period**. The "Relevant Time Period" for each paragraph below shall be from January 1, 2016 through and including the Petition Date.

3.    **Protective Order**. All formal and informal discovery shall be governed by the terms of that certain Stipulated Protective Order entered in the United States District Court for the Eastern District of Pennsylvania on November 3, 2020, Case No. 2:20-mc-00075 (KSM) [ECF Nos. 19 & 20], a copy of which is attached hereto as Exhibit A (the "Stipulated Protective Order"). For the avoidance of doubt and notwithstanding anything to the contrary in the Stipulated Protective Order, any subpoenas served on DealDefenders and/or Jeff Ellentuck for documents and/or testimony in connection with the information referenced in paragraph 4 below shall be issued from the United States Bankruptcy Court of the Central District of California and any disputes regarding the terms and conditions of this Agreement including any disputes regarding discovery propounded to DealDefenders and DealDefenders' obligation to cooperate (as set forth herein) shall be presented and adjudicated in the Debtor's bankruptcy in the United States Bankruptcy Court of the Central District of California.

4.    **Consideration.** In return for dismissal of the Adversary Proceeding as to DealDefenders, DealDefenders agrees, subject to the service of a valid subpoena by the Trustee on notice to any party referenced therein, (DealDefenders agrees that a valid subpoena can and will be issued from the Bankruptcy Case, and not from the United States District Court for the Eastern District of Pennsylvania, and DealDefenders will comply with a subpoena issued from the Bankruptcy Case and any disputes thereon shall be presented in the Bankruptcy Case for resolution), to the extent not previously produced, to provide non-privileged documentation reflecting the following: (i) All consideration provided by Rahman/Zoom-Tel for its ownership interest in DealDefenders; (ii) All consideration, including distributions, provided to Rahman/Zoom-Tel on account of its ownership interest in DealDefenders; (iii) All communications between Rahman/Zoom-Tel and DealDefenders (and internal DealDefenders' communications) relating to Rahman/Zoom-Tel's ownership in DealDefenders; (iv) All documents memorializing Rahman/Zoom-Tel's ownership in DealDefenders; (v) All disclosures to any third party regarding Rahman/Zoom-Tel's ownership in DealDefenders including, without limitation, any evidence of such disclosure to Rodney Omanoff; (vi) All documents relating to DealDefenders' (including, but not limited to, due diligence documents) with respect to Najd, Telacme, Ikarim, Rahman, Proto, Nazmul Hoque, Colin Eccles, Indigo11, IKBS, Zoom-Tel, Mohammed Shakeel Mughal, Interswitch, Vineet Singh Notwal, HCT, Highland, Tech Ltd, Arco, Tee Telecommunications, Inc., Ikrik Limited, and any other entities then known by DealDefenders to be owned and/or controlled by Rahman, Chris Lara, Omanoff, and/or Proto; (vii) all communications relating to Direct Lending Investments, LLC ("DLI"), Ikarim, IKBS, Indigo11, Telacme, Najd, Zoom-Tel, Interswitch, Ikrik Limited, Vineet Singh Notwal, Rahman, Proto, Eccles, Lara, Orange, Hoque, to the extent traceable to money from the Debtor and/or VoIP Guardian LLC, including but not limited to information regarding any business relationship between Rahman, Omanoff, and/or Proto and these entities, information relating to bank accounts, flow of monies and invoices for minutes, (viii) all documents relating to claims of

2

**EXHIBIT 1**

**13**

spoofed minutes relating to DLI, Ikarim, Indigo 11, Najd and Telacme (ix) all documents relating to Omanoff, (x) All documents relating to DealDefenders' history with Omanoff, Rahman, Lara, and/or Proto, (xi) all communications relating to Jeff Ellentuck's "word on the street" regarding Omanoff having the $160 million, and (xii) All sub-ledger accounts maintained by DealDefenders that track transactions/transfers between parties within the DealDefenders' systems for all parties identified in subsection (vi) and any other parties relating to Rahman, Proto and Omanoff but solely to the extent DealDefenders knew of such affiliations. The above list of documents is deemed a limitation on the scope of any subpoena served upon DealDefenders.

As part of its settlement consideration, DealDefenders makes the following representations and warranties, which representations and warranties are deemed material to this settlement:

(i).     DealDefenders ®LLC charges standard fees to its customers through TelFinance® LLC, its wholly owned subsidiary. DealDefenders and Telfinance are referred to collectively herein as "DealDefenders." The fees received by DealDefenders include and are limited to a fixed Wire Fee for each wire in or out of its customer accounts and a fixed fee for each cancellation of a wire, a fixed Currency Conversion (FX) Fee, a fixed Transfer Fee for funds transferred within the DealDefenders system, an Hourly Service Fee for matters such as database searches and arbitration (which fee has not ever been charged to the best of its knowledge), and a percentage fee applied against each invoice payment made pursuant to an escrow or as a penalty for the failure of a DealDefenders customer to pass funds through escrows (collectively, "Fees").

(ii).     Neither DLI nor Voip Guardian (I and II) are or ever were customers of DealDefenders. Accordingly, none of DLI, Voip Guardian I, or Voip Guardian II has ever been charged any Fees by DealDefenders. None of DLI, Voip Guardian I, or Voip Guardian II has ever made any other payment to DealDefenders other than in DealDefenders' capacity as a conduit. DealDefenders has not made any payments to DLI or Voip Guardian other than in DealDefenders' capacity as a conduit.

(iii).     During the Relevant Time Period, DealDefenders received funds in its capacity as a conduit from Najd, Telacme, Indigo 11, Ikarim, and IKBS (collectively, "Subject Customers") and received Fees from the Subject Customers for services rendered to or on behalf of those entities in the normal course of DealDefenders' business as a conduit. Except for Fees, DealDefenders has not received payments from, has no agreement to receive payments from, and has no expectation that it will receive payments for its own account from any of the Subject Customers.

(iv).     DealDefenders received and released funds as a conduit in accordance with the instructions of the relevant customers, for which services DealDefenders charged Fees. Funds designated as being for the payment of call termination that were not returned to buyers were released to selling carriers by DealDefenders based on buying carriers' approval and were understood by DealDefenders to be payment for the direct or indirect termination of telephone calls. Whether an individual call was directly or indirectly terminated by a selling carrier can be determined by an examination of Call

Detail Records (CDRs) generated by that selling carrier's or the buyer's switching equipment. DealDefenders did not collect CDRs. Neither DealDefenders nor Ellentuck had knowledge that payments made for the termination of calls were made for any other purpose. Payments for services or capital assets were released from customer accounts by DealDefenders against individual invoices presented to DealDefenders and approved by the respective customer.

(v) DealDefenders received Fees from Zoom-Tel as a DealDefenders customer for escrow related services rendered to Zoom-Tel. Zoom-Tel is a 24.9% owner of DealDefenders LLC. DealDefenders LLC has made LLC member distributions to Zoom-Tel in accordance with the DealDefenders Operating Agreement. DealDefenders LLC received initial non-cash consideration from Zoom Telecom as membership consideration in connection with the formation of DealDefenders.

(vi).    REPRESENTATION REGARDING LOSS OF VOIP GUARDIAN FUNDS. Other than as a mere conduit, neither DealDefenders nor Ellentuck were involved in any manner with any transfer that the Trustee has alleged was a disappearance of Voip's/DLI's funds relating to Ikarim, Telacme, Najd, or Indigo11, or to entities known by DealDefenders to be controlled by Proto, Rahman, Omanoff, and Lara.

5.    **Additional Consideration:**

(i).    Upon service of a charging order duly entered in favor of the Trustee by a court of competent jurisdiction, and against Zoom-Tel, any subsequent funds owed to or to be paid to Zoom-Tel will be escrowed by DealDefenders pending further order of the issuing court.

(ii).    DealDefenders agrees it will not interfere with or object to any post-judgment collection efforts by the Trustee against any individual or entity other than DealDefenders or Jeff Ellentuck.

(iii).    DealDefenders undertakes no obligation to continue its operations or corporate existence.

(iv).    Upon full execution of the Settlement Agreement and Court approval thereof, DealDefenders shall be dismissed from the Adversary Proceeding with prejudice.

6.    **Authority**. The Parties warrant that they are authorized to enter into this Agreement and that by their signatures below, it will become a binding agreement.

7.    **Effective Date of the Agreement**. The date upon which the Court enters an order approving this Agreement shall be referred to as the "Agreement Effective Date."

8.    **Dismissal of Litigation**. Within ten (10) business days after full execution of this Agreement, the Trustee, with the cooperation of DealDefenders, shall seek the Bankruptcy Court's approval of this Agreement, including the dismissal of DealDefenders from the

Adversary Proceeding with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees and costs.

9. **Mutual Release and Remedies**. Subject to the Parties' obligations under this Agreement, on the Agreement Effective Date, the Trustee, on behalf of the Debtor and its chapter 7 estate on the one hand, and DealDefenders on the other, hereby release, discharge, and acquit each other from and against all claims and Counter-Claims between each other in the Adversary Proceeding with prejudice. The Parties agree that money damages would be inadequate to remedy any breach of this Agreement (including in the event that a court of competent jurisdiction shall later determine that any of DealDefenders' express representations and warranties set forth herein were knowingly untrue in any material respect when made). As a result, a non-breaching Party shall be entitled to seek, and a court of competent jurisdiction may grant specific performance and injunctive or other equitable relief as a remedy for any breach of this Agreement. Such remedy shall be in addition to all other remedies, including money damages, available to a non-breaching Party at law or in equity. The prevailing Party in such action shall be entitled to reasonable attorney fees and other out-of-pocket incurred in the prosecution or defense of any claim brought under this Agreement. Any action for a breach of this Agreement, including that any representation and warranty made by DealDefenders was knowingly false, shall be made no later than eighteen (18) months from the Agreement Effective Date.

10. **Attorneys' Fees**. Each Party shall bear its own attorneys' fees and costs in connection with the Bankruptcy Case and the Adversary Proceeding, including the negotiation, documentation, execution, delivery, and performance of this Agreement. Notwithstanding the preceding sentence, should any action, suit, or proceeding be commenced by any Party to this Agreement to enforce any provision hereof, the prevailing Party shall be entitled to recover reasonable attorneys' fees, all costs (whether or not denominated as such in 28 U.S.C. § 1920), and expert expenses incurred in said action, suit, or proceeding, including any appeal.

11. **No Assignment**. Each Party represents and warrants to all of the other Parties and each of them, that it has not assigned or transferred any of the claims, Counter-Claims, or interests addressed in this Agreement as of the date hereof. Each Party agrees to defend and indemnify all of the other Parties and each of them against any claim based upon, arising out of, or arising in connection with any such alleged or actual assignment or transfer prior to the date hereof.

12. **Mutual Cooperation**. The Parties hereby provide assurances of cooperation to each other and agree to take any and all necessary and reasonable steps, including executing any other and further documents or instructions and performing any other and further acts, appropriate to effect the provision of the specific information requested in paragraph 4 above. For the avoidance of doubt, nothing herein shall obligate DealDefenders to create any document, report, analysis, tracing, or similar work product that does not exist as of the date hereof.

13. **Retention of Jurisdiction**. The Parties specifically consent to the jurisdiction and power of the Bankruptcy Court to determine any dispute relating to this Agreement, including any claim for breach, and to the power and authority of the Bankruptcy Court to enter a final judgment in connection therewith.

5

**EXHIBIT 1**

**16**

14.    <u>**Notice**</u>.  The Parties may give notice to each other by sending a written communication by overnight mail or e-mail to the Parties at the addresses set forth below, which notice shall be effective on the first business day after notice is sent.

a.    To DealDefenders LLC:

**GIBBONS P.C.**
Robert K. Malone, Esq.
Mark B. Conlan, Esq.
One Gateway Center
Newark, NJ 07102
Email:  rmalone@gibbonslaw.com
Email:  mconlan@gibbonslaw.com

-and-

**ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP**
Michael I. Gottfried, Esq.
Roye Zur, Esq.
10345 W. Olympic Blvd.
Los Angeles, California 90064
Email:  mgottfried@elkinskalt.com
Email:  rzur@elkinskalt.com

b.    To the Trustee:

**BG LAW LLP**
Jason B. Komorsky, Esq.
Jessica L. Bagdanov, Esq.
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Email:  jkomorsky@bg.law
Email:  jbagdanov@bg.law

Any Party wishing to change the address or email address at which he, she, or it receives notices or payments may do so by giving notice as provided in this paragraph.

15.    <u>**Applicable Law**</u>.  This Agreement is to be construed under and governed by the internal laws of the State of California (without regard to conflict of laws principles) and, as applicable, the Bankruptcy Code.

16.    <u>**Entirety of Agreement**</u>.  Except as set forth in paragraph 3 above, this Agreement contains the entire agreement and understanding among the Parties solely concerning the matters set forth herein and supersedes all prior or contemporaneous stipulations, negotiations, representations, understandings, and discussions among the Parties or their respective counsel with respect to the subject matter of this Agreement. No other representations, covenants, undertakings, or other earlier or contemporaneous agreements

**EXHIBIT 1**

**17**

respecting these matters may be deemed in any way to exist or bind any of the Parties. The Parties acknowledge that they have not executed this Agreement in reliance on any promise, representation, or warranty other than those contained in this Agreement.

17.    **Construction**.  This Agreement is the product of negotiation among the Parties and represents the jointly conceived and bargained-for language mutually determined by the Parties to express their intentions.  Any ambiguity or uncertainty in this Agreement is therefore to be deemed to be caused by or attributable to the Parties collectively and is not to be construed against any particular Party.  Instead, this Agreement is to be construed in a neutral manner, and no term or provision of this Agreement as a whole is to be construed more or less favorably to any one Party.  Each Party warrants that it has been represented and advised by counsel or has had a full opportunity to be represented and advised by counsel with respect to this Agreement and all matters covered by it.

18.    **Written Modification**.  This Agreement may not be modified except as mutually agreed to in a writing signed by all the Parties.

19.    **Waiver**.  No waiver, forfeiture, or forbearance of or concerning any provision of this Agreement shall be deemed or shall constitute a waiver, forfeiture, or forbearance of or concerning any of the other provisions, or a continuing waiver, forfeiture, or forbearance.

20.    **Severability**.  If, for any reason, any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and the remaining provisions of this Agreement shall be construed, performed, and enforced as if the reformed provision had been included in this Agreement at inception.

21.    **No Admission**.  The Parties hereto understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission of guilt, wrongdoing, liability, or noncompliance with federal, state, or local law, statute, order, or regulation, tortious act, breach of contract, violation of common law, or any other wrongdoing whatsoever.

22.    **Execution**.  This Agreement may be executed in several counterparts, and any and all such executed counterparts, taken together, will constitute a single agreement binding on all Parties to this Agreement.  Facsimiles of signatures and electronic signatures may be taken as the actual signatures.

**EXHIBIT 1**

**18**

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the date set forth below.

Dated: _3/5/23_

DealDefenders LLC

By: _____

Print Name: Jeff Ellentuck
Its Managing Member

Dated: _March 2, 2023_

Timothy Yoo, as chapter 7 trustee for VoIP Guardian Partners I, LLC

By: _____

Timothy Yoo,
Chapter 7 Trustee for
VoIP Guardian Partners I, LLC

**EXHIBIT 1**
**19**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled**: TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH DEALDEFENDERS PURSUANT TO FED. R. BANKR. P. 9019; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF TIMOTHY J. YOO IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 11, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒     Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **April 11, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY LESS THAN 25 PAGES NOT REQUIRED (GENERAL ORDER 23-01).**

Honorable Barry Russell
United States Bankruptcy Judge
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐     Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____**,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 11, 2023 | Mela Galvan | /s/ Mela Galvan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Gretchen S Carner**    gretchen.carner@clydeco.us, kathy.rollins@clydeco.us
- **Jeffrey D Cawdrey**    jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Cynthia M Cohen**    ccohen@brownwhitelaw.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Aaron E. DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com,
  cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
- **Jason B Komorsky**    ecf@bg.law, jkomorsky@bg.law
- **Andy Kong**    Kong.Andy@ArentFox.com
- **Steven N Kurtz**    skurtz@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Ian Landsberg**    ilandsberg@sklarkirsh.com,
  lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com;kfrazi
  er@sklarkirsh.com;mduran@sklarkirsh.com
- **Avi Edward Muhtar**    amuhtar@gmail.com
- **Olaf J Muller**    olaf@olafmullerlaw.com
- **Douglas M Neistat**    dneistat@gblawllp.com, mramos@gblawllp.com;tkrant@gblawllp.com
- **Jennifer E Newcomb**    jnewcomb@kdvlaw.com, jnewcomb@kdvlaw.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Uzzi O Raanan**    uraanan@DanningGill.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- **David J Richardson**    drichardson@bakerlaw.com, aagonzalez@bakerlaw.com
- **Scott H Siegel**    ssiegel@laklawyers.com, smcfadden@laklawyers.com
- **Annie Y Stoops**    annie.stoops@afslaw.com, yvonne.li@arentfox.com
- **Christopher D Sullivan**    csullivan@sullivanblackburn.com,
  qroberts@sullivanblackburn.com;mhassett@sullivanblackburn.com;spratt@sullivanblackburn.com;rbahadurji@sulli
  vanblackburn.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law
- **Timothy Yoo (TR)**    tjytrustee@lnbyg.com, tjy@trustesolutions.net
- **Roye Zur**    rzur@elkinskalt.com,
  cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                  **F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled**: NOTICE OF OPPORTUNITY TO REQUEST A HEARING ON MOTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **April 11, 2023,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒     Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **April 11, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY LESS THAN 25 PAGES NOT REQUIRED (GENERAL ORDER 23-01).**

Honorable Barry Russell
United States Bankruptcy Judge
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☒     Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 11, 2023 | Mela Galvan | /s/ Mela Galvan |
|---|---|---|
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                            **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Gretchen S Carner**    gretchen.carner@clydeco.us, kathy.rollins@clydeco.us
- **Jeffrey D Cawdrey**    jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Cynthia M Cohen**    ccohen@brownwhitelaw.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Aaron E. DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com,
  cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
- **Jason B Komorsky**    ecf@bg.law, jkomorsky@bg.law
- **Andy Kong**    Kong.Andy@ArentFox.com
- **Steven N Kurtz**    skurtz@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Ian Landsberg**    ilandsberg@sklarkirsh.com,
  lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com;kfrazier@sklarkirsh.com;mduran@sklarkirsh.com
- **Avi Edward Muhtar**    amuhtar@gmail.com
- **Olaf J Muller**    olaf@olafmullerlaw.com
- **Douglas M Neistat**    dneistat@gblawllp.com, mramos@gblawllp.com;tkrant@gblawllp.com
- **Jennifer E Newcomb**    jnewcomb@kdvlaw.com, jnewcomb@kdvlaw.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Uzzi O Raanan**    uraanan@DanningGill.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- **David J Richardson**    drichardson@bakerlaw.com, aagonzalez@bakerlaw.com
- **Scott H Siegel**    ssiegel@laklawyers.com, smcfadden@laklawyers.com
- **Annie Y Stoops**    annie.stoops@afslaw.com, yvonne.li@arentfox.com
- **Christopher D Sullivan**    csullivan@sullivanblackburn.com,
  qroberts@sullivanblackburn.com;mhassett@sullivanblackburn.com;spratt@sullivanblackburn.com;rbahadurji@sullivanblackburn.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law
- **Timothy Yoo (TR)**    tjytrustee@lnbyg.com, tjy@trustesolutions.net
- **Roye Zur**    rzur@elkinskalt.com,
  cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                          **F 9013-3.1.PROOF.SERVICE**

**2.  <u>SERVED BY UNITED STATES MAIL</u>:**

Abrams Fensterman
3 Dakota Drive, Suite 300
New Hyde Park, NY 11042

Bowles Liberman & Newman LLP
Attn: David K. Bowles
14 Wall Street, 20th Floor
New York, NY 10005

Bradley D. Sharp
Development Specialists, Inc.
333 South Grand Avenue
Suite 4100
Los Angeles, CA 90071

Christian T. Becker
Kasowitz Benson Torres LLP
1633 Broadway, 21st Floor
New York, NY 10019

David Bowles
14 Wall St., 20th Floor
New York, NY 10005

Direct Lending Income Fund LP
550 N. Brand Boulevard, 20th Fl
Glendale, CA 91203

Donald Zolin
225 Broadway, 307
New York, NY 10007

Forefront Partners LLC
445 Park Avenue, 9th Floor
New York, NY 10022

Forefront Partners, LLC
14 Wall Street, 20th Floor
New York, NY 10005

Franchise Tax Board
Bankruptcy Section MS A340
PO BOX 2952
Sacramento, CA 95812-2952

HILF TELECOM
225 Broadway 3rd Floor
New York City, NY 10007

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Kennedy Van Der Laan
Moelnwerf 16
Amsterdam 1014 BG
THE NETHERLANDS

McCarter & English LLP
Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, NY 10019

Van Doorne NV
Jachthavenweg 121
1081 KM Amsterdam
PO Box 75265
Amersterdam 1070 AG
THE NETHERLANDS

Those Certain Underwriters at
Lloyd's etc
c/o Jeremy H. Rothstein, Esq.
G&B LAW LLP
16000 Ventura Blvd., Ste 1000
Encino, CA 91436

VoIP Guardian LLC
303 California Avenue Apt #28
Santa Monica, CA 90403

VoIP Guardian Partners I, LLC
1221 Ocean Avenue, Unit 507
Santa Monica, CA 90401-1045

VoIP Guardian, LLC
405 East 56th Street - Suite 3G
New York, NY 10022

Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193

Office of Finance City of Los Angeles
200 N Spring St., Rm 101, City Hall
Los Angeles CA 90012-3224

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Rodney Omanoff
Sklar Kirsh, LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067-1631

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled**: DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **May 1, 2023,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **May 1, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY LESS THAN 25 PAGES NOT REQUIRED (GENERAL ORDER 23-01).**

Honorable Barry Russell
United States Bankruptcy Judge
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____**,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 1, 2023 | Mela Galvan | /s/ Mela Galvan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Gretchen S Carner**    gretchen.carner@clydeco.us, kathy.rollins@clydeco.us
- **Jeffrey D Cawdrey**    jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com
- **Michael F Chekian**    mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Cynthia M Cohen**    ccohen@brownwhitelaw.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Aaron E. DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com,
  cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
- **Jason B Komorsky**    ecf@bg.law, jkomorsky@bg.law
- **Andy Kong**    Kong.Andy@ArentFox.com
- **Steven N Kurtz**    skurtz@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Ian Landsberg**    ilandsberg@sklarkirsh.com,
  lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com;kfrazier@sklarkirsh.com;mduran@sklarkirsh.com
- **Avi Edward Muhtar**    amuhtar@gmail.com
- **Olaf J Muller**    olaf@olafmullerlaw.com
- **Douglas M Neistat**    dneistat@gblawllp.com, mramos@gblawllp.com;tkrant@gblawllp.com
- **Jennifer E Newcomb**    jnewcomb@kdvlaw.com, jnewcomb@kdvlaw.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Uzzi O Raanan**    uraanan@DanningGill.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- **David J Richardson**    drichardson@bakerlaw.com, aagonzalez@bakerlaw.com
- **Scott H Siegel**    ssiegel@laklawyers.com, smcfadden@laklawyers.com
- **Annie Y Stoops**    annie.stoops@afslaw.com, yvonne.li@arentfox.com
- **Christopher D Sullivan**    csullivan@sullivanblackburn.com,
  qroberts@sullivanblackburn.com;mhassett@sullivanblackburn.com;spratt@sullivanblackburn.com;rbahadurji@sullivanblackburn.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law
- **Timothy Yoo (TR)**    tjytrustee@lnbyg.com, tjy@trustesolutions.net
- **Roye Zur**    rzur@elkinskalt.com,
  cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**